THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TROY E. TILLERSON, | * | |
| | * | |
|    Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO. 3:05-cv-985-MEF |
| | * | |
| THE MEGA LIFE AND HEALTH | * | |
| INSURANCE CORPORATION, a | * | |
| corporation; TRANSAMERICA LIFE | * | |
| INSURANCE COMPANY F/K/A PFL | * | |
| LIFE INSURANCE COMPANY, a | * | |
| corporation; NATIONAL ASSOCIATION | * | |
| FOR THE SELF EMPLOYED A/K/A | * | |
| NASE, a corporation, | * | |
| | * | |
|    Defendants. | * | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
MOTION TO STRIKE STATE LAW CLAIMS, CLAIMS FOR PUNITIVE
OR EXTRACONTRACTUAL DAMAGES, AND JURY DEMAND**

Defendants respectfully submit this reply in response to Plaintiff's opposition to Defendants' motion to strike Plaintiff's state law claims, claims for punitive or extracontractual damages, and jury demand. For the reasons set forth in Defendants' motion, initial brief and this reply brief, the motion should be granted.

    1.    Plaintiff contends that Defendants' motion should be denied because his insurance certificate does not actually contain the word "ERISA" or state that it is controlled or affected by ERISA, and therefore, it cannot be an ERISA plan. Plaintiff, however, did not and cannot offer any support from ERISA's provisions or elsewhere that an insurance plan can only be governed and subject to ERISA if it contains the word "ERISA" or states therein that it is controlled or governed by ERISA. Moreover, this argument has been specifically rejected and the Court stated the test is not "whether [an employer] intended the plan to be governed by ERISA, but

rather on whether [an employer] intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship." *Shipley v. Provident Life & Accident Ins. Co.*, 352 F. Supp. 2d 1213, 1217 (S.D. Ala. 2004)(*quoting Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263-64 (11th Cir. 2004)). If the court were to accept Plaintiff's argument, a state law would never be preempted if it did not refer to ERISA or ERISA plans, even if it had a clear connection with a plan in the sense that it mandated employee benefit structure or its administration or provided alternative enforcement mechanisms. Plaintiff also contends that Defendants' motion should be denied because none of the claims in his amended complaint "make reference to an ERISA plan or any aspect of ERISA." However, all of his claims relate to his insurance certificate, which, as shown in Defendants' motion and initial brief, is an ERISA welfare benefit plan. Just because Plaintiff does not make reference to an ERISA plan or any aspect of ERISA in his amended complaint does not mean that he is not relying on and seeking relief in connection with an ERISA welfare benefit plan. These arguments must fail.

    2.    A determination as to whether the Plaintiff's insurance is an "employee welfare benefit plan" under ERISA, and whether Plaintiff's state law claims relate to his ERISA plan, should be made with a common sense view of the matter. Plaintiff's employer, T&T Construction, made a decision to extend health benefits to Plaintiff, who was an employee. (Deposition of Sue Tinkey, Exhibit A to Memorandum in Support of Motion to Strike, at. 24-25, 32-33, 53, 66). "It was – in the – initially in '96 when we got insurance, we decided that we would give him [Plaintiff] health insurance in lieu of an increase in pay. . . . And we had the – we paid the premiums so that we would know they'd be paid and he was covered for health insurance." (Exhibit A to Memorandum in Support of Motion to Strike, at. 24-25). After this decision was made, the office manager of T&T Construction contacted Defendants to arrange for

2

a meeting between Plaintiff and a representative of Defendants to discuss an insurance plan to fund the health benefits being extended by T&T Construction. (Exhibit A to Memorandum in Support of Motion to Strike at 27, 33). Ms. Tinkey testified as follows:

> Q. And as the – I guess as the office manager, you were fully aware of the decision and you took steps to implement it to provide health insurance benefits for - -
> A. Yes.
>
> Q. -- Gene as an employee?
>
> A. Yes.
>
> * * *
>
> Q. Tell me how that – tell me how this came about, this decision to provide Gene with coverage. Was there a discussion between you and your husband, Troy?
>
> A. Yes.
>
> Q. Tell me what you recall about that discussion.
>
> A. Well, I – I don't remember how I found out about the NASE insurance. It was a magazine article or TV or whatever. And I had signed up for this insurance. And I was happy with it at the time, and so I said to Troy, I said, you know, what are we going to do about Gene and his health insurance, he's getting older. So we decided we would provide him with health insurance in lieu of a raise. And I contacted the agent that had sold me the insurance and set up a time for Gene to come and meet with him, and we signed him up.

(Exhibit A to Memorandum in Support of Motion to Strike at 27, 33). Once a decision was made to fund the plan with an insurance policy issued by Defendants, Defendant PFL Life Insurance Company (now known as Transamerica Life Insurance Company) issued a health insurance policy (Group Policy no. 0028-GPPFL). On July 26, 1996, Plaintiff was issued a Certificate of Insurance for health insurance benefits as outlined in that Certificate and associated Group Policy. Plaintiff contends that his insurance is not an employee welfare benefit plan governed by

3

ERISA because his employer, T&T Construction, did not contribute money toward the insurance but instead the cost of the insurance was deducted from Plaintiff's salary. This argument is contrary to the sworn testimony of Sue Tinkey, who confirmed that Plaintiff did not reimburse T&T Construction for the premiums paid by T&T Construction. (Exhibit A to Memorandum in Support of Motion to Strike at 24).

Defendants have provided deposition testimony that clearly demonstrates T&T Construction established and maintained an ERISA plan through the decision to provide health benefits instead of increasing Plaintiff's salary through a raise. T&T Construction paid each monthly premium through its bank account and did not deduct any portion of the premium from Plaintiff's pay. (Exhibit A to Memorandum in Support of Motion to Strike at 24, 34). Additionally, T&T Construction continued to pay the premiums even when the premiums increased. (Exhibit A to Memorandum in Support of Motion to Strike at 52-53, 66). Also, whether or not Plaintiff's employer filed or did not file tax returns reflecting a tax deduction for the premiums paid for Plaintiff's insurance does not negate the fact that Plaintiff's employer paid the premiums on Plaintiff's behalf from the time the insurance certificate was purchased in 1996 until November of 2005 when the coverage was terminated. The source of financing for Plaintiff's insurance was Plaintiff's employer. Additionally, Plaintiff's employer established and maintained the insurance plan. Plaintiff's employer created the plan when it decided to extend health insurance benefits and arranged for the meeting to allow for the issuance of the insurance policy to fund the plan. *See e.g., Randol v. Mid-West National Life Insurance Co. of Tennessee*, 987 F.2d 1547 (11th Cir. 1993), *cert. denied*, 510 U.S. 863 (1993)(insurance program qualified as an employee welfare benefit plan governed by ERISA where plaintiff's employer contributed $75.00 toward the monthly premium by writing a check for the full amount and

deducting the cost of the premium, less the $75.00 contribution, from the employees' paychecks). The employer's involvement in this case is substantially more significant than the employer's involvement in the *Randol* case. In *Randol*, the employer allowed the insurance company's representative to make a presentation to the employees during working hours. The *Randol* employer agreed to contribute $75.00 month to offset the costs of the insurance policy for each employee, who decided to enroll in the policy. The *Randol* employer also agreed to deduct the employees' respective share of the monthly premiums through a payroll deduction. In this case, the employer made a decision to provide health insurance benefits to the Plaintiff. The employer's representative contacted the Defendants to set up the meeting that lead to the purchase of the insurance policy to fund the health insurance benefits. The employer paid the entire amount of the monthly premium for the insurance policy that funded the plan. The employer continued to pay the premiums even though the premiums increased during the period the policy was in effect to fund the plan. Defendants have satisfied their burden to prove not only this element but also each of the other requirements, as outlined in *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)(*en banc*), that a benefit plan must meet in order to be legally recognized as an "employee welfare benefit plan" under ERISA.

3.  In order to assert his fraud claims, Plaintiff must plead and in fact has pled the existence of an insurance plan, which Defendants have proven constitutes an ERISA welfare benefit plan. As to whether Plaintiff's state law claims relate to his ERISA plan, the U.S. Supreme Court has held that the words "relate to" in ERISA's preemption provision should be broadly construed in that a particular state law claim "relates to" ERISA if the state law claim has a "connection with or reference to" an employee benefit plan. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 (1983). There is a narrow limit to the scope of ERISA's preemption. Even if,

5

*arguendo*, Plaintiff's claims for fraud only had an indirect effect on his insurance plan, they are still preempted unless they affect the insurance plan in "too tenuous, remote or peripheral a manner." *Shaw*, 463 U.S. at 100 n.21.

4. Plaintiff's state law claims are not wholly remote from his insurance certificate. Plaintiff alleges in his amended complaint that it was misrepresented and/or suppressed from him that he was purchasing "major medical group" health insurance and that he would become a member of a "group" of insured persons where future premium increases would be increased equally for all other members of the "group." *See* Amended Complaint, Counts One through Three, attached as Exhibit G to Defendants' initial brief. Plaintiff contends that because he is not specifically alleging refusal to pay insurance benefits, his fraud claims do not relate to his insurance certificate for purposes of ERISA preemption.[1] Plaintiff, however, recognizes in his response that ERISA has a broad preemption provision and admits that recent court decisions have not limited ERISA to governing plans where the allegations only focus on wrongfully denied claims for medical benefits. Plaintiff is asking this Court to find that his lawsuit only affects the relationship between him and his insurer and has nothing to do with his rights under or the terms and provisions of his insurance certificate. Plaintiff asserts in his response that the

---

[1] Plaintiff's reliance on the Northern District of Georgia decision in *Kahn* is misplaced. That opinion primarily focuses on diversity of citizenship and the doctrine of fraudulent joinder, disagreeing with the defendants' characterization of the action for fraud, finding that the plaintiff's claims were that defendants intentionally misled the plaintiff for the purpose of selling him a policy. In construing the facts and ambiguities in the law in favor of the plaintiff, the *Kahn* court found that a possibility existed that the plaintiff could succeed on his fraud claim against the resident defendants. As to federal question jurisdiction based on ERISA, the court simply found that the defendants' arguments were conclusory, and that the defendants had failed to satisfy their burden that removal was proper based on ERISA preemption. Here, to the contrary, Defendants have offered case law, statutory law and deposition testimony to prove that Plaintiff's state law claims are preempted by ERISA.

insurance certificate does not even make reference to the fact that insurance premiums would be increased over the entire group. That is simply not the case.

5. As shown on Exhibit E attached to Defendants' initial brief, and as ignored by Plaintiff in his response, Plaintiff's certificate of insurance contains specific language advising him that the premium rates might change from time to time. As discussed by Plaintiff's stepmother (*see* p. 16 and the amendatory endorsement to the insurance certificate, attached as Exhibit E to Defendants' initial brief), and by Plaintiff during his deposition (*see* deposition excerpts of Troy E. Tillerson, attached hereto as Exhibit A), there is unambiguous language in the insurance certificate that refers to the possible increase in premium rates. During his deposition, Plaintiff was referenced to a specific page of his certificate of insurance, particularly to the section relating to "Premium Changes." Exhibit A, pp. 29-30 and Exhibit 2 to the deposition. That section reflects the following language: "We reserve the right to change the table of premiums on a class basis becoming due under the group policy at any time and from time to time provided we have given the group policyholder written notice of at least 31 days prior to the effective date of the new rates." Exhibit A, Exhibit 2 to the deposition. Plaintiff admitted that he understood that language, that he understood the company reserved the right to change the premium, and that if he would have read that language back in 1996 when he was sold the insurance certificate, he would have known that the company reserved that right. Exhibit A, p. 30. In connection with his communication with the selling agent, Plaintiff testified that he was told back in 1996 that he would not be singled out for a rate increase. Exhibit A, p. 31. Plaintiff's claims require construction of his insurance certificate, particularly since the language of the certificate itself includes a provision that the insurer reserved the right to change the premium rates. When the claims require some construction of or necessitate any reference to

the plan's provisions, those claims "relate to" the plan and fall within ERISA's preemptive scope. To determine the merits of Plaintiff's state law claims for fraud, this Court would need to evaluate the truthfulness of the alleged misrepresentation or suppression of material fact as alleged by Plaintiff in conjunction with the actual terms, provisions and administration of his insurance plan. The bottom line is that Plaintiff's state law claims for fraud relate to his ERISA plan, given that those claims refer to and would require a construction of his ERISA plan.

6. Plaintiff relies on *Cotton v. Massachusetts Mutual Life Insurance Co.*, 402 F.3d 1267 (11th Cir. 2005), for the proposition that his state law claims for fraud are not preempted because they are not enmeshed in a claim for insurance benefits. Plaintiff is arguing that Defendants were not acting in their fiduciary capacities as ERISA entities. Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Plaintiff's reliance upon *Cotton* is misplaced because the facts of this case demonstrate that Plaintiff's claims arise out of the increase in premiums, which is a matter that the Defendants' retained discretionary control and authority over under the terms of the insurance policy funding the plan. In *Cotton*, the Eleventh Circuit clearly stated that the insurance company was not acting as a fiduciary relating to the matters giving rise to the claims against it. The Court stated "Mass Mutual has never exercised discretionary authority or control over plan management or the administration of plan assets because the decisions to purchase,

amend, and borrow against the policies were made by the plaintiffs themselves." *Cotton*, 402 F.3d at 1279.  In this case, the claims against the Defendants arise out of the increases in premiums over a period of years.  The Defendants had the discretionary authority to increase premiums and it is these decisions that serve as the basis of the claims.

There are different analyses pursuant to 29 U.S.C. § 1132(a) (complete preemption) and 29 U.S.C. § 1144 (defensive preemption).  In *Cotton*, the Eleventh Circuit analyzed *Butero, Franklin*, *Hall* and *Engelhardt*, in focusing on ERISA's complete preemption rule.  Complete preemption, however, is narrower than defensive ERISA preemption, which, as discussed in Defendants' initial brief, supersedes any and all State laws insofar as they relate to any ERISA plan.  ERISA § 514(a), 29 U.S.C. § 1144(a).  Defensive preemption provides an affirmative defense to certain state law allegations where the state law claims "relate to" an ERISA plan.  A state law claim, such as Plaintiff's claims here, may be defensively preempted under § 514(a) but not completely preempted under § 502(a).  Defensive preemption is a substantive issue that must be decided by a court with competent jurisdiction, which the court has here based on federal diversity jurisdiction; therefore, either in state or federal court, when a state law claim is brought, the defendant may raise the defense that the claims are preempted by ERISA pursuant to 29 U.S.C. § 1144 and should be stricken.  Complete or super preemption, on the other hand, *recharacterizes* the state law claim into a federal claim pursuant to 29 U.S.C. § 1132, as long as the *Butero* elements for complete preemption are present.

7.     As for the argument that Defendants were not acting as ERISA entities, Plaintiff in his amended complaint alleges that it was misrepresented to him "that the health insurance coverage provided and administered by Defendants was 'major medical group' health insurance," and that "he would become a member of the 'group' of insured persons included in

9

the NASE and insured under said policy that was underwritten by Defendant PFL and administered by Defendant MEGA." *See* Amended Complaint, ¶ 6, attached as Exhibit G to Defendants' initial brief. Moreover, Plaintiff is asserting that the premium increases occurred when he was singled out due to his claim history and/or medical conditions. *See* Amended Complaint at ¶¶ 8-10, 19-21, 35-36. This allegation clearly demonstrates that Plaintiff's claims relate to the plan and the discretionary authority vested in the Defendants to make decisions relating to premium increases. Plaintiff is asserting that Defendants provided and administered the insurance at issue, which would include a determination and assessment of plan premiums. Plaintiff's claims, if proven, will have more than an indirect economic impact on his ERISA plan, given the allegation that he did not receive "major medical group" coverage, but instead individual coverage based on the belief that his insurance premiums were not calculated upon the group's experience, but instead on his own individual claims experience and health status. Here, Plaintiff's insurance certificate expressly provides that the premiums may be increased on a class basis. Plaintiff's claims undisputedly have a connection with or reference to his insurance plan, given that Plaintiff is seeking to enforce his understanding under the terms of the plan that the premiums could be changed on a group basis and not on an individual basis. Plaintiff is asserting the loss of value of his premium payments, interest on his premium payments and having an insurance plan that was not as allegedly represented. Plaintiff's state law claims are preempted because Defendants' potential state law liability derives from the particular rights and obligations established by and the administration of Plaintiff's ERISA-regulated benefit plan. Interpretation of the terms of Plaintiff's insurance certificate forms an essential part of his claims. This Court should find that the factual allegations of Plaintiff's amended complaint "relate to" his ERISA insurance plan.

8.      Plaintiff also relies upon *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. 1996), for the position that his claims do not relate to his ERISA-governed insurance plan.  The facts of *Morstein* are easily distinguishable from the present case.  The plaintiff in *Morstein* alleged that the agent fraudulently induced her to change benefit plans.  *Morstein*, 93 F.2d at 717.  The defendants in *Morstein* were an independent insurance broker and his agency, which obtained for the plaintiff an insurance policy to be administered by a third party and underwritten by a separate insurance company.  *Id.* at 716-17.  The holding in *Morstein* was based on the fact that, under Georgia law, independent agencies are considered agents of the insured, not the insurer.  *Id.* at 717 n.2.  The court found that the claims against the independent insurance agent and his agency did not have a sufficient connection with the insurance plan to relate to it, noting that they had no involvement in the determination of the plaintiff's rights under the plan or control over the payment of benefits.  *Id.* at 723.  In the case at bar, Plaintiff is not bringing state law claims for fraud against an independent broker but against his insurer, who was involved in administering and determining Plaintiff's rights under his ERISA insurance plan and in paying benefits based on the terms and provisions of the insurance certificate.  The Eleventh Circuit in *Morstein* recognized the distinction between claims against the insurance company and an independent insurance agent.

9.      Plaintiff attempts to distinguish this Court's decision in *Bridges v. Principal Life Insurance Co.*, 132 F. Supp. 2d 1325 (M.D. Ala. 2001), *motion to strike state law claims from amended complaint granted*, 141 F. Supp. 2d 1337 (M.D. Ala. 2001), which is factually similar to the case at bar.  Although *Bridges* focused on the complete preemption doctrine to determine whether the federal court had jurisdiction, the court's analysis on similar facts supports the granting of Defendants' motion in the present case.  Here, as discussed in his response, Plaintiff

asserts that all claims relate to Defendants' fraud regarding the true nature of the insurance coverage. Plaintiff asserts that the misrepresentations go to the insurance contract itself, and to his allegation that what was promised to be "group health insurance" was in fact individual and/or quasi-individual coverage. In *Bridges*, the plaintiff also alleged fraud with respect to the nature of her retirement plan, given that it was actually an adjustable life insurance plan, and contended that her claims did not relate to an ERISA plan because she was not making a claim for any benefits, but instead was claiming she was fraudulently induced to purchase the policy. *Bridges*, 132 F. Supp. 2d at 1327, 1329. The court started its analysis by noting the Eleventh Circuit's statement "that claims against an insurer for fraud and fraud in the inducement to purchase a policy are in essence claims 'to recover benefits due to [the beneficiary] under the terms of the plan.'" *Id.* at 1329 (citation omitted). The court then noted that the words "relate to" in ERISA's preemption provision should be broadly construed in that a particular state law claim "relates to" an ERISA plan if the state law claim has "a connection with or reference to" an employee benefit plan. *Id.* (citation omitted). Not unlike Plaintiff here, the plaintiff in *Bridges* claimed that specific plan attributes were promised to her, and that she suffered damages because she lost the use and benefit of her premium payments, did not have the retirement plan she thought she had, and had suffered anxiety and emotional distress. *Id.* at 1330. The court found that it would be unable to determine whether Bridges was fraudulently induced "without resorting to the written policy and assessing the truth of the agent's representations," since the dispositive facts for that claim was "the truthfulness of representations," which can only be evaluated based on the actual terms of the plan. *Id.* Such is the case here, where the terms of the Plaintiff's ERISA plan are crucial to the resolution of his state law fraud claims.

10.     Section 514(a) of ERISA, 29 U.S.C. § 1144(a), ERISA's preemption clause, is a broad-sweeping provision.  Defendants have proven, by offering applicable provisions of ERISA, recent federal court decisions, many of which were rendered by this Court and the Eleventh Circuit Court of Appeals, as well as deposition testimony, that Plaintiff's insurance plan meets all the requirements for a "employee welfare benefit plan" for purposes of ERISA, and that Plaintiff's claims are sufficiently related to his employee welfare benefit plan to fall within ERISA's preemptive scope.

WHEREFORE, premises considered, Defendants respectfully request that the Court enter an Order striking Plaintiff's state law claims, claims for punitive or extracontractual damages, and jury demand.


*s/Pamela A. Moore*_____
JAMES W. LAMPKIN II (LAMPJ7474)
PAMELA A. MOORE (MOORP5421)
Attorneys for Defendants


OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)

CERTIFICATE OF SERVICE

      I hereby certify that on December 22, 2006, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following:

Steven W. Couch, Esq.
Hollis & Wright, P.C.
505 North 20th Street, Suite 1500
Birmingham, Alabama  35203


                                        *s/Pamela A. Moore*_____
                                        COUNSEL