IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TROY E. TILLERSON, ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No.: |
| ) | 3:05-cv-985-MEF |
| THE MEGA LIFE AND HEALTH ) | |
| INSURANCE CORPORATION, a corporation; ) | |
| TRANSAMERICA LIFE INSURANCE ) | |
| COMPANY F/K/A PFL LIFE INSURANCE ) | |
| COMPANY, a corporation; NATIONAL ) | |
| ASSOCIATION FOR THE SELF EMPLOYED ) | |
| A/K/A NASE, a corporation; ) | |
| ) | |
|     **Defendants.** ) | |

**PLAINTIFF'S OPPOSITION TO MOTION FOR PROTECTIVE ORDER
AND REPLY TO OBJECTIONS TO DISCOVERY**

**COMES NOW** the Plaintiff, Troy E. Tillerson (hereinafter "Tillerson" or "Plaintiff"), by and through his undersigned counsel of record, and files this Opposition to Defendant's, The MEGA Life and Health Insurance Company (hereinafter "MEGA Life" or "Defendant"), Motion for Protective Order and Objections to Discovery. In support of this opposition, Plaintiff states as follows:

**PRELIMINARY STATEMENT**

MEGA Life has presented "Relevant Facts" to this Court which creates the appearance that it is undisputed that the insurance certificate at issue is governed under ERISA. (Motion to Protective Order, ¶ 2). Plaintiff strenuously objects to any attempt by the Defendant to represent to the Court that it is undisputed that Plaintiff's claims are preempted by ERISA. In its motion, Defendant states that the deposition of Sue Ann Tinkey "revealed that plaintiff's insurance certificate at issue, which forms the basis of

his allegations, is governed by the Employee Retirement Income Security Act of 1974…and that plaintiff's state law claims…are preempted by ERISA." *Id.* This representation to the Court is mischaracterized and attempts to bend the substance of Plaintiff's argument to fit the Defendant's misleading facts.

Plaintiff's claims asserted in this case are grounded in tort, and spring from misrepresentations made by MEGA Life regarding the nature of the insurance coverage at issue. At no time throughout this lawsuit has Plaintiff made any claim for reimbursement for a claim which was denied or for Defendant's denial of benefits. Rather, Plaintiff's claims center around the selling of an insurance product purported to be "group health insurance" which, in all actuality, was individual coverage, thereby creating a higher premium, or punishing the insured, once the insured became ill. ERISA is not designed to preempt claims related to fraudulent misrepresentations in the inducement of an insurance contract, but rather governs claims by employees for benefits under certain group health benefit plans. As Plaintiff has previously outlined in his Response to Defendants' Motion to Strike State Law Claims, in a case properly falling within ERISA's scope, the only remedies available are the monetary cost of any medical benefits wrongfully withheld and/or equitable relief in aid of this remedy. Plaintiff has not made any claims relating to reimbursement of wrongfully withheld benefits, nor any other relief, equitable or otherwise, which relate to a denial of benefits. As such, Defendant's assertions that Plaintiff's insurance benefit plan was "revealed" to be "governed by ERISA" is a highly disputed fact and is, as previously submitted by the Plaintiff, and argued herein, untrue.

Plaintiff also takes issue with Defendant's characterization of its "efforts" to resolve this discovery dispute without Court action. After failing to receive any dates from Defendant regarding the repeatedly noticed deposition of its corporate representative, Plaintiff did indeed unilaterally notice a date, time, and location for that deposition. Once a location for the depositions was agreed upon, Defendant's counsel related by telephone with Plaintiff's counsel and informed counsel that he would instruct his client to only answer questions or other inquiries relating to ERISA, regardless of the fact that no ruling or other order form the Court has been entered regarding this issue. Defendant has attempted to cast Plaintiff as overreaching and unreasonable in his attempt to secure adequate discovery in this case; however, it is the actions of Defendant's counsel which predicated this discovery dispute. Defendant cannot make the argument that it has attempted to resolve this dispute in good faith, when in fact it is Defendant which created that dispute in the first place and then entrenched itself in an unreasonable position before resorting to the Court for help. As such, Defendant's presentation of facts in this case is mischaracterized and blatantly misleading to the Court.

## ARGUMENT

Defendant has based its objections to the scope of this deposition upon the same grounds as its Motion to Strike State Law Claims (which the Court has not ruled on as of this date). In order for Defendant's Motion for Protective Order to be granted, this Court would have to find that Plaintiff's claims are in fact preempted by ERISA. This is simply not true. Defendants have previously argued that Plaintiff's mere purchase of group health benefits via a payroll deduction by his employer constitutes an ERISA plan.

(Motion to Strike State Law Claims). This interpretation of ERISA falls short when examined against the intent of Congress in implementing these statutes.

The mere purchase of group health insurance does not automatically create an employee health benefit plan under ERISA. Congress charged the Department of Labor with promulgating regulations for ERISA. Those regulations provide that purchases of insurance, even for employees, stay exempt from ERISA when (1) no contributions are made by an employer; (2) participation is voluntary; (3) the sole function of the employer is permitting the insurer to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) the employer receives no consideration in the form of cash or otherwise for administrative services actually rendered in connection with remitting payment. 29 C.F.R. § 2510.3-1(j). "It is well settled that when an employer provides an insurance plan to employees and satisfies all four requirements of the safe harbor regulation, the employers mere purchase of insurance does not, by itself, create an employee welfare benefit plan under ERISA." *Schwartz*, 280 F.Supp.2d at 940-41, (citing *Stuart v. Unum Life Ins. Co. of America*, 217 F.3d 1145, 1149 (9th Cir. 2000)); *see also Thompson v. American Home Assurance Company*, 95 F.3d 429 (6th Cir. 1996)(genuine issue of material fact precluded summary judgment on whether insurance policy implicated ERISA).

The Defendants argue in a conclusory fashion that the insurance at issue is an "employer sponsored plan" and that the safe harbor regulation does not apply. While there are numerous flaws in the Defendants' logic in this regard, the largest defect is the fact that this policy is not an "employer sponsored plan". In furtherance of this argument, Defendant's have previously cited *Butero v. Royal Maccabees Life Insurance Co.* and

4

*Donovan v. Dillingham* for the propositions that a proper ERISA plan existed because T&T Construction (Plaintiff's employer) sought to confer "intended benefits" to "intended beneficiaries," provided "a source of financing, and a procedure to apply for and collect benefits." (Defendants' Motion to Strike State Law Claims, p. 7). However, Defendant's argument misses the mark in its application of whether or not there is a plan. In *Donovan*, the Eleventh Circuit Court of Appeals held that "a decision to extend benefits ***is not the establishment of a plan or program***." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982). Rather, "it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." *Id.* In the instant case, the evidence presented clearly shows that T & T Construction did not provide the financing, did not extend any benefit to and did not have any say in or procedures for receiving or handling benefits – all requirements under *Butero. Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207, 1215 (11th Cir. 1999). Defendant claims that the source of financing came from Plaintiff's employer, but this is not true. Using a portion of an employee's pay to cover health insurance premiums, on a contract chosen by and entered into voluntarily by the employee, does not constitute "financing" on the part of the employer. To hold such would be the same as saying that because an employer paid an employee, and the employee used his paycheck to purchase gas or food, then the employer is "financing" the purchase of these items. Clearly, this is not what Congress intended when they enacted the ERISA statutes.

Defendants have also cited to *Anderson v. UNUM Provident Corp.*, as the basis for arguing that the plan was "established" by T & T Construction. (Defendants' Motion to Strike State Law Claims, p. 8). In doing so, they quote *Anderson*, quoting *Buetero*, to

5

show that Plaintiff's employer either established or maintained the plan. In its analysis of whether or not an employer had "established" a plan, the Eleventh Circuit Court of Appeals in *Anderson*, looked to the dictionary definition of "establish," settling upon the definition "to make or form." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1264 (11th Cir. 2004). Applying that definition to the instant case, T & T Construction cannot be held to have made or formed the plan for Plaintiff. While it is true that Plaintiff's stepmother put together a meeting between the insurance agent and Plaintiff, it was ultimately Plaintiff's decision at that meeting to enter into the plan. This was not an option extended to Plaintiff by virtue of his being an employee of T & T Construction. Rather, it was a family member organizing a meeting because she and her husband felt it prudent for the Plaintiff to have health insurance. The *Anderson* Court then went on to state that even if the employer did not establish the plan, it could still fall under ERISA if the employer "maintained" the plan. *Id.* at 1265. Again the Court looked to the Webster's Dictionary definition, settling on "to continue." *Id.* In order for the employer to be held to have maintained the plan, where it was not established by the employer (as is the case here), then the employer would have to begin to take a more active role in the plan's administration. *Id.* For example, the Court in *Anderson* stated:

> [I]f Shaw began to involve itself more in the payment of benefits, changed the critical terms of the policy, or performed all the administrative functions associated with the maintenance of the plan, those would be actions on the part of the employer which could "maintain," rather than establish the plan as an employee welfare benefits plan.

*Anderson*, 369 F.3d at 1265. No evidence has been presented by the Defendants which shows that T & T Construction actually paid the benefits, changed any terms of the policy, performed any administrative function associated with the maintenance of the

plan or did any other action which would constitute "maintaining" the insurance coverage of Plaintiff.

Defendant's have also cited to *Randol v. Mid-West National Life Insurance Company of Tennessee*, where on page nine (9) of their original motion and pages four (4) and five (5) of their reply, they try and analogize Plaintiff's situation with that of the plaintiff in *Randol*. In *Randol*, the plaintiff's employer contributed a portion of the monthly premium towards the plaintiff's welfare benefit plan by paying the full premium, then turning around and deducting the premium amount, minus an employer contribution amount, from the employee's pay. *Randol*, 987 F.2d at 1548-49. This factual scenario is completely different from the one presented in the instant case. In *Randol*, the employer actually contributed $75.00 *of its own money* toward payment of the monthly premium, which it could then claim as a deduction. *Id.* Deposition testimony in the present case has shown that this is not what happened here. Ms. Tinkey clearly testified that T & T Construction did not pay any of the premiums for Plaintiff's health insurance, rather the cost of his insurance was deducted out of his salary in lieu of receiving an actual pay raise. (Tinkey Depo. pp. 32-33). Importantly, <u>Plaintiff's employer did not even take tax deduction when the premiums were paid on behalf of Plaintiff</u>:

    Q.    Has T&T Construction taken a deduction on its tax returns for those premiums?

    A.    No.

    \*    \*    \*

    Q.    Okay. And there was no deduction for the premiums for health insurance?

    A.    No.

(Tinkey Depo. pp. 25-26). Without question, all premiums were paid by Plaintiff Tillerson, not by his employer; therefore, *Randol* is, by its very factual basis, inapplicable in this case. As such, Defendants have failed to meet their burden of showing that all requirements under *Donovan* have been met, and therefore, their argument must fail.

Even if the Court finds that this reasoning is not sound, the Court in *Randol* went on to state that "[t]o be an *employee* welfare benefit plan…an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund or program." *Randol*, 987 F.2d at 1550 (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982))(emphasis in original). As outlined above, the plan at issue in this case was established and maintained by the employee and therefore, by application of Defendant's own case authority, does not fall under ERISA. Indeed, in the instant case the Plaintiff's employer did not distribute any "plan" information—the Defendant insurers did. His employer did not make any contribution towards this insurance, but rather, Tillerson paid all monies towards the policy through his employer since the premium payments were made in lieu of receiving a raise. (Tinkey Depo. pp. 32-33). <u>Plaintiff's employer did not take tax deductions when the premiums were paid on behalf of Plaintiff</u>. *Id.* at 25-26. Tillerson's employer did not instruct anyone as to procedures for submitting claims—the Defendant insurers did. Tillerson's employer did not notify anyone regarding any "plan" changes—the Defendant insurers did. His employer did not maintain any records or files with respect to the insurance policies other than premium billing records. They were not responsible for processing or denying claims arising under the policy—that was done by these Defendants, presumably as an insurance administrator **chosen by Mega Life Insurance**

8

***Company's corporate sister, PFL Insurance Company*** (not as a "plan administrator" delegated by the Tillerson's employer). Clearly, Department of Labor Regulations for ERISA and the precedent established by *Randol* and *Donovan* dictate that the subject insurance contract is not preempted or controlled in any way by ERISA.

Notably, the very Certificate of Insurance issued by Defendants in this case shows that the Certificate holder is Troy E. Tillerson-not his employer, and shows further that the Master Policyholder is the National Association for the Self-Employed-not Plaintiff's employer. (Exhibit A to Plaintiff's Opposition to Motion to Strike). In addition to the fact that this policy was not issued to Tillerson's employer (indeed there is no mention whatsoever of T&T Construction anywhere in the Certificate of Insurance made the basis of this case), this policy was not paid for by the Plaintiff's employer[1], did not insure other employees of Plaintiff's employer, and Plaintiff's employer did not perform any administrative function whatsoever having to do with this insurance or the benefits payable thereunder.

Moreover, the case law cited by Defendants as authority for their position is distinguishable from the instant case, in that every case deals with either a denial of benefits, or direct contribution and maintenance by the employer: *Shipley v. Provident Life & Accident Ins. Co.*, 352 F. Supp. 1213, 1215 (S.D. ala. 2004)("In the instant case, Plaintiff is seeking to recover benefits she claims are due to her under two separate disability insurance policies."); *Randol v. Mid-West Nat'l Life Ins. Co. of Tennessee*, 987 F.2d 1547, 1549 (11th Cir. 1993)(plaintiff's employer contributed $75.00 of company money towards monthly policy premiums with difference deducted from employee pay);

---

[1] Sue Tinkey testified that premium payments were made instead of Tillerson receiving a raise. (Tinkey Depo. pp. 32-33). In other words, the employer contributed nothing towards the payment of premiums. This certainly does not rise to the level of "employer-sponsored" plans as contemplated by ERISA.

*Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 92 (1983)(plaintiffs brought suit alleging that the medical and disability insurance coverage provided by their employers did not provide benefits for employees disabled by pregnancy). Put simply, Defendants have not carried their burden of even showing that an ERISA-governed plan is at stake here and, for this reason alone, Defendants' Motion for Protective Order should be denied because ERISA simply <u>does not</u> govern Plaintiff's insurance plan and certainly cannot control the discovery to be conducted in this case.

  Federal Rule of Civil Procedure 26(c) is not designed as a shield behind which parties may hide in order to prevent proper discovery. In the instant case, Defendant has not shown that they are entitled to a protective order for the information sought by the Plaintiff because the entry of such an order must be predicated upon a finding that the insurance plan in question is in fact preempted by ERISA. As outlined *supra*. and more extensively in Plaintiff's Opposition to Defendants' Motion to Strike, the plan does not fall within the scope of ERISA and therefore, no protective order is necessary. In addition, Rule 26(c) requires that before petitioning for a protective order, the movant must certify that they have "in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." FED. R. CIV. P. 26(c). As Plaintiff has previously stated in its Preliminary Statement, the only "good faith" effort by the Defendant were conversations wherein Defendant's counsel informed Plaintiff's counsel that while a corporate representative would be put up for deposition, that representative would be instructed to uniformly disregard any question which did not relate to or fall under the ERISA statute. It is beyond the reasoning of the Plaintiff as to how Defendant claims this constitutes a "good faith" effort to resolve the dispute, as this

10

claim clearly does not fall under ERISA and any limitation of discovery relating to ERISA would "miss the mark" with regard to what this lawsuit is all about.

Defendant's final argument that "[t]here is substantial likelihood that plaintiff's state law claims will be stricken as a result of ERISA preemption" is preposterous when examined under clear application of controlling precedent. At no time have the facts of this case given rise to ERISA preemption. **NO** action by the Plaintiff or his employer has placed this benefit plan under the umbrella of ERISA and to hold such would effectively grant immunity to an insurer who is guilty of fraud and breach of contract.

As is clearly pled in the original and amended complaints filed in this case, Plaintiff's claims rise out of the fraudulent representations made by the agent of the MEGA Life in an effort to induce Plaintiff into entering into the insurance contract in question. (*See* Complaint and Amended Complaint). Allowing an insurance company to commit fraud and then intentionally breach its contract, all while hiding behind the shield of an inapplicable ERISA statute presents a form of protection which was not contemplated by, nor was the intent of, Congress in instructing the Department of Labor to promulgate these rules. It would be a gross miscarriage of justice to deny any remedy to an insured who is mislead into signing an insurance contract and then punished by premiums which to do not reflect the promised coverage. No court has ever accepted this type of argument and to grant such now would expand ERISA preemption to an unprecedented scope. Granting Defendants' Motion to Strike and this subsequent Motion for Protective Order would be tantamount to rewarding Defendants for their intentionally tortious behavior.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests that this Court deny Defendant's Motion for a Protective Order, as well as Defendant's Motion to Strike State Law Claims, Claims for Punitive or Contractual Damages, and Jury Demand as this plan falls outside the scope of ERISA preemption. To allow such would be a grave injustice and effectively deny Plaintiff any form of recovery for the fraud and breach of contract by Defendants.

RESPECTFULLY SUBMITTED this the 5th day of February, 2007.

        s/Steve W. Couch_____
        Stevec@hollis-wright.com
        Attorney for Plaintiff

**OF COUNSEL**:
HOLLIS & WRIGHT, P.C.
505 North 20th Street, Suite 1500
Birmingham, Alabama 35203
(205) 324-3600
(205) 324-3636 Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2007, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification to such filing to the following:

James W. Lampkin, II
Pamela A. Moore
Alford, Clausen & McDonald, LLC
One St. Louis Centre, Suite 5000
Mobile, AL 36602

        s/Steve W. Couch_____
        SteveC@hollis-wright.com
        Attorney for Plaintiff