IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TROY E. TILLERSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO. 3:05-cv-985-MEF |
| | * | |
| THE MEGA LIFE AND HEALTH | * | |
| INSURANCE CORPORATION, a | * | |
| corporation; TRANSAMERICA LIFE | * | |
| INSURANCE COMPANY F/K/A PFL | * | |
| LIFE INSURANCE COMPANY, a | * | |
| corporation; NATIONAL ASSOCIATION | * | |
| FOR THE SELF EMPLOYED A/K/A | * | |
| NASE, a corporation, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF'S STATE LAW CLAIMS, CLAIMS FOR PUNITIVE OR
EXTRACONTRACTUAL DAMAGES, AND
<u>JURY DEMAND BASED ON ERISA PREEMPTION</u>**

Defendants respectfully submit this brief in support of their motion for summary
judgment on Plaintiff's state law claims, claims for punitive or extracontractual damages, and
demand for a jury trial.  For the reasons set forth herein, Defendants' motion is due to be granted.

<u>RELEVANT MATERIAL FACTS</u>

Plaintiff worked for his father's construction business, T&T Construction, which focused
primarily on building new homes and custom remodels.  *See* deposition excerpts of Sue Ann
Tinkey, attached hereto as Exhibit A, p. 13, line 19 – p. 14, line 9; p. 15, lines 2-5.   Plaintiff's
stepmother, Sue Ann Tinkey, was the office manager and handled all of the financial aspects of
that business for nearly 12 1/2 years.  Exhibit A, p. 13, lines 15-18; p. 14, line 10 – p. 15, line 1;
p. 27, lines 10-16.  Plaintiff was paid weekly.  Exhibit A, p. 17, line 15 – p. 18, line 5.  In 1996,

Plaintiff's father and stepmother began talking about Plaintiff needing some health insurance and decided to purchase health insurance for the Plaintiff in lieu of giving him a raise in salary. Exhibit A, p. 24, line 15 – p. 25, line 5; p. 27, lines 2-16; p. 32, line 5 – p. 33, line 12; p. 53, lines 5-8; p. 66, lines 2-23. Plaintiff's stepmother testified as follows:

> Q.     And as the – I guess as the office manager, you were fully aware of that decision and you took steps to implement it to provide health insurance benefits for - -
>
> A.     Yes.
>
> Q.     -- Gene as an employee?
>
> A.     Yes.
>
>                                       * * *
>
> Q.     Tell me how that – tell me how this came about, this decision to provide Gene with coverage. Was there a discussion between you and your husband, Troy?
>
> A.     Yes.
>
> Q.     Tell me what you recall about that discussion.
>
> A.     Well, I – I don't remember how I found out about the NASE insurance. It was a magazine article or TV or whatever. And I had signed up for this insurance. And I was happy with it at the time, and so I said to Troy, I said, you know, what are we going to do about Gene and his health insurance, he needs to have some insurance, he's getting older. So we decided we would provide him with health insurance in lieu of a raise. And I contacted the agent that had sold me the insurance and set up a time for Gene to come and meet with him, and we signed him up.

Exhibit A, p. 27, lines 10-16; p. 32, lines 5-23.

Plaintiff's stepmother thus contacted the insurance salesman who had previously sold her similar insurance and scheduled a meeting to explain the coverage to Plaintiff. Exhibit A, p. 33, lines 1-12. Present at that July 9, 1996 meeting were Plaintiff, his stepmother and the insurance salesman. Exhibit A, p. 33, lines 17-22. During that meeting, Plaintiff, as a member of

Defendant National Association for the Self-Employed, Inc. ("NASE"), applied for health insurance from PFL Life Insurance Company (now Defendant Transamerica Life Insurance Company), an NASE membership benefit.  Exhibit B, copy of application.  Also during that meeting, it was decided that the monies for premium payments would come from Plaintiff's employer's bank account.  Exhibit A, p. 34, lines 16-18.  Plaintiff's stepmother issued a check for the initial insurance premium using the SouthTrust Bank joint account that she and Plaintiff's father used for business and personal reasons.  Exhibit A, p. 22, lines 3-21; Exhibit C, July 9, 1996 check.  Plaintiff's stepmother also executed a bank draft authorization on July 9, 1996 to pay Plaintiff's future insurance premiums and provided a blank deposit slip for the same joint account from which the initial premium had been paid.  Exhibit D, bank authorization and deposit slip.

On July 26, 1996, Certificate of Insurance No. 732246121 (the "Certificate of Insurance" at issue in this case) was issued by PFL Life Insurance Company to Plaintiff for health insurance benefits as outlined in that Certificate and associated Group Policy.   Exhibit E, Certificate of Insurance.  Plaintiff's father and stepmother decided to have the insurance premiums deducted from their joint account so that they would know the premiums had been paid and Plaintiff had health insurance.  Exhibit A, p. 24, lines 20-23; Exhibit D; Exhibit F, authorization for direct payment changed in 2005 to their joint account with Comala Credit Union.   During the entire time Plaintiff's Certificate of Insurance was in effect (until November 26, 2005), Plaintiff's employer (his father) continued to pay the insurance premiums instead of raising Plaintiff's salary.  Exhibit A, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23.  Plaintiff's stepmother testified that Plaintiff did not reimburse T&T Construction for the premiums paid for Plaintiff's insurance.  Exhibit A, p. 24, lines 1-12.  T&T Construction paid

3

each monthly premium via its bank account and did not deduct any portion of the premium from Plaintiff's salary.  Exhibit A, p. 24, lines 1-23; p. 34, lines 16-18.

Plaintiff's Certificate of Insurance contains specific language that the insurer reserved the right to change the table of premiums on a class basis at any time and from time to time.  Exhibit E, p. 16, "Premium Changes" section and the Amendatory Endorsement, ¶ 1.

In his First Amended Complaint, Plaintiff asserts state law claims for fraud and suppression that relate to the cost, terms and/or benefits of his Certificate of Insurance.  Exhibit G, First Amended Complaint.  Plaintiff also seeks unspecified compensatory and punitive damages and demands a jury trial.   Exhibit G.

As revealed during Plaintiff's stepmother's deposition and as shown herein, Plaintiff's insurance, which forms the basis of his allegations, is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and Plaintiff's state law claims, claims for punitive or extracontractual damages, and demand for a jury trial are preempted and should be dismissed.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56 (c); *see Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1082 (11th Cir. 2004).  The evidence and reasonable inferences therefrom should be viewed in the light most favorable to the non-movant and all reasonable doubts should be resolved in favor of the non-movant.  *Fla. Pub. Interest Research Group Citizen Lobby, Inc.*, 386 F.3d at 1082.  Once the moving party has submitted a properly supported motion for

4

summary judgment, the non-moving party has the burden of producing specific facts demonstrating that a genuine issue of material fact exists. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). The existence of some evidence will not defeat a motion for summary judgment and sufficient evidence favoring the non-moving party that would support a jury verdict is required. *See Bailey*, 284 F.3d at 1243.

## ARGUMENT

Congress enacted ERISA, 29 U.S.C. § 1001 *et seq.*, to protect "the interests of participants in employee benefit plans and their beneficiaries . . . ." 29 U.S.C. § 1001. When drafting ERISA, its Congressional authors established a uniform, federal, administrative scheme, providing a set of standard procedures to guide administration of plans, the processing of claims, and disbursement of benefits. *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 9-11, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987). One of the core purposes of ERISA is to provide uniformity in the administration of employee benefit plans and avoid subjecting plan administration to varying standards created by differing State laws. *Coyne*, 482 U.S. at 9. The need for a uniform federal regulatory and administrative scheme prompted Congress to enact a broad statutory preemption provision, Section 514(a), which provides, that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a); *see Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990). ERISA Section 514(c)(1) defines state laws as "[a]ll laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). Therefore, if ERISA preemption applies, state, common law claims, state statutes, state law remedies, and/or state regulations are displaced, and ERISA becomes controlling law. The insured's sole remedies are those granted by ERISA. *See* 29 U.S.C. § 1132.

5

In determining "whether ERISA applies to a particular plan, courts usually begin by examining whether the plan falls within the regulatory safe harbor…." *Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1263 n.2 (11th Cir. 2004). If a court finds that a plan falls outside of a safe harbor, it must then examine whether the plan satisfies the statutory definition of an "employee welfare benefit plan" found in 29 U.S.C. § 1002(1). If the court determines that the plan qualifies as an "employee welfare benefit plan" for purposes of ERISA, federal ERISA law governs the plan and preempts state, common law claims, state statutes, state law remedies, and/or state regulations. 29 U.S.C. § 1144(a).

A.    **Plaintiff's Insurance Is Not Excluded By ERISA's Safe Harbor Regulations.**

The Department of Labor, which under 29 U.S.C. § 1135 is empowered to promulgate rules interpreting ERISA, has issued "safe harbor" regulations. These regulations provide that group insurance offered to workers through their place of employment will not be deemed an insurance plan if the insurance program satisfies certain enumerated criteria.

-- Certain group or group-type insurance programs.

For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1)    No contributions are made by an employer or employee organization;

(2)    Participation in the program is completely voluntary for employees or members;

(3)    The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

6

(4)     The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with the payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

The failure to meet even one of these criteria will keep a plan out of the safe harbor.  *See, e.g., Glass v. United of Omaha Life Insurance Co.*, 33 F.3d 1341 (11th Cir. 1994); *Shipley v. Providence Life & Accident Insurance Co.*, 352 F. Supp. 2d 1213 (S.D. Ala. 2004).

The first requirement of the safe harbor regulations is that the employer made no contributions to the insurance program.  Here, it is undisputed that Plaintiff was working for T&T Construction.  Exhibit A, p. 15, lines 2-5.  It is also undisputed that in lieu of providing a raise in Plaintiff's salary, his employer paid the insurance premiums so that Plaintiff could obtain and maintain health insurance.  Exhibit A, p. 24, line 15 – p. 25, line 21; p. 32, lines 5-23; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23.  Consequently, Plaintiff's insurance is not exempted from ERISA by the safe harbor regulation, because it does not satisfy the regulations' requirement that the employer not subsidize the cost of the insurance.  *See* 29 C.F.R. § 2510.3-1(j)(1).

Since the Plaintiff's insurance is not sheltered by the safe harbor, the next step is to determine whether Plaintiff's insurance is governed by ERISA; specifically, whether the insurance is an "employee welfare benefit plan" as defined in the statute.

**B.     Plaintiff's Insurance Is An "Employee Welfare Benefit Plan" Under ERISA.**

In enacting ERISA, Congress established a regulatory regime governing "employee benefit plans."  29 U.S.C. § 1003.  Subject to certain statutory exceptions (*see* 29 U.S.C. § 1144(b)), none of which are implicated in this case, ERISA supersedes "any and all State laws

insofar as they . . . relate to the employee benefit plan….” 29 U.S.C. § 1144(a).  *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987).  Whether the insurance dispute at issue falls within ERISA’s preemptive scope depends on whether Plaintiff’s insurance qualifies as an “employee benefit plan” for ERISA purposes.

ERISA defines the term “employee benefit plan” as including, *inter alia*, any “employee welfare benefit plan,” 29 U.S.C. § 1002(3), which the statute in turn broadly defines as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, [or various other enumerated categories of benefits].

29 U.S.C. § 1002(1).  The Eleventh Circuit Court of Appeals has broken this statutory language into five separate requirements that a benefit plan must meet in order to be legally recognized as an “employee welfare benefit plan” under ERISA.  The five requirements, as applicable to this case, are: “(1) a ‘plan, fund, or program’ (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability [and other benefits] (5) to participants or their beneficiaries.” *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982)(*en banc*); *see also Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207, 1214 (11th Cir. 1999); *Smith v. Jefferson Pilot Life Insurance Co.*, 14 F.3d 562, 567 (11th Cir. 1994), *cert. denied*, 513 U.S. 808 (1994).  “If a plan meets the five criteria outlined in *Donovan* it is governed by ERISA whether or not the parties wish to be subject to ERISA.” *Peckham v. Gem State Mutual of Utah*, 964 F.2d 1043, 1049 n.11 (10th Cir. 1992); *see also Donovan*, 688 F.2d at 1372-74.

    1.    <u>Plan, fund, or program</u>.

An ERISA plan, fund, or program "exists whenever there are 'intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits.'" *Butero*, 174 F.3d at 1214 (quoting *Donovan*, 688 F.2d at 1372).

Here, the intended benefits were the health insurance benefits under the Certificate of Insurance issued to Plaintiff by PFL Life Insurance Company. Exhibit E. The intended beneficiary was Plaintiff. "[T]he requirement that there exist an identifiable class of beneficiaries is satisfied even if the benefit in question is conferred on only a single person." *Randol v. Mid-West National Life Insurance Co. of Tennessee*, 987 F.2d 1547, 1550 n.4 (11th Cir. 1993), *cert. denied*, 510 U.S. 863 (1993)(citing *Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991)). The source of financing was Plaintiff's employer, who paid all of the premium payments in lieu of raising Plaintiff's salary. Exhibit A, p. 24, line 15 – p. 25, line 21; p. 32, lines 5-23; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23. Finally, the procedures for applying for and receiving benefits were those set out in the Certificate of Insurance itself as prescribed by PFL Life Insurance Company. Exhibit E; *see Randol*, 987 F.2d at 1550 n.5 ("[A] commercially purchased insurance policy under which the procedures for receiving benefits are all dictated by the insurance carrier can constitute a plan for ERISA purposes.").

    2.    <u>Established or maintained</u>.

Having shown that Plaintiff's insurance qualifies as a plan, fund, or program as contemplated by ERISA, the next step is to show that the insurance was established or maintained by Plaintiff's employer, to ensure that the plan was part of an employment relationship. "A plan is 'established' when there has been some degree of implementation by the employer going beyond a mere intent to confer a benefit." *Anderson v. UNUM Provident Corp.*,

369 F.3d 1257, 1264 (11th Cir. 2004)(quoting *Butero*, 174 F.3d at 1214); *see also Donovan*, 688 F.2d at 1373. The Eleventh Circuit has suggested several factors that may be relevant in the inquiry as to whether an employee welfare benefit plan has been established by the employer as well as whether the employer maintained the plan. They include "(1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent." *Anderson*, 369 F.3d at 1265 (quoting *Butero*, 174 F.3d at 1215).

From the testimony of Plaintiff's stepmother, there is substantial evidence from which a reasonable person would conclude that Plaintiff's employer established and maintained a plan to provide health insurance benefits to Plaintiff, its employee, as part of the employment relationship. In 1996, Plaintiff's father/employer (T&T Construction) and his stepmother began discussing Plaintiff's need for some health insurance and decided to provide insurance for Plaintiff as an employee. Exhibit A, p. 24, lines 15-18; p. 25, lines 1-5; p. 27, lines 2-16; p. 32, lines 5-23; p. 33, lines 1-12. Plaintiff's stepmother, the office manager who handled the financial aspects of that business, (a) consulted and scheduled a meeting with the insurance salesman, Plaintiff and herself; (b) participated in that meeting; (c) paid for the initial premium for Plaintiff's insurance using funds from a joint account used for company business; and (d) signed bank authorizations for future premiums to be deducted from joint accounts used for business purposes. Exhibit A, p. 14, line 10 – p. 15, line 1; p. 32, line 5 – p. 34, line 18; Exhibits D and F. In fact, during the entire time Plaintiff's insurance was in force, the premiums were paid from a bank account used for business purposes by Plaintiff's employer. Exhibit A, p. 22,

line 3 – p. 23, line 7; p. 24, lines 20-23; p. 25, lines 6-21; p. 34, lines 16-18; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-5.  Plaintiff's employer paid the insurance premiums for Plaintiff in lieu of providing him with a raise in salary.  Exhibit A, p. 24, line 15 – p. 25, line 21; p. 32, lines 5-23; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23.  Plaintiff's employer thus took an active and continuing role in establishing and maintaining health insurance for Plaintiff.  As for the reasonable understanding of Plaintiff, looking at Plaintiff's point of view, he obviously knew that his employer was paying his insurance premiums, given that those premium payments were being made in lieu of a raise in salary.

In a factually similar case, the Eleventh Circuit Court of Appeals found that the insurance program qualified as an employee welfare benefit plan governed by ERISA where plaintiff's employer contributed $75.00 toward the monthly premium by writing a check for the full amount and deducting the cost of the premium, less the $75.00 contribution, from the employees' paychecks.  *Randol v. Mid-West National Life Insurance Co. of Tennessee*, 987 F.2d 1547, 1552 (11th Cir. 1993), *cert. denied*, 510 U.S. 863 (1993).  The employer's involvement in the present case is substantially more significant than the employer's involvement in the *Randol* case.  The *Randol* employer agreed to contribute $75.00 month to offset the costs of the insurance policy for each employee who decided to enroll in the policy.  *Randol*, 987 F.2d at 1549.  The *Randol* employer also agreed to deduct the employees' respective share of the monthly premiums through a payroll deduction.  *Id.*  In the present case, the employer made a decision to provide health insurance benefits to Plaintiff.  The employer's representative initiated contact and scheduled a meeting that led to the purchase of the insurance.  The employer paid the entire amount of the monthly premium for the insurance that funded the plan.  The employer continued to pay the premiums even though the premiums increased during the period the insurance was in

11

effect. These facts demonstrate that Plaintiff's insurance, which as shown above qualifies as a plan, fund, or program as contemplated by ERISA, was "established" and "maintained" by his employer.[1]

    3.    <u>By an employer or by an employee organization, or by both</u>.

The third requirement is that the plan be established or maintained by an employer or by an employee organization, or by both. An 'employer' is "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002(5). Plaintiff was employed by T&T Construction, a business owned and/or operated by his father and stepmother. Exhibit A, p. 13, line 16 – p. 15, line 5. T&T Construction established and paid for health insurance for the Plaintiff, its employee. Exhibit A, p. 24, line 15 – p. 25, line 21; p. 27, lines 2-16; p. 32, line 5 – p. 33, line 12; p. 34, lines 16-18; p. 53, lines 5-8; p. 66, lines 2-5.

    4.    <u>For the purpose of providing medical, surgical, hospital care, sickness, accident, disability and other benefits</u>; and

    5.    <u>To participants or their beneficiaries</u>.

With respect to the fourth and fifth *Donovan* criteria, each of them is satisfied as well. The purpose of the insurance was to provide health insurance benefits to Plaintiff, as outlined in the Certificate of Insurance. Exhibit E. In *Donovan*, the *en banc* Court held that there is no requirement that the employer play any role in administering the plan in order for it to be deemed

---

[1]    *See, e.g., Stern v. Provident Life & Accident Insurance Co.*, 295 F. Supp. 2d 1321 (M.D. Fla. 2003)(employer paid the premiums pursuant to a plan established with the insurer; the plan was subject to ERISA); *Mitchell v. Alabama Hospitality Ass'n, Inc.*, No. Civ. A. 00-D-1327-N, 2001 WL 237303 (M.D. Ala. Mar. 5, 2001)(employment benefit plan qualified as an ERISA plan where employer established the plan by writing the first check to purchase the policy and later paid monthly premiums on the company's bank account).

an ERISA employee welfare benefit plan, where, as here, the procedures for providing benefits are all dictated by the insurance carrier. *Donovan*, 688 F.2d at 1374; *see also International Resources, Inc., et al. v. New York Life Insurance Co.*, 950 F.2d 294, 297-98 (6th Cir. 1991), *cert. denied*, 504 U.S. 973 (1992); *Brundage-Peterson v. Compcare Health Services Insurance Corp.*, 877 F.2d 509, 510-11 (7th Cir. 1989). In fact, the 29 U.S.C. § 1002(1) definition expressly contemplates and encompasses benefits "provided . . . through the purchase of insurance."

And again, even though the number of participants here is quite small, the Eleventh Circuit has held that for the purposes of the *Donovan* definition of an ERISA plan, the requirement that there exists an identifiable class of beneficiaries is satisfied even if the benefit in question is conferred on only a single person. *See Williams v. Wright*, 927 F.2d 1540, 1545 (11th Cir. 1991); *Randol*, 987 F.2d at 1550 n.4.

Thus, Defendants have shown that Plaintiff's insurance qualifies as an "employee welfare benefit plan" under ERISA. The next step is to show that Plaintiff's claims are sufficiently related to his employee welfare benefit plan to fall within ERISA's preemptive scope.

## C.   Plaintiff's State Law Claims Relate To His ERISA Insurance Plan And Therefore Are Preempted and Should be Dismissed.

Since Plaintiff's insurance qualifies as an "employee welfare benefit plan" for purposes of ERISA, federal ERISA law governs the plan. In accordance with 29 U.S.C. § 1144(a), ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan…." ERISA preempts any state law – including common law claims, state statutes, state law remedies, and/or state regulations – which either directly or indirectly impact an ERISA employee benefit plan. 29 U.S.C. § 1144(a).

13

The essential inquiry is whether the claims "relate to" an ERISA plan. The Supreme Court has stated that the words "relate to" in ERISA's preemption provision should be broadly construed in that a particular state law claim "relates to" an ERISA plan if the state law claim "has a connection with or reference to" an employee benefit plan. *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983). Claims which are "related to" ERISA plans are those claims which "specifically refer[] to and affect[] ERISA plans, would contravene the structure or purpose of ERISA, would require a construction of the benefit plan, or would mandate an interpretation of the statutory duties of one of the parties to the plan." *Consumer Benefit Ass'n v. Lexington Insurance Co.*, 731 F. Supp. 1510, 1515 (M.D. Ala. 1990).

Plaintiff asserts that Defendants committed intentional fraud and/or suppression and innocent, reckless, negligent and/or wanton fraud and/or suppression in connection with the cost, terms and/or benefits of his Certificate of Insurance. Exhibit G, Counts One, Two and Three. Specifically, Plaintiff alleges he was told he was purchasing "major medical group" health insurance; that once he was insured, he would become a member of a "group" of insured persons; and that any future premium increases would be increased equally for all other members of the group. Exhibit G, ¶ 6 and Count One. Plaintiff also asserts that it was not disclosed that the insurance product he purchased was actually individual coverage; that the premium rates would not be calculated upon group experience; that his premiums would not be the same as other members of the group; and that his renewal premiums would not be based upon group experience but instead upon his individual claims experience and health status. Exhibit G, ¶¶ 8, 10 and Count Two. Plaintiff further contends that Defendants on an annual basis throughout the life of the subject insurance furthered their misrepresentation of the true nature of the insurance by fraudulently concealing that Defendants were re-underwriting Plaintiff's insurance on an

14

annual basis based upon Plaintiff's health and claim history in determining the premium charged to Plaintiff. Exhibit G, ¶ 9. Plaintiff also asserts that Defendants innocently, recklessly, negligently or wantonly made these alleged misrepresentations and/or suppressions of material fact relating to the nature of the insurance. Exhibit G, Count Three. Plaintiff seeks damages for the lost value of premium payments; for not having the insurance plan as represented; for the lost interest on premium payments; for being forced to pay higher premium payments or lose coverage; and for mental anguish and emotional distress. Exhibit G, ¶ 32.

Thus, as evidenced from the face of the Amended Complaint, the primary focus of Plaintiff's claims are alleged misrepresentations and suppressions of material fact with regard to his insurance and how the premiums were assessed on his insurance during the period of time Plaintiff was an insured. Plaintiff contends that those premiums were based on his own health status and claims experience and not on that of the group or class of other certificate holders of that insurance. *See generally* Exhibit G. Such claims and any liability of Defendants would exist only as a result of the interpretation of Plaintiff's Certificate of Insurance, an ERISA-regulated benefit plan. Evidence of that fact is the specific language in the insurance certificate advising Plaintiff that the premium rates might change from time to time and that the insurer reserved the right to change the premium rates. Exhibit E, p. 16, "Premium Changes" section and the Amendatory Endorsement, ¶ 1. Plaintiff's claims thus undisputedly have a connection with or reference to his insurance plan, given that Plaintiff is seeking to enforce his understanding under the terms of the plan that the premiums could be changed on a group basis and not on an individual basis. This lawsuit is not solely focused on fraud claims with respect to the relationship between Plaintiff and his insurer, but instead on the true nature, rights under and/or cost, terms and provisions of Plaintiff's insurance. To determine the merits of Plaintiff's

state law claims for fraud, this Court would need to evaluate the truthfulness of the alleged misrepresentations and suppressions of material fact in conjunction with the actual terms, provisions and administration of his insurance.  Defendants' potential state law liability would derive from the particular rights and obligations established by and the administration of Plaintiff's ERISA-regulated benefit plan.  Since Plaintiff's claims require a construction of or necessitate a reference to the plan's provisions, they "relate to" the plan.  Given that Plaintiff's state law claims "relate to" an ERISA employee welfare benefit plan, they fall within ERISA's preemptive scope and are barred pursuant to 29 U.S.C. § 1144(a). *See, e.g., Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1065 (11th Cir. 1998)(the Court would be unable to determine whether there was fraud without referring to the terms of the written policy to determine the truth of the alleged misrepresentations); *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir. 1997)(a determination of the merits of the state law claim for fraud would require the Court to compare the benefits under the plans provided by current and former employers).

In *Bridges v. Principal Life Insurance Co., et al.*, 132 F. Supp. 2d 1325, 1327, 1329 (M.D. Ala. 2001), the plaintiff alleged fraud with respect to the nature of her retirement plan, given that it was actually an adjustable life insurance plan, and contended that her claims did not relate to an ERISA plan because she was not making a claim for any benefits, but instead was claiming she was fraudulently induced to purchase the policy.  The Court started its analysis by noting the Eleventh Circuit's statement "that claims against an insurer for fraud and fraud in the inducement to purchase a policy are in essence claims 'to recover benefits due to [the beneficiary] under the terms of the plan.'"  *Id*. at 1329 (citation omitted).  The Court then noted that the words "relate to" in ERISA's preemption provision should be broadly construed in that a

16

particular state law claim "relates to" an ERISA plan if the state law claim has "a connection with or reference to" an employee benefit plan. *Id.* (citation omitted). Not unlike Plaintiff here, the plaintiff in *Bridges* claimed that specific plan attributes were promised to her, and that she suffered damages because she lost the use and benefit of her premium payments, did not have the retirement plan she thought she had, and had suffered anxiety and emotional distress. *Id.* at 1330. The Court found that it would be unable to determine whether Bridges was fraudulently induced "without resorting to the written policy and assessing the truth of the agent's representations," since the dispositive facts for that claim was "the truthfulness of representations," which can only be evaluated based on the actual terms of the plan. *Id.* Such is the case here, where the terms of the Plaintiff's ERISA plan are crucial to the resolution of his state law fraud claims.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), ERISA's preemption clause, is a broad-sweeping provision. Defendants have proven, by offering, *inter alia*, applicable provisions of ERISA, recent federal court decisions, many of which were rendered by this Court and the Eleventh Circuit Court of Appeals, the allegations in the Amended Complaint, the terms and provisions of the Certificate of Insurance, and deposition testimony, (i) that Plaintiff's insurance plan meets all of the requirements for a "employee welfare benefit plan" for purposes of ERISA; and (ii) that because the terms of this ERISA plan are critical to the resolution of the Plaintiff's state law claims, those claims are sufficiently related to the plan to fall within ERISA's preemptive scope.

In addition, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S.

200, 209, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004)(citing *Pilot Life,* 481 U.S. at 54-56 and *Ingersoll-Rand*, *supra,* 498 U.S. at 143-145).  Plaintiff's state law causes of action for fraud and suppression provide for remedies that conflict with the exclusive civil enforcement scheme under ERISA § 502(a).  *See Aetna*, 124 S. Ct. at  2500.  Only contractual damages are available in ERISA cases.  *McRae v. Seafarer's Welfare Plan*, 920 F.2d 819, 821-22 (11th Cir. 1991).  To the extent Plaintiff has any claims, they must be asserted under § 502 of ERISA, 29 U.S.C. § 1132.

**D.    Plaintiff's Claims for Punitive or Extracontractual Damages Should be Dismissed.**

Plaintiff's claims for punitive or extracontractual damages must be dismissed as those damages are not available in an action governed by ERISA.  *Ingersoll-Rand*, 498 U.S. at 143-145; *McRae,* 920 F.2d at 821 ("[E]xtra-contractual damages are not available under . . . 29 U.S.C. § 1132(a)(3).").

**E.    Plaintiff's Demand for a Jury Trial Should be Dismissed.**

As a practical matter, there is no right to a jury trial on an ERISA claim.  *Biggers, et al. v. Wittek Industries, Inc.*, 4 F.3d 291, 293, 298 (4th Cir. 1993).  Plaintiff states a demand for a jury trial in his First Amended Complaint.  Exhibit G, p. 14.  Since Plaintiff is not entitled to a trial by jury pursuant to the provisions of ERISA, his jury demand must be dismissed.  *Blake v. Unionmutual Stock Life Insurance Co. of America*, 906 F.2d 1525, 1526 (11th Cir. 1990)(plaintiff was not entitled to a jury trial under ERISA); *see also Howard v. Parisian, Inc.*, 807 F.2d 1560, 1567 (11th Cir. 1987) (same).

WHEREFORE, premises considered, Defendants respectfully request that this Court enter an Order granting summary judgment in favor of Defendants on Plaintiff's state law claims,

18

claims for punitive or contractual damages, and jury demand.  Defendants also request such other

and further relief to which they are justly entitled.


                                             *s/Pamela A. Moore*_____
                                             JAMES W. LAMPKIN II (LAMPJ7474)
                                             PAMELA A. MOORE (MOORP5421)
                                             Attorneys for Defendants

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)



                          CERTIFICATE OF SERVICE

        I hereby certify that on July 26, 2007, the foregoing document was electronically filed
with the Clerk of this Court using the CM/ECF system, which will send notification of such
filing to the following:

        Steven W. Couch, Esq.
        Hollis & Wright, P.C.
        505 North 20th Street, Suite 1500
        Birmingham, Alabama  35203



                                             *s/Pamela A. Moore*_____
                                             COUNSEL



                                   19