IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TROY E. TILLERSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO. 3:05-cv-985-MEF |
| | * | |
| THE MEGA LIFE AND HEALTH | * | |
| INSURANCE CORPORATION, a | * | |
| corporation; TRANSAMERICA LIFE | * | |
| INSURANCE COMPANY F/K/A PFL | * | |
| LIFE INSURANCE COMPANY, a | * | |
| corporation; NATIONAL ASSOCIATION | * | |
| FOR THE SELF EMPLOYED A/K/A | * | |
| NASE, a corporation, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANT THE MEGA LIFE AND HEALTH INSURANCE COMPANY'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, The MEGA Life and Health Insurance Company ("MEGA"), and files

this brief in support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure.[1]

**NARRATIVE SUMMARY OF RELEVANT FACTS**

Plaintiff's allegations focus on the nature and cost of certain health insurance. (Exhibit

A, Amended Complaint). Plaintiff, as a member of Defendant National Association for the Self-

Employed, Inc. ("NASE"), applied for the insurance on July 9, 1996. (Exhibit A, ¶¶ 5-6).

Plaintiff was issued a Certificate of Insurance for certain group health insurance benefits,

effective July 26, 1996. (Exhibit B, Certificate of Insurance with attached application, produced

---

[1]        MEGA specifically reserves and does not waive the arguments raised in Defendants' Motion for
Summary Judgment on Plaintiff's State Law Claims, Claims for Punitive or Extracontractual Damages,
and Jury Demand Based on ERISA Preemption, which is pending before this Court.

by Plaintiff).

Plaintiff alleges that Dan Splawn, the salesperson (who is not a named defendant), as "an agent of the Defendants," misrepresented the nature and cost of the health insurance. (Exhibit A, ¶ 6 and Count One). Specifically, Plaintiff alleges he was told he was purchasing "major medical group" health insurance; that once he was insured, he would become a member of a group of insured persons; and that any future premium increases would be increased equally for all other members of the group. (Exhibit A, ¶ 6 and Count One). Plaintiff also asserts that it was not disclosed that the insurance product he purchased was an individual policy and not "major medical group" insurance; that the premium rates would not be calculated upon the group's experience; that his premiums would not be the same as other members of the group; and that his renewal premiums would not be based upon the group's experience but instead upon his individual claims experience and health status. (Exhibit A, ¶¶ 8, 10 and Count Two). Plaintiff further contends that throughout the life of the subject insurance, Defendants furthered their misrepresentation of the nature of the insurance by fraudulently concealing that in determining his premium, Defendants were re-underwriting Plaintiff's insurance based upon his individual health status and claim history. (Exhibit A, ¶ 9 and Count Two). Plaintiff also asserts that Defendants innocently, recklessly, negligently or wantonly made these alleged misrepresentations and/or suppressions of material fact. (Exhibit A, Count Three). Plaintiff seeks damages for the lost value of premium payments; for not having the insurance plan as represented; for lost interest on premium payments; for being forced to pay higher premium payments or lose coverage; and for mental anguish and emotional distress. (Exhibit A, ¶ 32).

Plaintiff, who can read and write, received his insurance certificate in 1996. (*See* Exhibit C, Excerpts of Plaintiff's Deposition, p. 14, lines 22-23; p. 27, line 22 – p. 28, line 1). Plaintiff's

Certificate of Insurance summarizes the rights and benefits under the Group Policy and contains specific language that benefits would be paid in accordance with the Group Policy (the NASE being the policyholder), and that the premium rates might change from time to time.  (Exhibit B, pp. 1, 4-5; p. 16 "Premium Changes"; the Amendatory Endorsement, ¶ 1; p. 20).

Plaintiff received 16 letters over a period of seven years (1998 – 2005), which informed him of a change in his premium rate and the reasons why that was necessary, that everyone with coverage such as his would also have an increase, and of options to limit the amount of the increase or possibly even lower the premium.  (*See* Exhibit D, Premium Change Letters produced by Plaintiff; Exhibit C, p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22).

Plaintiff did not file this lawsuit until October 13, 2005.

Plaintiff's employer paid the premiums for Plaintiff's insurance during the entire time it was in force, in lieu of providing Plaintiff with a raise in pay.  (*See* Exhibit E, Excerpts of Sue Ann Tinkey's Deposition, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).

Plaintiff's insurance was individually underwritten by MEGA for association group health insurance benefits, based upon the information Plaintiff provided on his application and in accordance with MEGA's underwriting guidelines.  (*See* Exhibit F, Excerpts of Deposition of Linton Checka, Central Underwriting Manager, p. 15, lines 3-23).  Plaintiff's insurance was only underwritten once, when he initially submitted his application.  (Exhibit F, p. 66, lines 1-9; p. 94, line 13 – p. 95, line 17).  Plaintiff's insurance would not have gone through the underwriting process again, because he never requested an upgrade or increase in his benefits.  (*Id.*)

With regard to the rating of Plaintiff's insurance, the standard rate was calculated by looking at all of the claims that would have been submitted under the certificates of insurance in

3

that block of business – that is, the claims experience of the entire group of which Plaintiff was a member went into the calculation of the group premium rate.  (*See* Exhibit G, Excerpts of Deposition of Virgil Meier, Associate Actuary, p. 46, line 13 – p. 47, line 12; p. 48, line 23 – p. 49, line 6; p. 103, line 14 – p. 104, line 8).

On at least two occasions, since the group of insureds of which Plaintiff was a member was so small, it was merged with other groups with similar plans so that it could be reasonably rated and to determine what the renewal rate should be.  (Exhibit G, p. 117, lines 3-23; p. 119, lines 2-19; p. 137, lines 14-22).  Doing so would have the effect of spreading out the risk by adding additional individuals.  (Exhibit G, p. 137, line 23 – p. 138, line 5).  By spreading out the risk, MEGA was working to determine the correct rate for that group of individuals.  (Exhibit G, p. 138, lines 6-13).

Once an individual insured is rated based on the appropriate methodology, he or she remains so rated on any renewals; that is, once an individual is established at that rate, it stays that way throughout the term of the insurance.  (Exhibit G, p. 90, lines 1-14).  If an individual, such as the Plaintiff, was issued insurance and then developed some sort of medical condition, such as cancer, there would not be any medical rating as a result thereof, and that individual would stay at the same rating assessed at the initial time the insurance was issued and would have the same rate changes as everyone else on his or her policy form.  (Exhibit G, p. 90, line 15 – p. 91, line 4; p. 135, line 16 – p. 136, line 4).  An individual insured's health condition would not cause his or her premiums to go up more than anyone else in the group.  (Exhibit G, p. 136, lines 5-8).

As will be demonstrated herein, there is no genuine issue of material fact as to any of the claims Plaintiff attempts to assert against MEGA, and all of those claims should be dismissed.

4

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1082 (11th Cir. 2004).  The evidence and reasonable inferences therefrom should be viewed in the light most favorable to the non-movant and all reasonable doubts should be resolved in favor of the non-movant.  *Fla. Pub. Interest Research Group Citizen Lobby, Inc.*, 386 F.3d at 1082.  Once the moving party has submitted a properly supported motion for summary judgment, the non-moving party has the burden of producing specific facts demonstrating that a genuine issue of material fact exists.  *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002).  The existence of some evidence will not defeat a motion for summary judgment and sufficient evidence favoring the non-moving party that would support a jury verdict is required.  *Bailey*, 284 F.3d at 1243.

## ARGUMENT AND AUTHORITIES

### I.    The Claims Asserted by Plaintiff Against MEGA Cannot Be Established Under Alabama Law.

A review of Alabama law that governs Plaintiff's claims shows that Plaintiff cannot establish any of his causes of action against MEGA.  The cornerstone allegations in Plaintiff's Amended Complaint are that the Defendants made certain fraudulent misrepresentations and/or suppressions of material fact with regard to the nature and cost of health insurance that was issued to him on July 26, 1996.

A.    **Plaintiff Cannot Establish Fraudulent Misrepresentation (Count One).**

Plaintiff asserts that on or about July 9, 1996, he applied for health insurance that was sold to him by Dan Splawn, an "agent of the Defendants." (Exhibit A, ¶ 6). Plaintiff further asserts that at that time, Dan Splawn told him that he was purchasing "major medical group" health insurance and that he would become a member of a group of insured persons where his premiums would be the same as those charged to other members of the group. (Exhibit A, ¶ 6). Plaintiff alleges that those representations were fraudulent, inducing him to purchase and continue having his premium payments paid for the insurance. (Exhibit A, ¶¶ 6-7; Count One).

Plaintiff must present substantial evidence of each of the following elements to establish his fraudulent misrepresentation claim against MEGA: "(1) that [MEGA] made a false representation; (2) of a material existing fact; (3) on which [Plaintiff] reasonably relied; and (4) which proximately caused injury or damage to [Plaintiff]"(citation omitted). *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001).

1.    MEGA Did Not Make a False Representation to Plaintiff.

As for the first element of this claim, Plaintiff must prove that MEGA made a false representation to Plaintiff; otherwise, Plaintiff's claim for fraudulent misrepresentation against MEGA must fail. It is telling that the allegations in Plaintiff's Amended Complaint are directed against the "Defendants" as a group. Plaintiff sets forth his alleged misrepresentations about the nature of the insurance in generalized and conclusory statements against the "Defendants." (Exhibit A, ¶¶ 6-7; Count One). Plaintiff does not inform each Defendant of the specific fraudulent acts that constitute the basis of this action against that Defendant. Plaintiff's fraudulent suppression claim (as discussed in the following section) is also asserted against the "Defendants," as a group, based on the alleged failure to tell Plaintiff that the same alleged

6

representations were not true.  (Exhibit A, ¶¶ 8-10; Count Two).  Plaintiff's claims that said misrepresentations and/or suppressions of material fact were also made innocently, recklessly, negligently or wantonly are also directed globally to "Defendants."  (Exhibit A, Count Three). Plaintiff's Amended Complaint simply does not sufficiently or properly assert any particular fraud-based claim against MEGA.  And even if the Court determines otherwise and finds that Plaintiff's Amended Complaint does sufficiently direct that MEGA made these false representations, those alleged representations were not false and were not such that Plaintiff could have reasonably relied thereon and which proximately caused damage to him, as discussed below.

Plaintiff asserts that the nature and cost of the insurance were misrepresented to him by the Defendants.  Specifically, Plaintiff alleges he was told he was purchasing group insurance but instead was issued an individual policy because his premiums were not based on the group's experience, but instead were based on his individual claims experience and health status. (Exhibit A, ¶ 6 and Count One).  Plaintiff also asserts that his insurance was annually re-underwritten based on his individual claim history and health status.  (Exhibit A, ¶ 9).

MEGA did not make a false representation to Plaintiff.  Plaintiff, as an NASE member, was offered the opportunity to apply for association group health insurance.  Plaintiff applied for certain health insurance benefits and was issued, effective July 26, 1996, a Certificate of Insurance that outlines those benefits.  (Exhibit B).  As a result of a contractual arrangement with Defendant Transamerica Life Insurance Company (formerly PFL Life Insurance Company), Plaintiff's insurance was administered by MEGA.

As for the allegation that Plaintiff was sold an individual policy and not group insurance, Plaintiff applied for association group health insurance as a member of the NASE, a business

trade association. (Exhibit B). Plaintiff's insurance was individually underwritten by MEGA for association group health insurance benefits, based upon the information Plaintiff provided on his application and in accordance with MEGA's underwriting guidelines. (Exhibit F, p. 15, lines 3-23). Plaintiff's insurance was a standard issue, with no exclusions or rate ups as a result of factors such as height or weight. (Exhibit F, p. 42, lines 11-21).

As for the allegation that the insurance was thereafter re-underwritten on an annual basis based on his individual claim history and health status, Plaintiff's insurance was only underwritten once, when he initially submitted his application. (Exhibit F, p. 66, lines 1-9; p. 94, line 13 – p. 95, line 17). Plaintiff's insurance would not have gone through the underwriting process again, because he never requested an upgrade or increase in his benefits. (*Id.*)

As for the allegation that Plaintiff was singled out from his group for premium increases based on his individual claim history or health status, with regard to insurance rating, the standard rate is calculated by looking at all of the claims that would have been submitted under the certificates of insurance in that block of business – that is, the claim experience of the entire group of which Plaintiff was a member went into the calculation of the group premium rate. (Exhibit G, p. 46, line 13 – p. 47, line 12; p. 48, line 23 – p. 49, line 6; p. 103, line 14 – p. 104, line 8). As to what changes go into the base rate for the insurance, there could be an adjustment for inflation or experience, and the experience would be of everyone in a certificate holder's group or block of business. (Exhibit G, p. 68, lines 6-16).

Plaintiff was in a block of business that covered the certificate form that he had (PPO2), along with the other forms that were combined together for the rating. (Exhibit G, p. 103, line 14 – p. 104, line 8; p. 111, lines 17-19). Similar product designs of PPO insurance products were included in Plaintiff's block of business. (Exhibit G, p. 47, line 6 – p. 48, line 9). On at least

two occasions, since the group of insureds of which Plaintiff was a member was so small, it was merged with other groups with similar plans so that it could be reasonably rated and to determine what the renewal rate should be.  (Exhibit G, p. 117, lines 3-23; p. 119, lines 2-19; p. 137, lines 14-22).   Doing so would have the effect of spreading out the risk by adding additional individuals.  (Exhibit G, p. 137, line 23 – p. 138, line 5).  By spreading out the risk, MEGA was trying to determine the correct rate for that group of individuals.  (Exhibit G, p. 138, lines 6-13).

Once an individual insured is rated based on the appropriate methodology, he or she remains so rated on any renewals; that is, once an individual is established at that rate, it stays that way throughout the term of the insurance.  (Exhibit G, p. 90, lines 1-14).

As for the allegation that Plaintiff was singled out for premium increases based on his individual health status, if an individual such as the Plaintiff was issued insurance and then developed some sort of medical condition, such as cancer, there would not be any medical rating as a result thereof, and that individual would stay at the same rating assessed at the initial time the insurance was issued and would have the same rate changes as everyone else on his or her policy form.  (Exhibit G, p. 90, line 15 – p. 91, line 4; p. 135, line 16 – p. 136, line 4).  An individual insured's health condition would not cause his or her premiums to go up more than anyone else in the group.  (Exhibit G, p. 136, lines 5-8).

Thus, contrary to Plaintiff's allegations, the renewal rates that he received were the same rates for everyone else in his group.  (Exhibit G, p. 113, lines 3-20).  For example, when Plaintiff's premium was raised to $310.00 in December of 1998 (Exhibit D, December 21, 1998 Letter), the premium of everyone with the same characteristics or parameters was also increased. (Exhibit G, p. 113, lines 8-20).

Accordingly, Plaintiff's allegations against MEGA in this regard cannot be sustained and must fail.

2.    Plaintiff Did Not Reasonably Rely on MEGA's Alleged Misrepresentations.

Even if the Court determines that MEGA did make a false representation, the alleged misrepresentations were not such that Plaintiff could have reasonably relied thereon and which proximately caused damage to him. Plaintiff's Amended Complaint fails to explain how Plaintiff relied on MEGA's alleged representations, and Plaintiff cannot show why that reliance was reasonable. In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), the Alabama Supreme Court held that "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost*, 693 So. 2d at 421. The Court termed that standard as the "reasonable reliance" standard. That is, to recover in a fraud action, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation. Under Alabama law, a contracting party has an affirmative duty to read the contracts and related legal documents he signs or receives. *Id.* The Eleventh Circuit Court of Appeals has recognized this "duty to read" requirement:

> …Alabama law imposes upon a party the duty to read and inspect any document which might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary prudence," and that inquiry necessarily would consist of actually reading the document. This obligation is part of the "concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests," as stated in *Torres*. If the facts constituting an alleged fraud claim would be apparent from simply reading a given document, a plaintiff's failure to do so renders his reliance on previous misrepresentations unreasonable in the circumstances.

*Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

Here, Plaintiff pleads in a most conclusory fashion that he relied on the alleged misrepresentations of the Defendants to his detriment. Plaintiff must do more than simply allege that he "reasonably relied" – instead, he must explain how he relied and why that reliance was reasonable. MEGA contends that Plaintiff, however, cannot do more in that regard as to MEGA, because, even if, *arguendo*, MEGA misrepresented the nature or cost of the insurance, Plaintiff could not have reasonably relied thereon.

As evidenced by the Certificate of Insurance Plaintiff produced during discovery, insurance certificate number 732246121 was issued to Plaintiff, with an effective date of July 26, 1996. (Exhibit B). The insurance application reflects that Plaintiff, as an NASE member, applied for the insurance on July 9, 1996. (Exhibit B; Exhibit A, ¶ 6). In his deposition, Plaintiff admitted that he received the Certificate of Insurance in 1996. (Exhibit C, p. 27, line 22 – p. 28, line 1). Plaintiff can read and write. (Exhibit C, p. 14, lines 22-23). Plaintiff's Certificate of Insurance summarizes the rights and benefits under the Group Policy and contains specific language that benefits would be paid in accordance with the Group Policy (the NASE being the policyholder), and that the premium rates might change from time to time. (Exhibit B, pp. 1, 4-5; p. 16 "Premium Changes"; the Amendatory Endorsement, ¶ 1; p. 20). Plaintiff also produced during discovery 16 letters that he admittedly received over a period of seven years, dated December 21, 1998; June 21, 1999; June 28, 1999; December 20, 1999; June 19, 2000; December 26, 2000; June 25, 2001; December 24, 2001; June 24, 2002; December 26, 2002; June 26, 2003; December 26, 2003; June 26, 2004; December 26, 2004; June 21, 2005; and December 21, 2005, respectively, informing Plaintiff of a change in his premium rate and the reasons why that was necessary, that everyone with coverage such as his would also have an increase, and of options to limit the amount of the increase or possibly even lower the premium.

11

(Exhibit D; Exhibit C, p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22). Plaintiff, in fact, requested a plan change in 1999 that resulted in a premium decrease. (Exhibit D, June 28, 1999 Letter). The renewal rates that Plaintiff received were the same rates for everyone in his group. (Exhibit D; Exhibit G, p. 113, lines 3-20). Also, Plaintiff assumedly knew or should have known about his premium rate changes, given that his employer paid the premiums in lieu of an increase in Plaintiff's pay for the entire time the insurance was in force. (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).

Plaintiff does not contend that he was not in possession of those documents from their receipt until he filed this lawsuit, such that he could have reviewed them at any time. Plaintiff can read. (Exhibit C, p. 14, lines 22-23). Plaintiff had an affirmative duty to read those documents, which unquestionably contained and/or related to the nature, terms, benefits, conditions and cost of the insurance that had been issued to him. Plaintiff has not asserted that he could not understand the documents. In fact, Plaintiff admitted that he could read and understand those documents. (Exhibit C, p. 27, line 22 – p. 28, line 20; p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22). Therefore, even if, *arguendo*, the nature of the insurance and the possible increase in premiums were not fully explained by the salesperson, Plaintiff knew or should have known of the precise nature, terms, benefits, conditions and cost of his insurance when he received his insurance certificate and later related documents. Those documents put Plaintiff on notice that, contrary to the salesperson's alleged misrepresentation, Plaintiff, as a member of the NASE, was offered and issued health insurance according to the provisions of a certain Group Policy for the health insurance benefits outlined in the Certificate and associated Group Policy, that he was not being issued an individual policy, and that his premiums might increase, and if so, everyone with coverage such as his would experience an increase. Those

12

documents contradict the alleged misrepresentations purportedly made at the time of sale and later during the life of the insurance. Plaintiff could not have reasonably relied on the salesperson's alleged fraudulent misrepresentations relating to the nature and cost of the insurance purchased or any purported later misrepresentations related to premium changes, based upon the content of the documents provided to and received by Plaintiff. As a result, Plaintiff's purported reliance on MEGA's alleged misrepresentations was unreasonable.

3.  Plaintiff Cannot Show Proximate Causation of Damages.

Furthermore, Plaintiff cannot establish a causal connection between MEGA's alleged fraudulent misrepresentations and any resulting harm to Plaintiff. The same holds true with respect to Plaintiff's claims against MEGA for fraudulent suppression (that claim is discussed in greater detail in the following section of this brief). Both causes of action require Plaintiff to show that MEGA's actions proximately caused Plaintiff's damages. *Luck v. Primus Automobile Financial Services, Inc.*, 763 So. 2d 243, 245-46 (Ala. 2000)(fraudulent misrepresentation); *Compass Bank v. Snow*, 823 So. 2d 667, 672-73 (Ala. 2001)(fraudulent suppression/omission). Plaintiff does not allege facts nor has he offered testimony or other evidence to show how he was harmed by MEGA's alleged misrepresentations or omissions. Premiums were paid, the Plaintiff had insurance coverage, and claims for insurance benefits were submitted and paid.[2] Plaintiff's fraud claims against MEGA must fail as a matter of law, given that Plaintiff does not plead nor can he proffer facts indicating or proving that he was damaged by MEGA's alleged misrepresentations or suppressions of material fact.

---

[2]    Plaintiff is not asserting a claim for the payment or non-payment of any claims for insurance benefits. (*See* Exhibit C, Excerpts of Plaintiff's Deposition, p. 46, lines 5-14).

Consequently, since Plaintiff cannot establish each of the requisite elements of his fraudulent misrepresentation claim against MEGA, that claim should be dismissed.

**B.    Plaintiff Cannot Establish Fraudulent Suppression of Material Facts (Count Two).**

Plaintiff asserts that the Defendants suppressed material facts relating to the nature of the health insurance, by failing to disclose that it was not "major medical group" insurance and that his premium rates were not group rates, because his premiums were based on his individual health status and claim history and not the claims experience of his entire group.  (Exhibit A, ¶¶ 8, 10; Count Two).  Plaintiff also alleges that the Defendants failed to disclose that they were re-underwriting Plaintiff's insurance based upon his individual health status and claim history. (Exhibit A, ¶ 9; Count Two).

In order to establish a *prima facie* claim of fraudulent suppression against MEGA, Plaintiff "must produce substantial evidence establishing the following elements:  (1) that [MEGA] had a duty to disclose an existing material fact; (2) that [MEGA] suppressed that existing material fact; (3) that [MEGA] had actual knowledge of the fact; (4) that [MEGA's] suppression of the fact induced [Plaintiff] to act or to refrain from acting; and (5) that the [Plaintiff] suffered actual damage as a proximate result."  *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted).

1.    MEGA Did Not Have a Duty to Disclose.

Plaintiff must prove, among other things, that MEGA had a duty to disclose an existing material fact.  *See, e.g., Booker v. United American Insurance Co.*, 700 So. 2d 1333, 1339 (Ala. 1997)(duty to disclose is an essential element of a fraudulent suppression claim).  "The question whether a party had a duty to disclose is a question of law to be determined by the trial court."

14

*Armstrong Business Services, Inc. v. AmSouth Bank,* 817 So. 2d 665, 676-77 (Ala. 2001) (quoting *Barnett v. Funding Plus of America, Inc.,* 740 So. 2d 1069, 1074 (Ala. 1999)); *State Farm Fire & Casualty Co. v. Owen*, 729 So. 2d 834, 841-42 (Ala. 1998).  In *Armstrong Business Services,* the Court stated:  "The trial court must consider and apply the following factors in determining whether, under the particular circumstances, a duty to disclose exists: '(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.'" *Armstrong*, 817 So. 2d at 677 (quoting *State Farm Fire & Casualty Co. v. Owen,* 729 So. 2d 834, 842-43 (Ala. 1998)).  Additionally, the Alabama Supreme Court has determined that "whether one has a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case (citations omitted)….  When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested (citation omitted)."  *Mason v. Chrysler Corp.,* 653 So. 2d 951, 954-55 (Ala. 1995).  Alabama courts have "consistently held that where both parties to a transaction are knowledgeable, are capable of protecting their own interests, and are dealing at arm's length, no duty to disclose particular information exists unless the information is actually requested."  *Gewin v. TCG Asset Management Corp.*, 668 So. 2d 523, 528 (Ala. 1995), citing *Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So. 2d 238 (Ala. 1992); *Norman v. Amoco Oil Co.*, 558 So. 2d 903 (Ala. 1990); *Duke v. Jones*, 514 So. 2d 981 (Ala. 1987); *Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621 (Ala. 1986); *Bank of Red Bay v. King*, 482 So. 2d 274 (Ala. 1985).

First, Plaintiff fails to identify which of the Defendants he claims had a duty to disclose each discrete omission alleged. Plaintiff's fraudulent suppression allegations are directed against all of the Defendants, collectively. Second, even if these claims are being made against MEGA in its individual capacity, the focus of the allegations is that the nature and cost of the insurance was misrepresented by the failure to disclose at any time that Plaintiff was not purchasing group insurance but instead an individual policy, because his premiums allegedly were increased based on his individual claim history and health status and not those of the group.

Plaintiff contracted that day to purchase insurance -- an arm's length commercial transaction. Plaintiff has failed to plead any facts indicating that a special or confidential relationship existed between Plaintiff and MEGA. There simply is no specific allegation anywhere in the Amended Complaint nor could there be any allegation of fact that would explain or support why MEGA would have a duty to disclose that Plaintiff was purchasing an individual policy when in fact he was not applying for or purchasing an individual policy. As an NASE member, Plaintiff was offered the opportunity to apply for association group health insurance under an association master group policy where the NASE was the policyholder. Moreover, as shown above, there was no duty to disclose that throughout the life of the insurance, Plaintiff's insurance was re-underwritten on an annual basis based on his individual claim history and health status, because Plaintiff's insurance was only underwritten once, at the time it was originally issued.

As for the contention that Plaintiff depended on the Defendants to advise him as to all insurance matters because of their superior knowledge and position, even if, *arguendo*, MEGA could be held to have had superior knowledge of Plaintiff's health insurance needs, "superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such

information." *State Farm Fire & Casualty Company v. Owen*, 729 So. 2d 834, 843 (Ala. 1998) (finding that "[s]uperior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information" (citation omitted) and that, in "the absence of an inquiry, we cannot say that [plaintiff] had no opportunity to learn about how [his] premium would be computed.").

Plaintiff was capable of protecting his own interests and had numerous opportunities to learn and/or confirm that he had purchased group insurance and that his premium rates had increased along with other individuals with coverage like his -- by simply reading his insurance certificate and the various other related documents including the 16 letters, which he clearly had an affirmative duty to do under Alabama law.  Also, again, Plaintiff knew or should have known about his premium rate changes since his employer paid the premiums, in lieu of increasing Plaintiff's pay, during the entire time the insurance was in effect.  (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).  Plaintiff's claim against MEGA for fraudulent suppression should be dismissed.

2.     <u>MEGA Did Not Suppress Material Facts, and Plaintiff Did Not Reasonably Rely on MEGA's Alleged Suppression of Material Facts.</u>

To sustain a claim of fraudulent suppression, a plaintiff must prove, among other elements, the concealment or suppression of material facts by the defendant.  *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1197 (Ala. 2001)(quoting *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997)).  "Where the record indicates that the information alleged to have been suppressed was in fact disclosed, and there are no special circumstances affecting the plaintiff's capacity to comprehend, the plaintiff cannot recover for suppression." *Ex parte Alfa Mutual Fire Insurance Co.*, 742 So. 2d 1237, 1243 (Ala. 1999)(citation omitted).

17

"In other words, plain disclosure to a person competent in intelligence and background to understand the disclosure is the legal antithesis of suppression, by definition." *Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 746 (Ala. 2002).

Plaintiff received documents after his insurance was issued and throughout the life of the insurance, which informed him of exactly the nature, terms, benefits, conditions and cost of the insurance, that his premiums might change on a class basis, and that when they did, the reasons why he and everyone with coverage such as his experienced an increase and the options to limit the increase or perhaps even lower the premium. (Exhibits B and D).

Furthermore, a plaintiff's reasonable reliance is an essential element of his suppression claim. *See Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 744-45 (Ala. 2002)(quoting *Ex parte Household Retail Services, Inc.*, 744 So. 2d  871, 879 (Ala. 1999)); *Liberty National Life Insurance Co. v. Sherrill*, 551 So. 2d 272, 273 (Ala. 1989); *see also Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997) (referring to the reasonable reliance standard).

Plaintiff cannot show any reasonable reliance on the alleged suppression of material facts by MEGA or in fact, as discussed above, that MEGA even suppressed material facts related to the nature, terms, benefits, conditions or cost of Plaintiff's health insurance.  There is no allegation that MEGA took any affirmative action to prevent Plaintiff from discovering the facts that were allegedly suppressed from him.  Plaintiff does not assert that he did not receive his insurance certificate, which outlines the nature, terms, benefits and conditions of the insurance, or the letters related to premium changes or his requested plan change.  In fact, Plaintiff produced those documents during discovery. (Exhibits B and D).  Plaintiff had in his possession documents that provided the information allegedly suppressed.  Plaintiff can read. (Exhibit C, p. 14, lines 22-23).  Plaintiff had an affirmative duty to read those documents.  Plaintiff does not

18

contend that he could not understand the documents or that the documents did not clearly outline the nature, terms, benefits, conditions and cost of the insurance. Plaintiff, in fact, admitted that he could read and understand those documents. (Exhibit C, p. 27, line 22 – p. 28, line 20; p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22). Therefore, even if, *arguendo*, the nature, terms, benefits, conditions and cost of the insurance were not fully disclosed by the salesperson, Plaintiff knew or should have known that information when he received those documents. The documents put Plaintiff on notice of the precise nature and cost of the insurance he purchased, of the increase in premium and the reasons why that was necessary, and that everyone with coverage such as his would also experience an increase. (Exhibit B and D). The renewal rates that Plaintiff received were the same rates for everyone in his group. (Exhibit G, p. 113, lines 3-20). Additionally, Plaintiff must have been on notice of his premium rate changes, since his employer paid those premiums in lieu of increasing Plaintiff's pay, during the entire time the insurance was in force. (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).

MEGA did not suppress the material facts alleged, and Plaintiff's reliance on the alleged suppression of material facts about the insurance, when Plaintiff had in his possession documents that provided the very information allegedly suppressed, was unreasonable.

3.     Plaintiff Cannot Show Proximate Causation of Damages.

In addition, not unlike Plaintiff's fraudulent misrepresentation claim, Plaintiff cannot establish a causal connection between MEGA's alleged fraudulent suppression and any resulting harm to Plaintiff. Plaintiff is required to show that MEGA's actions proximately caused Plaintiff's damages. Plaintiff does not allege facts nor has he offered testimony to show how he was harmed by MEGA's alleged omissions. Premiums were paid, the Plaintiff had insurance

coverage, and claims for insurance benefits were submitted and paid.  (*See infra*, footnote 2). Plaintiff's fraudulent suppression claim against MEGA must fail as a matter of law, given that Plaintiff does not plead nor can he proffer facts indicating or proving that he was damaged by MEGA as a proximate result of the alleged suppression of facts about Plaintiff's insurance.

Accordingly, since Plaintiff cannot establish his fraudulent suppression claim against MEGA, that claim also should be dismissed.

C. **Plaintiff Cannot Establish Innocent, Reckless, Negligent or Wanton Misrepresentation or Suppression of Material Facts (Count Three).**

Plaintiff also contends that the Defendants innocently, recklessly, negligently or wantonly made misrepresentations and/or concealed material facts relating to the nature and cost of the insurance.  (Exhibit A, Count Three).   Under Ala. Code § 6-5-01, "legal fraud" includes misrepresentations of material fact made "by mistake and innocently," as well as misrepresentation made "willfully to deceive, or recklessly without knowledge."  Ala. Code § 6-5-101.  Section 6-5-102 recognizes a fraud claim for suppression of a material fact that the party is under an obligation to communicate.  Ala. Code § 6-5-102.  Elements of a misrepresentation claim, regardless of whether the misrepresentation is alleged to have been made willfully, recklessly, innocently or mistakenly, are (1) a false representation, (2) of a material existing fact, (3) on which the plaintiff relied, (4) that proximately resulted in damage to the plaintiff.  *See Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001); Ala. Code § 6-5-101. As for a suppression claim, regardless of whether the suppression of material fact is alleged to have been done willfully, recklessly, innocently or mistakenly, a plaintiff must prove:  "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the

20

defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result." *See State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted); Ala. Code § 6-5-102.

As for the Plaintiff's claims for negligent or wanton misrepresentation and/or suppression, Plaintiff has made these same allegations in his claims for innocent or reckless misrepresentation and/or suppression.  There is no material difference between the claims alleging negligent or wanton misrepresentation and/or suppression and the claims alleging innocent or reckless misrepresentation and/or suppression.  In fact, Plaintiff is making all of these claims in the same sentence in the same Count of his Amended Complaint, referencing the prior paragraphs of the Amended Complaint with regard to the intentional misrepresentation and suppression claims (Counts Two and Three).  The claims in Count Three fail for the same reasons outlined herein for the failure of the intentional misrepresentation and suppression claims.  For the sake of brevity, MEGA refers the Court to those arguments as outlined in Section I of this brief.  As shown herein, there is no reasonable possibility, based on the facts of this case, that Plaintiff can establish a cause of action for intentional misrepresentation or suppression, much less innocent, reckless, negligent or wanton misrepresentation or suppression against MEGA.

**D.**     **Plaintiff's Misrepresentation and Suppression Claims are Time-Barred (Counts One, Two and Three).**

Plaintiff's claims for fraudulent misrepresentation, fraudulent suppression, and innocent, reckless, negligent or wanton misrepresentation and/or suppression (all of the claims in the Amended Complaint) are time-barred by the applicable statute of limitations.  Under the doctrine of *Erie R.R. Co. v. Tompkins*, a federal court in a diversity action must apply the controlling

21

substantive law of the state.  304 U.S. 64, 58 S. Ct. 817 (1938).  In *Guaranty Trust Co. of N.Y. v. York*, the Supreme Court held that state statutes of limitations are substantive laws and must be followed by federal courts in diversity actions.  326 U.S. 99, 65 S. Ct. 1464 (1945).

The statute of limitations for Plaintiff's fraud and suppression claims is two years.  *See* Ala. Code §§ 6-2-3, 6-2-38 (1993); *Fowler v. Provident Life & Accident Insurance Co.,* 256 F. Supp. 2d 1243, 1248 (N. D. Ala. 2003)(fraud claims and negligent misrepresentation claims are subject to a two-year statute of limitations); *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1194-95 (Ala. 2001)(claims alleging fraudulent suppression are subject to a two-year statute of limitations); *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 417 (Ala. 1997)(same); *Casassa v. Liberty Life Insurance Co.*, 949 F. Supp. 825, 828 (M.D. Ala. 1996) (under Alabama law, fraudulent misrepresentation and suppression are subject to a two-year statute of limitations); *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So. 2d 454, 458, 460 (Ala. 1993) (same).

The statute of limitations for fraud and suppression claims is subject to the "discovery rule," and thus runs from the time of discovery of the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care.  *See Foremost*, 693 So. 2d at 417 (involving fraudulent misrepresentation and fraudulent suppression); Ala. Code § 6-2-3.[3]  Even though the question regarding when a plaintiff discovered or should have discovered an alleged fraud is generally a question for the jury, the Alabama Supreme Court has recognized that there are times when this question can be decided as a matter of law.  *Kelly v. Connecticut Mutual Life*

---

[3]     Under Alabama law, the statute of limitations begins to run when the cause of action "accrues," which occurs "as soon as the party in whose favor it arises is entitled to maintain a cause of action thereon," even if the "full amount of damages" is not apparent at the time the legal injury occurs (citations omitted).  *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 114 (Ala. 2003).

*Insurance Co.*, 628 So. 2d 454, 458 (Ala. 1993). In *Foremost*, the Court restored the application of the "reasonable reliance" standard with respect to fraud cases. The Court in *Foremost* found that the plaintiffs should have discovered the defendant's misrepresentation when the plaintiffs signed and received their sales documents. *Foremost*, 693 So. 2d at 422. Because the plaintiffs received their sales documents more than two years before filing their lawsuit, their misrepresentation claims were barred as a matter of law by the expiration of the applicable two-year statute of limitations. *Id.* The Court noted that the plaintiffs had received documents which, if read or even briefly skimmed, would have put a reasonable person on notice that, contrary to the defendant's representation, they had paid for their first year's coverage. *Id.* at 421-422.

Thus, in *Foremost*, the Alabama Supreme Court re-established that the objective, reasonable reliance standard for determining the accrual date for a fraud or suppression claim imposes a duty to read documents received in connection with a particular transaction. *Id.* at 421. Therefore, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms. *Id.* at 421-22. This Court and the Alabama Supreme Court have uniformly maintained the application of the *Foremost* standard. *See, e.g., Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d 1319, 1326 (M.D. Ala. 2003); *Alfa Life Insurance Corp. v. Green*, 881 So. 2d 987, 991-92 (Ala. 2003). The *Foremost* rule applies both in cases of misrepresentation and suppression. *See Foremost*, 693 So. 2d at 417 (involving fraudulent misrepresentation and fraudulent suppression); *Bullock v. United Benefit Insurance Co.,* 165 F. Supp. 2d 1255, 1258 (M. D. Ala.

2001)(involving claims of fraudulent and/or negligent misrepresentation and fraudulent suppression).

Plaintiff's fraud allegations are generalized allegations that an "agent of the Defendants" made certain misrepresentations and/or suppressions of material fact regarding the nature of the insurance at the time of purchase on July 9, 1996. Plaintiff further contends that throughout the life of the subject insurance, the Defendants furthered their misrepresentation of the nature of the insurance by fraudulently concealing that in determining his premium, they were re-underwriting Plaintiff's insurance based upon his individual health status and claim history. Plaintiff asserts that he was not on notice of and could not have discovered the alleged fraud until within two years of filing this lawsuit on October 13, 2005. (Exhibit A, ¶¶ 12, 23). The facts of this case do not support those contentions.

First, Plaintiff's assertion that he "discovered" the alleged fraud within two years of filing this lawsuit is nothing more than a legal conclusion. More than a mere conclusory statement is required to avoid dismissal of Plaintiff's claims. These types of conclusory allegations are insufficient to fall within the saving clause of Section 6-2-3 of the Alabama Code. A general reference to the fraud being "throughout the life of the subject policy" does not cure these deficiencies and does not avoid dismissal of Plaintiff's fraud claims. Under Alabama law, Plaintiff must plead facts indicating why, through the exercise of ordinary care, he could not have discovered the fraud or misrepresentation. *See, e.g., Smith v. National Security Insurance Co.*, 860 So. 2d 343, 347 (Ala. 2003)(plaintiff's "general reference to the alleged fraud as being 'of a continuing nature' [was] wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint"); *Miller v. Mobile County Board of Health*, 409 So. 2d 420, 422-423 (Ala.

1981)(affirmed dismissal of claims based on failure to plead facts to save claims from statute of limitations bar). Here, neither the initial Complaint nor the Amended Complaint provides facts or circumstances by which the Defendants, or even just MEGA, concealed Plaintiff's causes of action so as to toll the statute of limitations and neither shows what prevented Plaintiff from discovering the facts surrounding the alleged fraud and asserting his claims within the required statutory period.

Second, the *Foremost* decision forecloses the possibility of Plaintiff avoiding the statute of limitations bar on his misrepresentation and suppression claims. The focus of Plaintiff's allegations is fraud related to the nature and cost of his insurance. Plaintiff asserts that he was not sold group insurance and that his premiums were increased on an individual basis and not on a group basis. Plaintiff, who can read and write, admits that he received, and in fact produced, his insurance certificate, which outlines the nature, terms, benefits and conditions of his insurance. (Exhibit C, p. 14, lines 22-23; p. 27, line 22 – p. 28, line 20). Plaintiff's Certificate of Insurance summarizes the rights and benefits under the Group Policy and contains specific language that benefits would be paid in accordance with the Group Policy (the NASE being the policyholder). (Exhibit B, pp. 1, 4-5, 20). Plaintiff also admits that the certificate contained specific language that the premium rates were subject to change and that he understood that language. (Exhibit C, p. 28, line 2 – p. 30, line 21 and Exhibit 2 to the deposition; Exhibit B, p. 16 "Premium Changes" and the Amendatory Endorsement, ¶ 1). Plaintiff also produced during discovery and admittedly received 16 letters over a period of seven years (dated December 21, 1998; June 21, 1999; June 28, 1999; December 20, 1999; June 19, 2000; December 26, 2000; June 25, 2001; December 24, 2001; June 24, 2002; December 26, 2002; June 26, 2003; December 26, 2003; June 26, 2004; December 26, 2004; June 21, 2005; and December 21, 2005,

respectively), informing Plaintiff, *inter alia*, of a change in his premium rate or his requested plan change. (Exhibit D; Exhibit C, p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22). Plaintiff was capable of discovering the alleged fraud by reading and understanding the terms of his insurance certificate, particularly the company's reservation of the right to change his premium, as well as the later letters that not only informed him of a premium change, the reasons therefor and options to limit the increase or perhaps even lower the premium, but also informed that everyone with coverage such as his would experience an increase. (Exhibit B; Exhibit D; Exhibit C, p. 27, line 22 – p. 30, line 21 and Exhibit 2 to the deposition; p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22). The renewal rates that Plaintiff received were the same rates for everyone in his group. (Exhibit G, p. 113, lines 3-20). Those documents outline the nature, terms, benefits, conditions and cost of the insurance – the very information allegedly misrepresented and/or suppressed. And notably, 11 of those letters were received <u>more than two years before the Plaintiff filed this lawsuit</u>. (Exhibit D).

Thus, Plaintiff, <u>more than two years before he filed this lawsuit</u>, received numerous documents -- in 1996, 1998, 1999, 2000, 2001, 2002 and 2003, that if read, would have put him on notice of the precise nature and cost of the insurance he purchased in 1996. In addition, Plaintiff knew or should have known of the premium increases since his employer paid the premiums in lieu of providing Plaintiff with a raise in pay, for the entire time the insurance was in effect. (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23). Under the *Foremost* objective standard, Plaintiff should be deemed as a matter of law to have discovered the alleged fraud when he purchased and received his insurance certificate in 1996 and certainly no later than in 1998 when he started receiving letters about premium changes. *See Auto Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala.

2001)("… the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'")(citations omitted).  Plaintiff cannot adduce substantial evidence of any of his fraud claims such that the statute of limitations would have been tolled.  The two-year statute of limitations expired no later than 2000, which was five years before this lawsuit was filed.  The Plaintiff had ample opportunity, in fact years, to timely assert his claims, which he waited until 2005 to raise in this lawsuit.  Plaintiff's claims are barred by the statute of limitations and should be dismissed.

**II.**     **Plaintiff Cannot Recover Mental Anguish Damages.**

Plaintiff's claim for mental anguish damages should be dismissed.  Plaintiff generally alleges that he suffered emotional distress damages due to Defendants' fraud.  (Exhibit A, ¶ 32). However, Plaintiff fails to plead any facts indicating he is entitled to such damages from MEGA. Moreover, the Plaintiff's claims for emotional distress and mental anguish damages appear to stem from conduct based upon his insurance contract.   Under Alabama law, Plaintiff is not entitled to emotional distress and mental anguish damages for claims arising out of breach of an insurance contract.  *See, e.g., Vincent v. Blue Cross-Blue Shield of Alabama*, 373 So. 2d 1054, 1055-56 (Ala. 1979).  Plaintiff is not entitled to and cannot recover those damages.  Therefore, his claim for such damages should be dismissed.

## CONCLUSION

For the reasons more fully described above, MEGA requests this Court enter an Order granting summary judgment in favor of MEGA on all of Plaintiff's claims.  MEGA also requests such other and further relief to which it is justly entitled.

*s/Pamela A. Moore*_____
JAMES W. LAMPKIN II (LAMPJ7474)
PAMELA A. MOORE (MOORP5421)
Attorneys for Defendant
The MEGA Life and Health Insurance Company


OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 3, 2007, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following:

Steven W. Couch, Esq.
Hollis & Wright, P.C.
505 North 20th Street, Suite 1500
Birmingham, Alabama  35203


*s/Pamela A. Moore*_____
COUNSEL

28