IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| TROY E. TILLERSON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO. 3:05-cv-985-MEF |
| | * | |
| THE MEGA LIFE AND HEALTH | * | |
| INSURANCE CORPORATION, a | * | |
| corporation; TRANSAMERICA LIFE | * | |
| INSURANCE COMPANY F/K/A PFL | * | |
| LIFE INSURANCE COMPANY, a | * | |
| corporation; NATIONAL ASSOCIATION | * | |
| FOR THE SELF EMPLOYED A/K/A | * | |
| NASE, a corporation, | * | |
| | * | |
| Defendants. | * | |

**DEFENDANT NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED, INC.'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the National Association for the Self-Employed, Inc. ("NASE"), and

files this brief in support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal

Rules of Civil Procedure.[1]

**PRELIMINARY STATEMENT**

This lawsuit is essentially an insurance dispute between an insurance company and its

insured, Troy E. Tillerson ("Plaintiff"). The NASE is a business trade association that provides

certain benefits to its members. The NASE makes available to its members certain group health

insurance products. Plaintiff, as a NASE member, applied for and was issued association group

health insurance. Plaintiff's claims stem from allegations that (1) Plaintiff was not sold a "major

---

[1]     The NASE specifically reserves and does not waive the arguments raised in Defendants' Motion
for Summary Judgment on Plaintiff's State Law Claims, Claims for Punitive or Extracontractual
Damages, and Jury Demand Based on ERISA Preemption, which is pending before this Court.

medical group" health insurance product; (2) Plaintiff did not become a member of a group of insured persons; (3) Plaintiff's premium rates were not increased equally for all other members of the group; and (4) Plaintiff's insurance premium rates increased as a result of his individual health status and claims experience and not based upon the group's experience. Thus, the focus of Plaintiff's Amended Complaint is the alleged damage he suffered as a result of the purported misrepresentations and/or suppressions of material fact with respect to the nature and cost of his insurance. None of those allegations implicate the NASE. In fact, no allegations of wrongdoing are specifically asserted against the NASE. Plaintiff does not allege what specific role, if any, he believes that the NASE had with respect to the nature, terms, benefits, conditions or cost of the Plaintiff's insurance.

The NASE is not an insurance company, does not issue insurance products, does not underwrite insurance products, does not determine or assess premium rates for insurance products, and does not process claims for insurance benefits. The fact that the NASE offered its members the *opportunity* to apply for association group health insurance is an insufficient basis on which to hold the NASE responsible for the actions alleged in the Amended Complaint. It appears from the Amended Complaint that the only reason the NASE was named as a defendant is the assertion that the salesperson allegedly represented to Plaintiff at the time of sale that "he would become a member of the 'group' of insured persons included in the NASA (sic) and insured under said policy that was underwritten by Defendant PFL and administered by Defendant MEGA." (Exhibit A, Amended Complaint, ¶ 6). Those assertions are wholly insufficient, given the applicable law and the facts of this case, that the NASE is liable to Plaintiff as alleged in the Amended Complaint. Nevertheless, the NASE will address each of the

Plaintiff's allegations as if they did expressly apply to the NASE, without waiver of any procedural rights, objections, or defenses.

## NARRATIVE SUMMARY OF RELEVANT FACTS

Plaintiff's allegations focus on the nature and cost of certain health insurance. (Exhibit A). Plaintiff, as a member of the NASE, applied for the insurance on July 9, 1996. (Exhibit A, ¶¶ 5-6). Plaintiff was issued a Certificate of Insurance for certain group health insurance benefits, effective July 26, 1996. (Exhibit B, Certificate of Insurance with attached application, produced by Plaintiff).

Plaintiff alleges that Dan Splawn, the salesperson (who is not a named defendant), as "an agent of the Defendants," misrepresented the nature and cost of the health insurance. (Exhibit A, ¶ 6 and Count One). Specifically, Plaintiff alleges he was told he was purchasing "major medical group" health insurance; that once he was insured, he would become a member of a group of insured persons; and that any future premium increases would be increased equally for all other members of the group. (Exhibit A, ¶ 6 and Count One). Plaintiff also asserts that it was not disclosed that the insurance product he purchased was an individual policy and not "major medical group" insurance; that the premium rates would not be calculated upon the group's experience; that his premiums would not be the same as other members of the group; and that his renewal premiums would not be based upon the group's experience but instead upon his individual claims experience and health status. (Exhibit A, ¶¶ 8, 10 and Count Two). Plaintiff further contends that throughout the life of the subject insurance, Defendants furthered their misrepresentation of the nature of the insurance by fraudulently concealing that in determining his premium, Defendants were re-underwriting Plaintiff's insurance based upon his individual health status and claim history. (Exhibit A, ¶ 9 and Count Two). Plaintiff also asserts that

Defendants innocently, recklessly, negligently or wantonly made these alleged misrepresentations and/or suppressions of material fact. (Exhibit A, Count Three). Plaintiff seeks damages for the lost value of premium payments; for not having the insurance plan as represented; for lost interest on premium payments; for being forced to pay higher premium payments or lose coverage; and for mental anguish and emotional distress. (Exhibit A, ¶ 32).

Plaintiff, who can read and write, received his insurance certificate in 1996. (*See* Exhibit C, Excerpts of Plaintiff's Deposition, p. 14, lines 22-23; p. 27, line 22 – p. 28, line 1). Plaintiff's Certificate of Insurance summarizes the rights and benefits under the Group Policy and contains specific language that benefits would be paid in accordance with the Group Policy (the NASE being the policyholder), and that the premium rates might change from time to time. (Exhibit B, pp. 1, 4-5; p. 16 "Premium Changes"; the Amendatory Endorsement, ¶ 1; p. 20).

Plaintiff received 16 letters over a period of seven years (1998 – 2005), which informed him of a change in his premium rate and the reasons why that was necessary, that everyone with coverage such as his would also have an increase, and of options to limit the amount of the increase or possibly even lower the premium. (*See* Exhibit D, Premium Change Letters produced by Plaintiff; Exhibit C, p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22).

Plaintiff did not file this lawsuit until October 13, 2005.

Plaintiff's employer paid the premiums for Plaintiff's insurance during the entire time it was in force, in lieu of providing Plaintiff with a raise in pay. (*See* Exhibit E, Excerpts of Sue Ann Tinkey's Deposition, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).

The NASE was not the Plaintiff's insurer and was not a party to the insurance contract at issue. (Exhibit B). The NASE is not and has never been an insurance company, does not issue

insurance products, does not underwrite insurance products, does not determine or assess premium rates for insurance products, and does not process claims for insurance benefits. (Exhibit F, Affidavit of Robert Hughes).

The NASE is a business trade association that provides certain benefits to its members. (Exhibit F). One of the benefits made available to the NASE members is certain association group health insurance. (Exhibit F). The NASE had a contractual relationship with Defendant PFL Life Insurance Company ("PFL Life")(now known as Transamerica Life Insurance Company)("Transamerica") to offer NASE members the opportunity to apply for association group health insurance under an association master group policy where the NASE was the policyholder. (Exhibit F). On April 1, 1996, the NASE entered into a contractual relationship with Defendant The MEGA Life and Health Insurance Company ("MEGA") to offer NASE members the opportunity to apply for association group health insurance under an association master group policy where the NASE was the policyholder. (Exhibit F). The salesperson that a prospective member or prospective insured spoke with about NASE membership and about association group health insurance products served both as a licensed insurance agent for the insurance company that handled the issuance of the insurance and as a field service representative for prospective new members for the NASE. (Exhibit F). The health insurance premiums derived from the sale of health insurance went to the insurance company that handled the issuance of the insurance and the membership dues derived from the sale of memberships went to the NASE. (Exhibit F). The salesperson acted on behalf of the insurance company that handled the issuance of the insurance (and not the NASE) when discussing, explaining and describing the health insurance products and premiums. (Exhibit F). The salesperson acted on

5

behalf of the NASE (and not the insurance company) when discussing, explaining and describing other NASE benefits. (Exhibit F).

The NASE is a Texas corporation that is wholly distinct and separate from Transamerica, formerly PFL Life, and MEGA; observes corporate formalities independent of those maintained by Transamerica and MEGA; has boards of directors and officers separate from Transamerica and MEGA; and is not owned, controlled, supervised or operated by Transamerica or MEGA. (Exhibit F).

When discussing, explaining or describing the insurance to Plaintiff at the time of sale, the salesperson was not acting on behalf of the NASE. (Exhibit F). The NASE was not involved in and had no control over any decisions to underwrite, issue or re-underwrite the Plaintiff's insurance. (Exhibit F). The NASE was not involved in and had no control over any decisions relating to the nature, terms, benefits or conditions of the Plaintiff's insurance. (Exhibit F). The NASE was not involved in and had no control over the assessment, calculation or determination of the premium rate for the Plaintiff's insurance or in any decision to change the Plaintiff's premium rate. (Exhibit F). The NASE was not involved in and had no control over the processing of any of the Plaintiff's claims for insurance benefits.[2] (Exhibit F).

As will be demonstrated herein, there is no genuine issue of material fact as to any of the claims Plaintiff attempts to assert against the NASE, and all of those claims should be dismissed.

### SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] Plaintiff is not asserting a claim for the payment or non-payment of any claims for insurance benefits. (*See* Exhibit C, Excerpts of Plaintiff's Deposition, p. 46, lines 5-14). Nevertheless, even if he was making that claim, the NASE was not Plaintiff's insurer and had nothing to do with claims processing.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fla. Pub. Interest Research Group Citizen Lobby, Inc. v. EPA*, 386 F.3d 1070, 1082 (11th Cir. 2004). The evidence and reasonable inferences therefrom should be viewed in the light most favorable to the non-movant and all reasonable doubts should be resolved in favor of the non-movant. *Fla. Pub. Interest Research Group Citizen Lobby, Inc.*, 386 F.3d at 1082. Once the moving party has submitted a properly supported motion for summary judgment, the non-moving party has the burden of producing specific facts demonstrating that a genuine issue of material fact exists. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). The existence of some evidence will not defeat a motion for summary judgment and sufficient evidence favoring the non-moving party that would support a jury verdict is required. *Bailey*, 284 F.3d at 1243.

<u>**ARGUMENT AND AUTHORITIES**</u>

**I.**     <u>**The NASE Was Not the Plaintiff's Insurer.**</u>

Plaintiff alleges that through its agent, Dan Splawn, the NASE made fraudulent representations or suppressions of material fact with regard to the nature and cost of the insurance Plaintiff purchased on or about July 9, 1996. (Exhibit A, ¶¶ 6, 8 and 10; Counts One and Two). Basically, Plaintiff is asserting he was told he was purchasing "major medical group" health insurance and that his premiums would be the same as those charged to other members of the group. (Exhibit A, ¶ 6). Plaintiff contends that he was, however, not sold a "major medical group" policy but instead was sold an individual policy where his premiums were based on his own individual health status and claims experience. (Exhibit A, ¶ 8). Thus, from the face of the Amended Complaint, Plaintiff's allegations focus on misrepresentations and suppressions of fact related to his health insurance and his insurer.

The NASE was not the Plaintiff's insurer and was not a party to the insurance contract. (Exhibit B). The NASE is not and has never been an insurance company, does not issue insurance products, does not underwrite insurance products, does not determine or assess premium rates for insurance products, and does not process claims for insurance benefits. (Exhibit F).

The NASE is a business trade association that provides certain benefits to its members. (Exhibit F). One of the benefits made available to the NASE members is certain association group health insurance. (Exhibit F). The NASE had a contractual relationship with PFL Life to offer NASE members the opportunity to apply for association group health insurance under an association master group policy where the NASE was the policyholder. (Exhibit F). On April 1, 1996, the NASE entered into a contractual relationship with MEGA to offer NASE members the opportunity to apply for association group health insurance under an association master group policy where the NASE was the policyholder. (Exhibit F).

The salesperson that a prospective member or prospective insured spoke with about NASE membership and about association group health insurance products served both as a licensed insurance agent for the insurance company that handled the issuance of the insurance and as a field service representative for prospective new members for the NASE. (Exhibit F). The health insurance premiums derived from the sale of health insurance went to the insurance company that handled the issuance of the insurance and the membership dues derived from the sale of memberships went to the NASE. (Exhibit F). The salesperson acted on behalf of the insurance company that handled the issuance of the insurance (and not the NASE) when discussing, explaining and describing the health insurance products and premiums. (Exhibit F).

The salesperson acted on behalf of the NASE (and not the insurance company) when discussing, explaining and describing other NASE benefits. (Exhibit F).

The NASE is a Texas corporation that is wholly distinct and separate from Transamerica, formerly PFL Life, and MEGA; observes corporate formalities independent of those maintained by Transamerica and MEGA; has boards of directors and officers separate from Transamerica and MEGA; and is not owned, controlled, supervised or operated by Transamerica or MEGA. (Exhibit F).

Therefore, Dan Splawn, the alleged "agent of the Defendants," when discussing, explaining or describing the insurance at the time of sale, was not acting on behalf of the NASE. (Exhibit F). Again, the NASE is not and has never been an insurance company and was not involved in and had no control over any decisions to underwrite, issue or re-underwrite the Plaintiff's insurance. (Exhibit F). The NASE was not involved in and had no control over any decisions relating to the nature, terms, benefits or conditions of the Plaintiff's insurance. (Exhibit F). The NASE was not involved in and had no control over the assessment, calculation or determination of the premium rate for the Plaintiff's insurance or in any decision to change the Plaintiff's premium rate. (Exhibit F). The NASE was not involved in and had no control over the processing of any of the Plaintiff's claims for insurance benefits. (Exhibit F).

The NASE was not Plaintiff's insurer, did not act as Plaintiff's insurer, and did not issue or administer Plaintiff's insurance. The claims against the NASE should be dismissed.

## II.    <u>The Claims Asserted by Plaintiff Against The NASE Cannot Be Established Under Alabama Law</u>.

A review of Alabama law that governs Plaintiff's claims shows that Plaintiff cannot establish any of his causes of action against the NASE. The cornerstone allegations in Plaintiff's

Amended Complaint are that the Defendants made certain fraudulent misrepresentations and/or suppressions of material fact with regard to the nature and cost of health insurance that was issued to him on July 26, 1996.

### A.    Plaintiff Cannot Establish Fraudulent Misrepresentation (Count One).

Plaintiff asserts that on or about July 9, 1996, he applied for health insurance that was sold to him by Dan Splawn, an "agent of the Defendants." (Exhibit A, ¶ 6). Plaintiff further asserts that at that time, Dan Splawn told him that he was purchasing "major medical group" health insurance and that he would become a member of a group of insured persons where his premiums would be the same as those charged to other members of the group. (Exhibit A, ¶ 6). Plaintiff alleges that those representations were fraudulent, inducing him to purchase and continue having his premium payments paid for the insurance. (Exhibit A, ¶¶ 6-7; Count One).

Plaintiff must present substantial evidence of each of the following elements to establish his fraudulent misrepresentation claim against the NASE: "(1) that [the NASE] made a false representation; (2) of a material existing fact; (3) on which [Plaintiff] reasonably relied; and (4) which proximately caused injury or damage to [Plaintiff]"(citation omitted). *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001).

### 1.    The NASE Did Not Make a False Representation to Plaintiff.

As for the first element of this claim, Plaintiff must prove that the NASE made a false representation to Plaintiff; otherwise, Plaintiff's claim for fraudulent misrepresentation against the NASE must fail. It is telling that the allegations in Plaintiff's Amended Complaint are directed against the "Defendants" as a group. Plaintiff sets forth his alleged misrepresentations about the nature of the insurance in generalized and conclusory statements against the "Defendants." (Exhibit A, ¶¶ 6-7; Count One). Plaintiff does not inform each Defendant of the

specific fraudulent acts that constitute the basis of this action against that Defendant. Plaintiff's fraudulent suppression claim (as discussed in the following section) is also asserted against the "Defendants," as a group, based on the alleged failure to tell Plaintiff that the same alleged representations were not true. (Exhibit A, ¶¶ 8-10; Count Two). Plaintiff's claims that said misrepresentations and/or suppressions of material fact were also made innocently, recklessly, negligently or wantonly are also directed globally to "Defendants." (Exhibit A, Count Three) Plaintiff's Amended Complaint simply does not sufficiently or properly assert any particular fraud-based claim against the NASE.

Second, Plaintiff's fraudulent misrepresentation allegations focus on his insurance. (Exhibit A, ¶¶ 6-7; Count One). As discussed above, at the time of the sale of the insurance, the salesperson was not acting on behalf of the NASE in discussing, explaining or describing the health insurance. (Exhibit F). The NASE is a business trade association, not an insurance company. (Exhibit F). The NASE was not selling insurance to Plaintiff. (Exhibit F). The NASE was selling a membership in its organization. (Exhibit F). As to Plaintiff's insurance, the NASE was not involved in underwriting, issuing, premium assessment or changes, or claims for insurance benefits. (Exhibit F). These claims against the NASE must fail.

> 2. Plaintiff Did Not Reasonably Rely on the NASE's Alleged Misrepresentations.

Even if the Court determines that the NASE did make a false representation, the alleged misrepresentations were not such that Plaintiff could have reasonably relied thereon and which proximately caused damage to him. Plaintiff's Amended Complaint fails to explain how Plaintiff relied on the NASE's alleged representations, and Plaintiff cannot show why that reliance was reasonable. In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), the

Alabama Supreme Court held that "the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms." *Foremost*, 693 So. 2d at 421. The Court termed that standard as the "reasonable reliance" standard. That is, to recover in a fraud action, a plaintiff must prove that he or she reasonably relied on the defendant's alleged misrepresentation. Under Alabama law, a contracting party has an affirmative duty to read the contracts and related legal documents he signs or receives. *Id.* The Eleventh Circuit Court of Appeals has recognized this "duty to read" requirement:

> …Alabama law imposes upon a party the duty to read and inspect any document which might affect that person's legal rights or liabilities. It must be said that the receipt of such a document would "provoke inquiry by a person of ordinary prudence," and that inquiry necessarily would consist of actually reading the document. This obligation is part of the "concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests," as stated in *Torres*. If the facts constituting an alleged fraud claim would be apparent from simply reading a given document, a plaintiff's failure to do so renders his reliance on previous misrepresentations unreasonable in the circumstances.

*Ramp Operations, Inc. v. Reliance Ins. Co.*, 805 F.2d 1552, 1556 (11th Cir. 1986).

Here, Plaintiff pleads in a most conclusory fashion that he relied on the alleged misrepresentations of the Defendants to his detriment. Plaintiff must do more than simply allege that he "reasonably relied" – instead, he must explain how he relied and why that reliance was reasonable. The NASE contends that Plaintiff, however, cannot do more in that regard as to the NASE, because, even if, *arguendo*, the NASE misrepresented the nature or cost of the insurance, Plaintiff could not have reasonably relied thereon, since Plaintiff applied for and was issued insurance by an insurance company, which undisputedly was not the NASE. The NASE did not issue the insurance, was not and has never been Plaintiff's insurer, and did not determine or

assess Plaintiff's insurance premiums.  Plaintiff does not and cannot factually contend that the NASE was his insurer or that the NASE determined or assessed premium rates, such that any reliance on the alleged misrepresentation by the NASE as to the nature of the insurance or the determination of premium rates would have been unreasonable.

Moreover, as evidenced by the Certificate of Insurance Plaintiff produced during discovery, insurance certificate number 732246121 was issued to Plaintiff, with an effective date of July 26, 1996.  (Exhibit B).  The insurance application reflects that Plaintiff, as an NASE member, applied for the insurance on July 9, 1996.  (Exhibit B; Exhibit A, ¶ 6).  In his deposition, Plaintiff admitted that he received the Certificate of Insurance in 1996.  (Exhibit C, p. 27, line 22 – p. 28, line 1).  Plaintiff can read and write.  (Exhibit C, p. 14, lines 22-23). Plaintiff's Certificate of Insurance summarizes the rights and benefits under the Group Policy and contains specific language that benefits would be paid in accordance with the Group Policy (the NASE being the policyholder), and that the premium rates might change from time to time. (Exhibit B, pp. 1, 4-5; p. 16 "Premium Changes"; the Amendatory Endorsement, ¶ 1; p. 20). Plaintiff also produced during discovery 16 letters that he admittedly received over a period of seven years, dated December 21, 1998; June 21, 1999; June 28, 1999; December 20, 1999; June 19, 2000; December 26, 2000; June 25, 2001; December 24, 2001; June 24, 2002; December 26, 2002; June 26, 2003; December 26, 2003; June 26, 2004; December 26, 2004; June 21, 2005; and December 21, 2005, respectively, informing Plaintiff of a change in his premium rate and the reasons why that was necessary, that everyone with coverage such as his would also have an increase, and of options to limit the amount of the increase or possibly even lower the premium. (Exhibit D; Exhibit C, p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22).  Plaintiff, in fact, requested a plan change in 1999 that resulted in a premium decrease.  (Exhibit D, June 28, 1999 Letter).

Even though the NASE did not generate or send any of these documents to Plaintiff, the NASE argues that those documents placed Plaintiff on notice of the very facts he asserts were misrepresented to him.  Also, as the NASE learned during the progression of this case, Plaintiff assumedly knew or should have known about his premium rate changes, given that his employer paid the premiums in lieu of an increase in Plaintiff's pay for the entire time the insurance was in force.  (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).

Plaintiff does not contend that he was not in possession of those documents from their receipt until he filed this lawsuit, such that he could have reviewed them at any time.  Plaintiff can read.  (Exhibit C, p. 14, lines 22-23).  Plaintiff had an affirmative duty to read those documents, which unquestionably contained and/or related to the nature, terms, benefits, conditions and cost of the insurance that had been issued to him.  Plaintiff has not asserted that he could not understand the documents.  In fact, Plaintiff admitted that he could read and understand those documents.  (Exhibit C, p. 27, line 22 – p. 28, line 20; p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22).  Therefore, even if, *arguendo*, the nature of the insurance and the possible increase in premiums were not fully explained by the salesperson, Plaintiff knew or should have known of the precise nature, terms, benefits, conditions and cost of his insurance when he received his insurance certificate and later related documents.  Those documents put Plaintiff on notice that, contrary to the salesperson's alleged misrepresentation, Plaintiff, as a member of the NASE, was offered and issued health insurance according to the provisions of a certain Group Policy for the health insurance benefits outlined in the Certificate and associated Group Policy, that he was not being issued an individual policy, and that his premiums might increase, and if so, everyone with coverage such as his would experience an increase.  Those

14

documents contradict the alleged misrepresentations purportedly made at the time of sale and later during the life of the insurance.  Plaintiff could not have reasonably relied on the salesperson's alleged fraudulent misrepresentations relating to the nature and cost of the insurance purchased or any purported later misrepresentations related to premium changes, based upon the content of the documents provided to and received by Plaintiff.  As a result, Plaintiff's purported reliance on the NASE's alleged misrepresentations was unreasonable.

    3. <u>Plaintiff Cannot Show Proximate Causation of Damages</u>.

  Furthermore, Plaintiff cannot establish a causal connection between the NASE's alleged fraudulent misrepresentations and any resulting harm to Plaintiff.  The same holds true with respect to Plaintiff's claims against the NASE for fraudulent suppression (that claim is discussed in greater detail in the following section of this brief).  Both causes of action require Plaintiff to show that the NASE's actions proximately caused Plaintiff's damages.  *Luck v. Primus Automobile Financial Services, Inc.*, 763 So. 2d 243, 245-46 (Ala. 2000)(fraudulent misrepresentation); *Compass Bank v. Snow*, 823 So. 2d 667, 672-73 (Ala. 2001)(fraudulent suppression/omission).  Plaintiff does not allege facts nor has he offered testimony or other evidence to show how he was harmed by the NASE's alleged misrepresentations or omissions.  Plaintiff's alleged damages appear to arise from the assessment of premiums – not from any statements that were made by the NASE at the time Plaintiff joined the association or at any other time while Plaintiff was an NASE member.  The NASE was not Plaintiff's insurer, did not assess Plaintiff's insurance premiums and did not administer Plaintiff's insurance.  Also, as the NASE learned during discovery, premiums were paid, the Plaintiff had insurance coverage, and claims for insurance benefits were submitted and paid.  (*See infra*, footnote 2).  Plaintiff's fraud claims against the NASE must fail as a matter of law, given that Plaintiff does not plead nor can

he proffer facts indicating or proving that he was damaged by the NASE's alleged misrepresentations or suppressions of material fact.

Consequently, since Plaintiff cannot establish each of the requisite elements of his fraudulent misrepresentation claim against the NASE, that claim should be dismissed.

**B.    Plaintiff Cannot Establish Fraudulent Suppression of Material Facts (Count Two).**

Plaintiff asserts that the Defendants suppressed material facts relating to the nature of the health insurance, by failing to disclose that it was not "major medical group" insurance and that his premium rates were not group rates, because his premiums were based on his individual health status and claim history and not the claims experience of his entire group.  (Exhibit A, ¶¶ 8, 10; Count Two).  Plaintiff also alleges that the Defendants failed to disclose that they were re-underwriting Plaintiff's insurance based upon his individual health status and claim history. (Exhibit A, ¶ 9; Count Two).

In order to establish a *prima facie* claim of fraudulent suppression against the NASE, Plaintiff "must produce substantial evidence establishing the following elements:  (1) that the [NASE] had a duty to disclose an existing material fact; (2) that the [NASE] suppressed that existing material fact; (3) that the [NASE] had actual knowledge of the fact; (4) that the [NASE's] suppression of the fact induced [Plaintiff] to act or to refrain from acting; and (5) that the [Plaintiff] suffered actual damage as a proximate result."  *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted).

1.    The NASE Did Not Have a Duty to Disclose.

Plaintiff must prove, among other things, that the NASE had a duty to disclose an existing material fact.  *See, e.g., Booker v. United American Insurance Co.*, 700 So. 2d 1333,

1339 (Ala. 1997)(duty to disclose is an essential element of a fraudulent suppression claim). "The question whether a party had a duty to disclose is a question of law to be determined by the trial court." *Armstrong Business Services, Inc. v. AmSouth Bank,* 817 So. 2d 665, 676-77 (Ala. 2001) (quoting *Barnett v. Funding Plus of America, Inc.,* 740 So. 2d 1069, 1074 (Ala. 1999)); *State Farm Fire & Casualty Co. v. Owen*, 729 So. 2d 834, 841-42 (Ala. 1998).  In *Armstrong Business Services,* the Court stated:   "The trial court must consider and apply the following factors in determining whether, under the particular circumstances, a duty to disclose exists: '(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.'" *Armstrong*, 817 So. 2d at 677 (quoting *State Farm Fire & Casualty Co. v. Owen,* 729 So. 2d 834, 842-43 (Ala. 1998)). Additionally, the Alabama Supreme Court has determined that "whether one has a duty to speak depends upon a fiduciary, or other, relationship of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances of the case (citations omitted)....  When the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested (citation omitted)." *Mason v. Chrysler Corp.,* 653 So. 2d 951, 954-55 (Ala. 1995).  Alabama courts have "consistently held that where both parties to a transaction are knowledgeable, are capable of protecting their own interests, and are dealing at arms's length, no duty to disclose particular information exists unless the information is actually requested." *Gewin v. TCG Asset Management Corp.*, 668 So. 2d 523, 528 (Ala. 1995), citing *Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc.*, 611 So. 2d 238 (Ala. 1992); *Norman v. Amoco Oil Co.*, 558 So. 2d 903 (Ala. 1990); *Duke v. Jones*, 514

17

So. 2d 981 (Ala. 1987); *Trio Broadcasters, Inc. v. Ward*, 495 So. 2d 621 (Ala. 1986); *Bank of Red Bay v. King*, 482 So. 2d 274 (Ala. 1985).

First, Plaintiff fails to identify which of the Defendants he claims had a duty to disclose each discrete omission alleged.  Plaintiff's fraudulent suppression allegations are directed against all of the Defendants, collectively.

Second, even if these claims are being made against the NASE in its individual capacity, the focus of the allegations is that the nature and cost of the insurance were misrepresented by the failure to disclose at any time that Plaintiff was not purchasing group insurance but instead an individual policy, because his premiums allegedly were increased based on his individual claim history and health status and not those of the group.  Plaintiff also alleges that it was fraudulently concealed that in determining his premium, the Defendants were annually re-underwriting Plaintiff's insurance based upon his individual health status and claim history.

Plaintiff contracted that day with the NASE to become a member of the NASE -- an arm's length commercial transaction.  As an NASE member, Plaintiff was offered the opportunity to apply for association group health insurance under an association master group policy where the NASE was the policyholder.  (Exhibit F).  The NASE is not an insurance company and was not acting as Plaintiff's insurer at the time of sale of the insurance or at any time thereafter during the life of the insurance.  (Exhibit F).  The NASE was did not administer Plaintiff's insurance.  (Exhibit F).  Plaintiff's allegations do not elevate any relationship between Plaintiff and the NASE to a confidential relationship or one involving special circumstances, such that the NASE would have a duty to disclose the nature or cost of the insurance, how the premium rates would be calculated, or how Plaintiff's insurance was underwritten.  In fact, Plaintiff has failed to plead any facts indicating that a special or confidential relationship existed

18

between Plaintiff and the NASE with regard to Plaintiff's insurance. There simply is no specific allegation anywhere in the Amended Complaint nor could there be any allegation of fact that would explain or support why a duty to disclose the nature, terms, benefits, conditions or cost of Plaintiff's insurance would exist for the NASE.

As for the contention that Plaintiff depended on the Defendants to advise him as to all insurance matters because of their superior knowledge and position, even if, *arguendo*, the NASE could be held to have had superior knowledge of Plaintiff's health insurance needs, "superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information." *State Farm Fire & Casualty Company v. Owen*, 729 So. 2d 834, 843 (Ala. 1998) (finding that "[s]uperior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information" (citation omitted) and that, in "the absence of an inquiry, we cannot say that [plaintiff] had no opportunity to learn about how [his] premium would be computed.").

The NASE simply had no duty to disclose information to Plaintiff relating to the nature of the insurance, or the premium rate charged, or the basis for those rates over the life of the insurance. Even if, *arguendo*, the Court determines otherwise, such information was not concealed from Plaintiff based on the documents provided to him (as discussed herein). Plaintiff was capable of protecting his own interests and had numerous opportunities to learn and/or confirm that he had purchased group insurance and that his premium rates had increased along with other individuals with coverage like his -- by simply reading his insurance certificate and the various other related documents including the 16 letters, which he clearly had an affirmative duty to do under Alabama law. Also, again, Plaintiff should have known about his premium rate changes since his employer paid the premiums, in lieu of increasing Plaintiff's pay, during the

entire time the insurance was in effect.  (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).  Plaintiff's claim against the NASE for fraudulent suppression should be dismissed.

> 2.  The NASE Did Not Suppress Material Facts, and Plaintiff Did Not Reasonably Rely on the NASE's Alleged Suppression of Material Facts.

To sustain a claim of fraudulent suppression, a plaintiff must prove, among other elements, the concealment or suppression of material facts by the defendant.  *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1197 (Ala. 2001)(quoting *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997)).  "Where the record indicates that the information alleged to have been suppressed was in fact disclosed, and there are no special circumstances affecting the plaintiff's capacity to comprehend, the plaintiff cannot recover for suppression." *Ex parte Alfa Mutual Fire Insurance Co.*, 742 So. 2d 1237, 1243 (Ala. 1999)(citation omitted). "In other words, plain disclosure to a person competent in intelligence and background to understand the disclosure is the legal antithesis of suppression, by definition." *Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 746 (Ala. 2002).

Plaintiff received documents after his insurance was issued and throughout the life of the insurance, which informed him of the nature, terms, benefits, conditions and cost of the insurance, that his premiums might change on a class basis, and that when they did, the reasons why he and everyone with coverage such as his experienced an increase and the options to limit the increase or perhaps even lower the premium.  (Exhibits B and D).

Furthermore, a plaintiff's reasonable reliance is an essential element of his suppression claim.  *See Allstate Insurance Co. v. Ware*, 824 So. 2d 739, 744-45 (Ala. 2002)(quoting *Ex parte Household Retail Services, Inc.*, 744 So. 2d  871, 879 (Ala. 1999)); *Liberty National Life*

*Insurance Co. v. Sherrill*, 551 So. 2d 272, 273 (Ala. 1989); *see also Foremost Insurance Co. v.*

*Parham*, 693 So. 2d 409 (Ala. 1997) (referring to the reasonable reliance standard).

Plaintiff cannot show any reasonable reliance on the alleged suppression of material facts

by the NASE or in fact, that the NASE even suppressed material facts related to the nature, terms,

benefits, conditions or cost of Plaintiff's health insurance.  First, the NASE was not Plaintiff's

insurer and did not administer Plaintiff's insurance.  Second, there is no allegation that the NASE

took any affirmative action to prevent Plaintiff from discovering the facts that were allegedly

suppressed from him.  Plaintiff does not assert that he did not receive his insurance certificate,

which outlines the nature, terms, benefits and conditions of the insurance, or the letters related to

premium changes or his requested plan change.  In fact, Plaintiff produced those documents

during discovery.  (Exhibits B and D).

Plaintiff had in his possession documents that provided the information allegedly

suppressed. Even though the NASE did not generate or send any of those documents, they serve

as evidence that Plaintiff had in his possession documents that provided the information allegedly

suppressed.  Plaintiff can read.  (Exhibit C, p. 14, lines 22-23).  Plaintiff had an affirmative duty

to read those documents.  Plaintiff does not contend that he could not understand the documents

or that the documents did not clearly outline the nature, terms, benefits, conditions and cost of the

insurance.  Plaintiff, in fact, admitted that he could read and understand those documents.

(Exhibit C, p. 27, line 22 – p. 28, line 20; p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22).

Therefore, even if, *arguendo*, the nature, terms, benefits, conditions and cost of the insurance

were not fully disclosed by the salesperson, Plaintiff knew or should have known that information

when he received those documents.  The documents put Plaintiff on notice of the precise nature

and cost of the insurance he purchased, of the increase in premium and the reasons why that was

necessary, and that everyone with coverage such as his would also experience an increase. Additionally, Plaintiff must have been on notice of his premium rate changes, since his employer paid those premiums in lieu of increasing Plaintiff's pay, during the entire time the insurance was in force. (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).

The NASE did not suppress the material facts alleged, and Plaintiff's reliance on the alleged suppression of material facts about the insurance, when Plaintiff had in his possession documents that provided the very information allegedly suppressed, was unreasonable.

3.    <u>Plaintiff Cannot Show Proximate Causation of Damages</u>.

In addition, not unlike Plaintiff's fraudulent misrepresentation claim, Plaintiff cannot establish a causal connection between the NASE's alleged fraudulent suppression and any resulting harm to Plaintiff. Plaintiff is required to show that the NASE's actions proximately caused Plaintiff's damages. Plaintiff does not allege facts nor has he offered testimony to show how he was harmed by the NASE's alleged omissions. Again, the NASE was not Plaintiff's insurer and made no representations to Plaintiff about the nature, terms, benefits, conditions or cost of the insurance, and Plaintiff's alleged damages appear to arise from the type of insurance he purchased and the assessment of premiums – not from any statements that were made by the NASE at the time Plaintiff joined the association or at any other time while Plaintiff was an NASE member. Also, as the NASE learned during discovery, premiums were paid, the Plaintiff had insurance coverage, and claims for insurance benefits were submitted and paid. (*See infra*, footnote 2). Plaintiff's fraudulent suppression claim against the NASE must fail as a matter of law, given that Plaintiff does not plead nor can he proffer facts indicating or proving that he was

damaged by the NASE as a proximate result of the alleged suppression of facts about Plaintiff's insurance.

Accordingly, since Plaintiff cannot establish his fraudulent suppression claim against the NASE, that claim also should be dismissed.

### C. **Plaintiff Cannot Establish Innocent, Reckless, Negligent or Wanton Misrepresentation or Suppression of Material Facts (Count Three).**

Plaintiff also contends that the Defendants innocently, recklessly, negligently or wantonly made misrepresentations and/or concealed material facts relating to the nature of the insurance. (Exhibit A, Count Three). Under Ala. Code § 6-5-01, "legal fraud" includes misrepresentations of material fact made "by mistake and innocently," as well as misrepresentation made "willfully to deceive, or recklessly without knowledge." Ala. Code § 6-5-101. Section 6-5-102 recognizes a fraud claim for suppression of a material fact that the party is under an obligation to communicate. Ala. Code § 6-5-102. Elements of a misrepresentation claim, regardless of whether the misrepresentation is alleged to have been made willfully, recklessly, innocently or mistakenly, are (1) a false representation, (2) of a material existing fact, (3) on which the plaintiff relied, (4) that proximately resulted in damage to the plaintiff. *See Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1196 (Ala. 2001); Ala. Code § 6-5-101. As for a suppression claim, regardless of whether the suppression of material fact is alleged to have been done willfully, recklessly, innocently or mistakenly, a plaintiff must prove: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual

damage as a proximate result." *See State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293, 323-24 (Ala. 1999)(citations omitted); <u>Ala. Code</u> § 6-5-102.

As for the Plaintiff's claims for negligent or wanton misrepresentation and/or suppression, Plaintiff has made these same allegations in his claims for innocent or reckless misrepresentation and/or suppression. There is no material difference between the claims alleging negligent or wanton misrepresentation and/or suppression and the claims alleging innocent or reckless misrepresentation and/or suppression. In fact, Plaintiff is making all of these claims in the same sentence in the same Count of his Amended Complaint, referencing the prior paragraphs of the Amended Complaint with regard to the intentional misrepresentation and suppression claims (Counts Two and Three). The claims in Count Three fail for the same reasons outlined herein for the failure of the intentional misrepresentation and suppression claims. For the sake of brevity, the NASE refers the Court to those arguments as outlined in Sections I and II of this brief. As shown herein, there is no reasonable possibility, based on the facts of this case, that Plaintiff can establish a cause of action for intentional misrepresentation or suppression, much less innocent, reckless, negligent or wanton misrepresentation or suppression against the NASE.

    **D.**    <u>**Plaintiff's Misrepresentation and Suppression Claims are Time-Barred (Counts One, Two and Three).**</u>

Plaintiff's claims for fraudulent misrepresentation, fraudulent suppression, and innocent, reckless, negligent or wanton misrepresentation and/or suppression (all of the claims in the Amended Complaint) are time-barred by the applicable statute of limitations. Under the doctrine of *Erie R.R. Co. v. Tompkins*, a federal court in a diversity action must apply the controlling substantive law of the state. 304 U.S. 64, 58 S. Ct. 817 (1938). In *Guaranty Trust Co. of N.Y. v.*

*York*, the Supreme Court held that state statutes of limitations are substantive laws and must be followed by federal courts in diversity actions. 326 U.S. 99, 65 S. Ct. 1464 (1945).

The statute of limitations for Plaintiff's fraud and suppression claims is two years. *See* Ala. Code §§ 6-2-3, 6-2-38 (1993); *Fowler v. Provident Life & Accident Insurance Co.,* 256 F. Supp. 2d 1243, 1248 (N. D. Ala. 2003)(fraud claim and negligent misrepresentation claim are subject to a two-year statute of limitations); *Auto-Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1194-95 (Ala. 2001)(claims alleging fraudulent suppression are subject to a two-year statute of limitations); *Foremost Insurance Co. v. Parham*, 693 So. 2d 409, 417 (Ala. 1997)(same); *Casassa v. Liberty Life Insurance Co.*, 949 F. Supp. 825, 828 (M.D. Ala. 1996) (under Alabama law, fraudulent misrepresentation and suppression are subject to a two-year statute of limitations); *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So. 2d 454, 458, 460 (Ala. 1993) (same).

The statute of limitations for fraud and suppression claims is subject to the "discovery rule," and thus runs from the time of discovery of the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care. *See Foremost*, 693 So. 2d at 417 (involving fraudulent misrepresentation and fraudulent suppression); Ala. Code § 6-2-3.[3] Even though the question regarding when a plaintiff discovered or should have discovered an alleged fraud is generally a question for the jury, the Alabama Supreme Court has recognized that there are times when this question can be decided as a matter of law. *Kelly v. Connecticut Mutual Life Insurance Co.*, 628 So. 2d 454, 458 (Ala. 1993). In *Foremost*, the Court restored the application

---

[3]    Under Alabama law, the statute of limitations begins to run when the cause of action "accrues," which occurs "as soon as the party in whose favor it arises is entitled to maintain a cause of action thereon," even if the "full amount of damages" is not apparent at the time the legal injury occurs (citations omitted). *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 114 (Ala. 2003).

of the "reasonable reliance" standard with respect to fraud cases. The Court in *Foremost* found that the plaintiffs should have discovered the defendant's misrepresentation when the plaintiffs signed and received their sales documents. *Foremost*, 693 So. 2d at 422. Because the plaintiffs received their sales documents more than two years before filing their lawsuit, their misrepresentation claims were barred as a matter of law by the expiration of the applicable two-year statute of limitations. *Id.* The Court noted that the plaintiffs had received documents which, if read or even briefly skimmed, would have put a reasonable person on notice that, contrary to the defendant's representation, they had paid for their first year's coverage. *Id.* at 421-422.

Thus, in *Foremost*, the Alabama Supreme Court re-established that the objective, reasonable reliance standard for determining the accrual date for a fraud or suppression claim imposes a duty to read documents received in connection with a particular transaction. *Id.* at 421. Therefore, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms. *Id.* at 421-22. This Court and the Alabama Supreme Court have uniformly maintained the application of the *Foremost* standard. *See, e.g., Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d 1319, 1326 (M.D. Ala. 2003); *Alfa Life Insurance Corp. v. Green*, 881 So. 2d 987, 991-92 (Ala. 2003). The *Foremost* rule applies both in cases of misrepresentation and suppression. *See Foremost*, 693 So. 2d at 417 (involving fraudulent misrepresentation and fraudulent suppression); *Bullock v. United Benefit Insurance Co.*, 165 F. Supp. 2d 1255, 1258 (M. D. Ala. 2001)(involving claims of fraudulent and/or negligent misrepresentation and fraudulent suppression).

Plaintiff's fraud allegations are generalized allegations that an "agent of the Defendants" made certain misrepresentations and/or suppressions of material fact regarding the nature of the insurance at the time of purchase on July 9, 1996. Plaintiff further contends that throughout the life of the subject insurance, the Defendants furthered their misrepresentation of the nature of the insurance by fraudulently concealing that in determining his premium, they were re-underwriting Plaintiff's insurance based upon his individual health status and claim history. Plaintiff asserts that he was not on notice of and could not have discovered the alleged fraud until within two years of filing this lawsuit on October 13, 2005. (Exhibit A, ¶¶ 12, 23). The facts of this case do not support those contentions.

First, Plaintiff's assertion that he "discovered" the alleged fraud within two years of filing this lawsuit is nothing more than a legal conclusion. More than a mere conclusory statement is required to avoid dismissal of Plaintiff's claims. These types of conclusory allegations are insufficient to fall within the saving clause of Section 6-2-3 of the <u>Alabama Code</u>. A general reference to the fraud being "throughout the life of the subject policy" does not cure these deficiencies and does not avoid dismissal of Plaintiff's fraud claims. Under Alabama law, Plaintiff must plead facts indicating why, through the exercise of ordinary care, he could not have discovered the fraud or misrepresentation. *See, e.g., Smith v. National Security Insurance Co.*, 860 So. 2d 343, 347 (Ala. 2003)(plaintiff's "general reference to the alleged fraud as being 'of a continuing nature' [was] wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint"); *Miller v. Mobile County Board of Health*, 409 So. 2d 420, 422-423 (Ala. 1981)(affirmed dismissal of claims based on failure to plead facts to save claims from statute of limitations bar). Here, neither the initial Complaint nor the Amended Complaint provides facts

or circumstances by which the Defendants, or even just the NASE, concealed Plaintiff's causes of action so as to toll the statute of limitations and neither shows what prevented Plaintiff from discovering the facts surrounding the alleged fraud and asserting his claims within the required statutory period.

Second, the *Foremost* decision forecloses the possibility of Plaintiff avoiding the statute of limitations bar on his misrepresentation and suppression claims.   The focus of Plaintiff's allegations is fraud related to the nature and cost of his insurance.  Plaintiff asserts that he was not sold group insurance and that his premiums were increased on an individual basis and not on a group basis.  Plaintiff, who can read and write, admits that he received his insurance certificate, which outlines the nature, terms, benefits and conditions of his insurance.  (Exhibit C, p. 14, lines 22-23; p. 27, line 22 – p. 28, line 20).  Plaintiff's Certificate of Insurance summarizes the rights and benefits under the Group Policy and contains specific language that benefits would be paid in accordance with the Group Policy (the NASE being the policyholder).  (Exhibit B, pp. 1, 4-5, 20).  Plaintiff also admits that the certificate contained specific language that the premium rates were subject to change and that he understood that language.  (Exhibit C, p. 28, line 2 – p. 30, line 21 and Exhibit 2 to the deposition; Exhibit B, p. 16 "Premium Changes" and the Amendatory Endorsement, ¶ 1).   Plaintiff also produced during discovery and admittedly received 16 letters over a period of seven years (dated December 21, 1998; June 21, 1999; June 28, 1999; December 20, 1999; June 19, 2000; December 26, 2000; June 25, 2001; December 24, 2001; June 24, 2002; December 26, 2002; June 26, 2003; December 26, 2003; June 26, 2004; December 26, 2004; June 21, 2005; and December 21, 2005, respectively), informing Plaintiff, *inter alia*, of a change in his premium rate or his requested plan change.  (Exhibit D; Exhibit C, p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22).  Plaintiff was capable of discovering the alleged

fraud by reading and understanding the terms of his insurance certificate, particularly his insurer's reservation of the right to change his premium, as well as the later letters that informed him not only of a premium change, the reasons therefor and options to limit the increase or perhaps even lower the premium, but also that everyone with coverage such as his would experience an increase.  (Exhibit B; Exhibit C, p. 27, line 22 – p. 30, line 21 and Exhibit 2 to the deposition; p. 46, line 15 – p. 66, line 2; p. 69, lines 4-22; Exhibit D).  Those documents outline the nature, terms, benefits, conditions and cost of the insurance – the very information allegedly misrepresented and/or suppressed.  And notably, 11 of those letters were received more than two years before the Plaintiff filed this lawsuit.  (Exhibit D).

Thus, Plaintiff, more than two years before he filed this lawsuit, received numerous documents -- in 1996, 1998, 1999, 2000, 2001, 2002 and 2003, that if read, would have put him on notice of the precise nature and cost of the insurance he purchased in 1996.  In addition, Plaintiff knew or should have known of the premium increases since his employer paid the premiums in lieu of providing Plaintiff with a raise in pay, for the entire time the insurance was in effect.  (Exhibit E, p. 24, line 15 – p. 25, line 21; p. 52, lines 17-19; p. 53, lines 5-8; p. 66, lines 2-23).  Under the *Foremost* objective standard, Plaintiff should be deemed as a matter of law to have discovered the alleged fraud when he purchased and received his insurance certificate in 1996 and certainly no later than in 1998 when he started receiving letters about premium changes.  *See Auto Owners Insurance Co. v. Abston*, 822 So. 2d 1187, 1195 (Ala. 2001)("… the limitations period begins to run when the plaintiff was privy to facts which would 'provoke inquiry in the mind of a [person] of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud.'")(citations omitted). Plaintiff cannot adduce substantial evidence of any of his fraud claims such that the statute of limitations would have

been tolled. <u>The two-year statute of limitations expired no later than 2000, which was five years before this lawsuit was filed.</u>  The Plaintiff had ample opportunity, in fact years, to timely assert his claims, which he waited until 2005 to raise in this lawsuit.  Plaintiff's claims are barred by the statute of limitations and should be dismissed.

**III.    <u>Plaintiff Cannot Recover Mental Anguish Damages</u>.**

Plaintiff's claim for mental anguish damages should be dismissed.  Plaintiff generally alleges that he suffered emotional distress damages due to Defendants' fraud.  (Exhibit A, ¶ 32).  However, Plaintiff fails to plead any facts indicating he is entitled to such damages from the NASE.  Moreover, the Plaintiff's claims for emotional distress and mental anguish damages appear to stem from conduct based upon his contractual relationship with his insurer.  First, the NASE was not Plaintiff's insurer and was not a party to the insurance contract.  Second, under Alabama law, Plaintiff is not entitled to emotional distress and mental anguish damages for claims arising out of breach of an insurance contract.  *See, e.g., Vincent v. Blue Cross-Blue Shield of Alabama*, 373 So. 2d 1054, 1055-56 (Ala. 1979).  Plaintiff is not entitled to and cannot recover those damages.  Therefore, his claim for such damages should be dismissed.

<u>CONCLUSION</u>

For the reasons more fully described above, the NASE requests this Court enter an Order granting summary judgment in favor of the NASE on all of Plaintiff's claims.  The NASE also requests such other and further relief to which it is justly entitled.

*s/Pamela A. Moore*_____

JAMES W. LAMPKIN II (LAMPJ7474)
PAMELA A. MOORE (MOORP5421)
Attorneys for Defendant
National Association for the Self-Employed, Inc.

30

OF COUNSEL:

ALFORD, CLAUSEN & McDONALD, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama  36602
(251) 432-1600
(251) 432-1700 (fax)

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on August 3, 2007, the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, which will send notification of such filing to the following:

      Steven W. Couch, Esq.
      Hollis & Wright, P.C.
      505 North 20th Street, Suite 1500
      Birmingham, Alabama  35203

          *s/Pamela A. Moore*_____
          COUNSEL