IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TROY E. TILLERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 3:05-cv-985-MEF |
| THE MEGA LIFE AND HEALTH | ) | |
| INSURANCE CORPORATION, a corporation; | ) | |
| TRANSAMERICA LIFE INSURANCE | ) | |
| COMPANY F/K/A PFL LIFE INSURANCE | ) | |
| COMPANY, a corporation; NATIONAL | ) | |
| ASSOCIATION FOR THE SELF EMPLOYED | ) | |
| A/K/A NASE, a corporation; | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW
CLAIMS, CLAIMS FOR PUNITIVE OR CONTRACTUAL DAMAGES, AND
JURY DEMAND BASED ON ERISA PREEMPTION**

COMES NOW, the Plaintiff, Troy E. Tillerson, by and through counsel, and submits this response in opposition to Defendants' Motion for Summary Judgment on Plaintiff's State Law Claims, Claims for Punitive or Contractual Damages, and Jury Demand based on ERISA Preemption. Based upon the facts and legal precedent cited herein, Plaintiff respectfully requests this Court to deny said motion. For purposes of brevity, Plaintiff will incorporate all relevant facts into his argument.

**INTRODUCTORY COMMENT**

The Defendants' Motion for Summary Judgment based on ERISA preemption appears to be nearly identical in both letter and number to the Motion to Strike that these Defendants filed on November 21, 2006 (Document #41). As such, Plaintiff hereby apologizes to the Court that the much of the following brief and

arguments are those that were contained in his Opposition to the Motion to Strike filed on December 8, 2006 (Document #43).  Plaintiff has however incorporated certain admissions made by the Defendants' corporate representatives and discussion of legal precedent that clearly show that this case is not preempted by ERISA. Indeed, as will be shown below, the Defendants' corporate representatives admitted that this was not an ERISA policy.  As Defendants have apparently seen fit to omit this testimony from its brief to this Court, plaintiff will incorporate these statements herein.

## PROCEDURAL POSTURE AND CASE BACKGROUND

### A. <u>Plaintiffs' Complaint</u>

The claims asserted in this case sound in tort.  All claims relate to Defendants' misrepresentations regarding the true nature of the insurance coverage at issue in this case.  The Defendants misrepresented to Plaintiff that he was purchasing a "group" insurance policy when in reality Plaintiff was sold coverage that was not "group" coverage, but rather was individual and/or quasi-individual coverage that essentially punished the Plaintiff by raising his insurance premiums 505% over the life of his policy after he became ill with Graves disease.  (See Complaint and Amended Complaint attached hereto as Exhibit 1).  Plaintiff **does not** seek reimbursement for a claim that was denied.  Instead, Plaintiff seeks damages he suffered as a result of falling victim to Defendants' predatory, fraudulent, and illegal actions.  This suit **relates not** to Defendants' failure to cover a particular treatment or claim, but to a scheme that centers around the selling of an insurance product purported to be

"group health insurance" that really was individual coverage and/or otherwise punished insured for becoming ill.

According to Defendants, ERISA – a federal statutory scheme governing claims by *employees* for *benefits* under certain group benefit plans – precludes the Plaintiffs, under Alabama common law, from recovering damages caused by Defendants' misrepresentation regarding the true nature of the health insurance product at issue in this case. As Defendants must admit, their strained interpretation of ERISA would deprive Troy Tillerson and other purchasers of Defendants' "group insurance" products of any remedy whatsoever, in effect placing insurers beyond the reach of any court.[1] Defendants' argument, if correct, means that even if an insurer is guilty of blatant breach of contract and fraud having nothing to do with a claim for denial of benefits or medical coverage, no remedy is available. No court has ever accepted such an outrageous argument and this Court should not be the first. ERISA simply does not preempt Plaintiffs' claims arising from Defendants' illegal and fraudulent actions regarding the selling and marketing of their "group" health insurance products.

---

[1] This is not hyperbole. In a case properly falling within ERISA's scope, the only remedies available are the monetary cost of any medical benefits wrongfully withheld and/or equitable relief in aid of this remedy. Learned commentators have noted how badly ERISA eroded rights for workers it purported to protect. "Although ERISA was designed with the dual purposes of protecting employers from inconsistent state laws and protecting employees' interests in promised benefits, the protection afforded employees, if any, is minimal. Given ERISA's broad preemption provision and the erosion of the protection afforded employees following recent federal court decisions, employees are in a worse position now than they were before ERISA was enacted." Kathlynn L. Butler, "Securing Employee Health Benefits Through ERISA and the ADA," 42 Emory L.J. 1197, 1239-1240 (Fall 1993). Because Congress only intended ERISA to govern suits for wrongfully denied claims for medical benefits, ERISA does not provide the full array of consequential or punitive damages that are appropriate in this case.

B. **What Is This Case About?**

Having marketed the insurance to Troy Tillerson as "group health insurance," Defendants' represented that Plaintiff would become a member of a group and that any future premium increase would be spread equally for all members of the group. (See Exhibit 1--Amended Complaint at p. 3). As this Court is aware, this concept is what the insurance industry refers to as the "law of large numbers" or risk spreading. Under a true group insurance product, this risk spreading allows for increasing medical costs to be spread over the entire group so that the insurance itself can remain affordable to consumers.

Instead of Plaintiff's premium increases coming as a result of increases of the entire "group" of insureds, as represented by Defendants, Plaintiff's insurance premiums increased 505% over the life of his policy when he became stricken with Graves disease and was forced to seek medical treatment. In other words, Plaintiff's premium increases were due to his individual claim experience and his health status such as is the case with individual insurance coverage. (See Exhibit 1--Amended Complaint at p. 4).

Based upon these facts, Plaintiff has alleged that Defendants misrepresented the true nature of the insurance coverage at issue in stating that the coverage was "group insurance". Plaintiff has further alleged that the Defendants knowingly misrepresented the nature of this insurance product to thousands of other individual like the Plaintiff. Defendants mischaracterize this case as a dispute over "costs, terms and/or benefits" under the Plaintiff's Certificate of Insurance which Defendants mischaracterize as an ERISA-governed benefit plan. Because ERISA

preempts claims for certain types of relief under an ERISA-governed plan, Defendants' motion attempts shoehorn this case into that paradigm. Defendants' efforts to present this case as a claim for medical benefits or for clarification of plan terms is specious.

## STATEMENT OF FACTS

The application submitted for Troy Tillerson by Mr. Tillerson (both the Certificate of Insurance and the Application are attached hereto as Exhibit 2) omits any mention of ERISA or an employee health benefit plan. Defendants accepted the application, entering into a binding contract to provide what Defendants promised to be "group" health insurance. The initial term of the contract was one year. The Plaintiff renewed the contract at the end of the first year. Plaintiff's insurance premiums increased 505% over the life of his policy when he became stricken with Graves disease and was forced to seek medical treatment. (See premium increase letter attached hereto as Exhibit 3). In other words, Plaintiff's premium increases were due to his individual claim experience and his health status such as is the case with individual insurance coverage. (Exhibit 1--Amended Complaint at p. 4)[2].

Based upon these and other facts, Plaintiff has alleged that Defendants misrepresented the true nature of the insurance coverage at issue in stating that the coverage was "group insurance". Plaintiff has further alleged that the Defendants knowingly misrepresented the nature of this insurance product to thousands of other individual like the Plaintiff. Defendants mischaracterize this case as a dispute over

---

[2] The references to the Complaint and Amended Complaint included in the Statement of Facts are made herein only for the purposes of this particular motion as this Court must look to, in part, the claims made and relief sought by Plaintiff to determine whether or not his claims are preempted by ERISA.

"costs, terms and/or benefits" under the Plaintiff's Certificate of Insurance which Defendants mischaracterize as an ERISA-governed benefit plan. Because ERISA preempts claims for certain types of relief under an ERISA-governed plan, Defendants' motion attempts shoehorn this case into that paradigm. Defendants' efforts to present this case as a claim for medical benefits or for clarification of plan terms is not credible.

Indeed, the undisputed facts of record are incompatible with the thesis of Defendants' motion. Nowhere in the Complaint, in any Amendment thereto or in any pleading in this case does Plaintiff make a claim for benefits under the insurance coverage. In fact, at the deposition of Troy Tillerson, counsel for Defendants examined the Tillerson as follows:

Q:    Mr. Tillerson, can you tell me--you did file claims on your insurance policy; correct?

A:    Yes, sir.

Q:    Okay. And you did have claims that were paid; right?

A:    Yes, sir.

Q:    The payment of any of those claims is not at issue in this lawsuit, is it?

A:    No, sir.

(Deposition of Troy E. Tillerson at 46, attached hereto as Exhibit 4)

Given this testimony, which was conspicuously absent from Defendants' brief, it is hard to imagine how Defendants can actually argue to this Court that this case is one for "benefits" under this coverage--it is not. Curiously, Defendants never asked either Mr. Tillerson or Ms. Tinkey whether or how Mr. Tillerson's employer

established insurance coverage for its employees; whether Tillerson's employer established it to acquire tax advantages available under ERISA; whether and to what degree the Plaintiff's employer participated in the administration of any function relating to the coverage or benefits derived therefrom.  Why the complete absence of any such questioning?  The reason is that the insurance coverage at issue in this case is simply <u>not</u> an employer sponsored ERISA plan and the claims in this case have <u>nothing</u> to do with benefits due under the policy.  Indeed, the subject of ERISA is completely absent from all depositions taken by these Defendants.

Unlike that questioning by Defense counsel that completely ignored ERISA issues, Plaintiff's counsel did conduct depositions of Defendants' corporate representatives wherein the subject of ERISA was discussed.  This testimony is revealed below.

During the deposition of Susan Johnson, who is the Senior Director of Compliance Oversight (Deposition of Susan Johnson, Exhibit 5 at p.5), the following exchange took place:

Q:    Are you familiar with ERISA in your capacity as compliance
       director?

A:    To an extent.

Q:    To what extent?

A:    I've got some knowledge.  I'm not an expert on ERISA.

Q:    What does—I know it's a broad statute but what does your
       knowledge encompass?

A:    Mainly, I guess, certain requirements apply to employer based
       coverages.

Q:    Like what?

A:     Under HIPAA there's certain—to an extent related to small
employer requirements, certain waiting periods you can
have….

Q:     Do you know if Mega sells employer-based products?

A:     In the state of Alabama?

Q:     Yes, ma'am.

A:     I believe that we—I believe Mega is a small employer carrier in
the state of Alabama.  I think we have very limited plans.  I
don't know that we sell a whole lot of small employer coverage.

Q:     Is Mr. Tillerson's coverage a small employer product?

A:     No.

Q:     Have you had a chance to look over his certificate before you
came here today?

A:     I'm generally familiar with his certificate form.  I haven't
looked at the specific certificate.

Q:     In your opinion, is this an ERISA type plan?

MR. LAMPKIN:     Object to the form of the question.  Your
asking the witness to draw a legal conclusion. You can answer
if you can.  And she's not designated to talk about that area.

A:     **Mr. Tillerson—to the best of my knowledge, his coverage
would have been issued as a member—an individual member
of the association.  So he would not be subject to ERISA.**

(Exhibit 5 at pp. 106-109)(emphasis added)

During the deposition of Kip Howard, the supervisor of claims risk for Mega

Life and Health Insurance Company. (Exhibit 6 at p. 20), the following exchange

took place:

Q:     Do you know anything about ERISA?

A:     A little bit.

Q:      Okay.  Just generally describe for me, if you would, Mr.
        Howard, your knowledge in that regard.

A:      It was an act passed in 1972 to basically shield employers from
        employee lawsuits regarding benefits that are provided.

Q:      Are you familiar with working with ERISA type plans?

A:      Very little.  We do have a very, very small percentage of people
        who have ERISA approved policies if they were ERISA
        qualified when they came to us.

Q:      What do you mean by "ERISA approved?"

A:      I just mean an ERISA policy.

Q:      Does Mr. Tillerson have one?

        MR. LAMPKIN: Object to the form.

A:      **To my knowledge, Mr. Tillerson does not have an ERISA
        policy.**

(Exhibit 6 at pp.  66-67) (emphasis added)

Q:      Just because somebody, a relative, pays premiums on behalf of
        a certificate holder, based on your understanding of ERISA,
        does that make it an ERISA plan?

A:      Can you repeat the question, please?

Q:      Yes. Just because a relative pays premiums on behalf of a
        certificate holder, does that in fact make it a –the certificate an
        ERISA plan, based on your understanding of that?

A:      No.

Q:      Okay.  In the certificates that are –were the ERISA plans that
        you are familiar with or do the certificates typically say it's an
        ERISA plan?

A:      I don't know that I've ever actually seen one.

Q:      You certainly haven't seen one in this case, have you?

A:    No.

(Exhibit 6 at pp.  100-104)

Finally, the Defendants' corporate representative and manager of the underwriting department testified that she had **never even worked** with ERISA type policies. (Deposition of Linton Checka, Exhibit 7 at p.39).

In their Motion, Defendants imply that Plaintiffs' claims will require interpretation of terms of an ERISA-governed plan.  However, Defendants never questioned either Mr. Tillerson or Ms. Tinkey about the terms of any such "plan." Defendants' attempt to portray this action as one to clarify plan terms or to recover expenses for denied medical claims is disingenuous and misleading.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

## ARGUMENT AND CITATION OF AUTHORITY

Defendants' Motion attempts to present a defense to Plaintiffs' action based on a doctrine known as "defensive ERISA preemption."  "The existence of an ERISA plan is a question of fact to be answered in the light of all surrounding

circumstances from the point of view of a reasonable person." *Shwartz v. Provident Life and Accident Ins. Co.*, 280 F.Supp.2d 937, 940 (D.Ariz. 2003)(denying defendant's motion for summary judgment regarding ERISA).  The mere purchase of a group health insurance plan by a small business does not automatically trigger even the broadest aspects of ERISA preemption.  *Thompson v. American Home Assurance Company*, 95 F.3d 429 (6th Cir. 1996)(vacating summary judgment, finding that genuine issue of material fact existed as to whether group health insurance policy was a "plan" within meaning of ERISA or fell within safe harbor regulations established by Department of Labor).  The facts in this case show that the Defendants' ERISA preemption argument has no place in this case and, as such, their requested relief is due to be denied.

I.    **PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA**

The claims of Plaintiff Tillerson are not preempted by ERISA.  First, Plaintiff's insurance contract is not an "employer sponsored plan" so that it cannot and does not fall within the pervue of ERISA.  Indeed, during the deposition of Defendants' corporate representative Susan Johnson, who is the Senior Director of Compliance Oversight (Deposition of Susan Johnson, Exhibit 5 at p.5), the following exchange took place:

Q:    Are you familiar with ERISA in your capacity as compliance director?

A:    To an extent.

Q:    To what extent?

A:    I've got some knowledge.  I'm not an expert on ERISA.

Q:    What does—I know it's a broad statute but what does your knowledge encompass?

A:    Mainly, I guess, certain requirements apply to employer based coverages.

Q:    Like what?

A:    Under HIPAA there's certain—to an extent related to small employer requirements, certain waiting periods you can have….

Q:    Do you know if Mega sells employer-based products?

A:    In the state of Alabama?

Q:    Yes, ma'am.

A:    I believe that we—I believe Mega is a small employer carrier in the state of Alabama.  I think we have very limited plans.  I don't know that we sell a whole lot of small employer coverage.

Q:    Is Mr. Tillerson's coverage a small employer product?

A:    No.

Q:    Have you had a chance to look over his certificate before you came here today?

A:    I'm generally familiar with his certificate form.  I haven't looked at the specific certificate.

Q:    In your opinion, is this an ERISA type plan?

      MR. LAMPKIN:    Object to the form of the question.  Your asking the witness to draw a legal conclusion. You can answer if you can.  And she's not designated to talk about that area.

A:    **Mr. Tillerson—to the best of my knowledge, his coverage would have been issued as a member—an individual member of the association.  So he would not be subject to ERISA.**

(Exhibit 5 at pp. 106-109)(emphasis added)

Moreover, during the deposition of Kip Howard, the supervisor of claims risk for Mega Life and Health Insurance Company. (Exhibit 6 at p. 20), the following exchange took place:

Q:     Do you know anything about ERISA?

A:     A little bit.

Q:     Okay.  Just generally describe for me, if you would, Mr. Howard, your knowledge in that regard.

A:     It was an act passed in 1972 to basically shield employers from employee lawsuits regarding benefits that are provided.

Q:     Are you familiar with working with ERISA type plans?

A:     Very little.  We do have a very, very small percentage of people who have ERISA approved policies if they were ERISA qualified when they came to us.

Q:     What do you mean by "ERISA approved?"

A:     I just mean an ERISA policy.

Q:     Does Mr. Tillerson have one?

       MR. LAMPKIN: Object to the form.

A:     **To my knowledge, Mr. Tillerson does not have an ERISA policy.**

(Exhibit 6 at pp.  66-67) (emphasis added)

Q:     Just because a relative pays premiums on behalf of a certificate holder, does that in fact make it a –the certificate an ERISA plan, based on your understanding of that?

A:     No.

Q:     Okay.  In the certificates that are –were the ERISA plans that you are familiar with or do the certificates typically say it's an ERISA plan?

A:     I don't know that I've ever actually seen one.

13

Q:      You certainly haven't seen one in this case, have you?

A:      No.

(Exhibit 6 at pp. 100-104)

Finally, the Defendants' corporate representative and manager of the underwriting department testified that she had **never even worked** with ERISA type policies. (Deposition of Linton Checka, Exhibit 7 at p.39).   Clearly and contrary to the arguments made by their counsel in this case in the preemption motion, <u>these Defendants admitted under oath that Mr. Tillerson's policy certificate is not an ERISA plan</u>.   If it chose to do so, this Court could simply stop here and deny this motion.

A second reason evidencing that this case is simply not preempted by ERISA is evidenced in the fact that Plaintiff <u>does not</u> seek benefits under any ERISA plan. (See Exhibit 1--Complaint and Amended Complaint)  In fact, Plaintiff's claims arise out of a contract separate and apart from any "plan" and do not "relate to" an ERISA-governed plan in any logical or legally relevant way.   This Court need only look to the ERISA statute, interpreting case law and the purposes behind ERISA to know that is simply has no place in this lawsuit.

**A**.      **What Is ERISA and What, If Anything, Does it Have to Do With This Case?**

ERISA is a federal statutory scheme which provides for regulation of employee benefit plans, including employee health plans.   ERISA regulates the manner in which plans are to be administered, the fiduciary and other duties of participants and providers of plan benefits, and various enforcement mechanisms for

14

breaches of those duties. The Congressional purpose in creating ERISA preemption was to create a "**uniform body of benefits law**." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 657(1995) (*quoting Ingersoll-Rand v. McClendon*, 498 U.S. 133, 142 (1990))(emphasis added). A principal goal of ERISA is to enable employers "to establish a uniform administrative scheme, which provides a set of standard procedures to guide **processing of claims and disbursement of benefits**." *Egelhoff*, 532 U.S. at 148, (*quoting Fort Halifax Packing Cp. v. Coyne*, 482 U.S. 1 (1987))(emphasis added). Congress felt a uniform benefit system was necessary to allow companies to establish health benefit plans for their employees, generally to be administered by either the companies themselves or through a plan administrator in a fiduciary capacity for the benefit of the employees.

In order to provide a uniform body of benefits law, Congress provided that ERISA would "preempt" state laws and regulations – including civil actions – which would interfere with ERISA's scheme for benefit plans. Thus, the state laws that are preempted by ERISA either mandate employee benefit structures, deal with administration of benefits, or create alternative mechanisms for enforcing benefits claims. *New York Blues*, 514 U.S. at 658.

On the other hand, Congress wanted to respect a historical tradition of leaving health insurance regulation within the domain of the States. Congress expressly "saved" from ERISA's preemptive reach any and all state laws which "regulate insurance." The Supreme Court of the United States consistently rules that insurance "laws that regulate only the insurer, or the way in which it may sell insurance *do not 'relate to' benefits plans*" and thus are not preempted. *New York Blues,*

514 U.S. at 663, (*quoting Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985))(emphasis supplied).  Therefore, when Plaintiff complains that Defendants defrauded him by selling essentially individual health insurance as "group" health insurance, in direct violation of Alabama law, these claims do not "relate to" any employee benefit plan in the ERISA sense.  Instead, Plaintiffs' claims address the way in which Defendants market and sell illegal health insurance to individuals such as Troy Tillerson.

Other than this motion, which the Court must now deal with, this case has nothing to do with ERISA.  If the motion is denied, the Court will never again be confronted with even mere mention of ERISA.  Contrary to the strained interpretation of the complaint employed by Defendants, Plaintiffs seek no benefits under an ERISA plan and absolutely **none** of their claims make reference to an ERISA plan or any aspect of ERISA.  (See Exhibit 1--Complaint and Amended Complaint)  This case is about an insurance contract, the conduct of the Defendant insurance companies, and the law of Alabama.

**B.**     **ERISA's Statutory Language illustrates that the Insurance Policy at Issue is Not an Employer Sponsored Plan**

The language of the ERISA statutes themselves show that this policy is not an ERISA plan. Indeed, 29 USCA § 1022 (a) requires that in a true "employee benefit plan" that:

> "[a] summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title. The summary plan description shall include the information described in subsection (b) of this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be

sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan…."

This same statute goes on to state that:

"(b) The summary plan description shall contain the following information: The name and type of administration of the plan; in the case of a group health plan, whether a health insurance issuer is responsible for the financing or administration (including payment of claims) of the plan and (if so) the name and address of such issuer; the name and address of the person designated as agent for the service of legal process, if such person is not the administrator; the name and address of the administrator; names, titles, and addresses of any trustee or trustees (if they are persons different from the administrator); a description of the relevant provisions of any applicable collective bargaining agreement; the plan's requirements respecting eligibility for participation and benefits; a description of the provisions providing for nonforfeitable pension benefits; circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; the source of financing of the plan and the identity of any organization through which benefits are provided; the date of the end of the plan year and whether the records of the plan are kept on a calendar, policy, or fiscal year basis; the procedures to be followed in presenting claims for benefits under the plan including the office at the Department of Labor through which participants and beneficiaries may seek assistance or information regarding their rights under this chapter and the Health Insurance Portability and Accountability Act of 1996 with respect to health benefits that are offered through a group health plan (as defined in section 1191b(a)(1) of this title) and the remedies available under the plan for the redress of claims which are denied in whole or in part (including procedures required under section 1133 of this title).

29 U.S.C.A. 1022(b).

The Defendants' have not and cannot show that Plaintiff was supplied with such "plan" information.  Indeed, the Certificate of Insurance proffered by these Defendants makes absolutely <u>no mention</u> whatsoever of ERISA or states in any way,

shape or form that this policy at issue is controlled or affected by ERISA. Moreover, the Certificate most certainly falls woefully short of containing the required information called for in a true "employee benefit plan" as is required under ERISA legislation. Why the failure to provide the required information? The reason for this is clear--these Defendants know that the insurance policy at issue in this case is simply not an ERISA policy.

> **C. In Addition to its Admissions to Such, As a Matter of Law, Defendants' Health Insurance Coverage is Not an "Employee Benefit Plan" as Defined by ERISA**

Because Defendants' claim of ERISA preemption is a federal defense, the burden falls upon Defendants to prove the facts necessary to establish it. To prove an entitlement to judgment as a matter of law because of ERISA preemption, Defendants must first prove an "ERISA plan" exists. This is a question of fact. _MDPhysicians & Associates, Inc. v. State Board of Insurance_, 957 F.2d 178, 182 (5th Cir. 1992)("Whether the MDPlan constituted an 'employee welfare benefit plan' is a question of fact."). Further, ERISA preemption turns on whether a "plan" satisfies the statutory definition of "employee welfare benefit plan," not on whether Defendants intended ERISA to govern. _Id._, at 183, n. 7. Despite the corporate representatives admissions to the contrary, incredibly these Defendants still maintain that Mr. Tillerson's plan is governed by ERISA. Even looking past their admissions to the contrary however, these Defendants fail miserably to show that there is no genuine issue of material fact in this regard.

The mere purchase of group health insurance does not automatically create an employee health benefit plan under ERISA. Congress charged the Department of

Labor with promulgating regulations for ERISA. Those regulations provide that purchases of insurance, even for employees, stay exempt from ERISA when (1) no contributions are made by an employer; (2) participation is voluntary; (3) the sole function of the employer is permitting the insurer to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) the employer receives no consideration in the form of cash or otherwise for administrative services actually rendered in connection with remitting payment. 29 C.F.R. § 2510.3-1(j). "It is well settled that when an employer provides an insurance plan to employees and satisfies all four requirements of the safe harbor regulation, the employers mere purchase of insurance does not, by itself, create an employee welfare benefit plan under ERISA." *Schwartz*, 280 F.Supp.2d at 940-41, (citing *Stuart v. Unum Life Ins. Co. of America*, 217 F.3d 1145, 1149 (9th Cir. 2000)); *see also Thompson v. American Home Assurance Company*, 95 F.3d 429 (6th Cir. 1996)(genuine issue of material fact precluded summary judgment on whether insurance policy implicated ERISA).

The Defendants argue in a conclusory fashion that the insurance at issue is an "employer sponsored plan" and that the safe harbor regulation does not apply. While there are numerous flaws in the Defendants' logic in this regard, the largest defect in the fact that this policy is not an "employer sponsored plan". In furtherance of this argument, Defendant's rely heavily upon *Butero v. Royal Maccabees Life Insurance Co.* and *Donovan v. Dillingham* for the propositions that a proper ERISA plan existed because T&T Construction (Plaintiff's employer) sought to confer "intended benefits" to "intended beneficiaries," provided "a source of financing, and

a procedure to apply for and collect benefits." (Defendants' Brief at 7). However, Defendant's argument misses the mark in its application of whether or not there is a plan. In *Donovan*, the Eleventh Circuit Court of Appeals held that "a decision to extend benefits ***is not the establishment of a plan or program***." <u>*Donovan v. Dillingham*</u>, 688 F.2d 1367, 1373 (11th Cir. 1982). Rather, "it is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." <u>*Id*</u>. In the instant case, the evidence presented clearly shows that T & T Construction did not provide the financing, did not extend any benefit to and did not have any say in or procedures for receiving or handling benefits – all requirements under <u>*Butero.*</u> <u>*Butero v. Royal Maccabees Life Insurance Co.,*</u> 174 F.3d 1207, 1215 (11th Cir. 1999). Defendant claims that the source of financing came from Plaintiff's employer, but this is not true. Using a portion of an employee's pay to cover health insurance premiums from a contract chosen by and entered into voluntarily by the employee, does not constitute "financing" on the part of the employer. To hold such would be the same as saying that because an employer paid an employee, and the employee used his paycheck to purchase gas or food, then the employer is "financing" the purchase of gas or food. Clearly, this is not what Congress intended when they enacted the ERISA statutes.

Defendants next rely upon <u>*Anderson v. UNUM Provident Corp.*</u>, as the basis for arguing that the plan was "established" by T & T Construction. (Defendant's Brief at p. 9). In doing so, they quote <u>*Anderson*</u>, quoting <u>*Buetero*</u>, to show that Plaintiff's employer either established or maintained the plan. In its analysis of whether or not an employer had "established" a plan, the Eleventh Circuit Court of Appeals in

*Anderson*, looked to the dictionary definition of "establish," settling upon the definition "to make or form." *Anderson v. UNUM Provident Corp.*,369 F.3d 1257, 1264 (11th Cir. 2004). In the instant case, applying that definition to the instant case, T & T Construction cannot be held to have made or formed the plan for Plaintiff. While it is true that Plaintiff's stepmother put together a meeting between the insurance agent and Plaintiff, it was ultimately Plaintiff's decision at that meeting to enter into the plan. This was not an option extended to Plaintiff by virtue of his being an employee of T & T Construction. It was a family member organizing a meeting because she and her husband felt it prudent for the Plaintiff to have health insurance. The *Anderson* Court went on to state that even if the employer did not establish the plan, it could still fall under ERISA if the employer "maintained" the plan. *Id.* at 1265. Again the Court looked to the Webster's Dictionary definition, settling on "to continue." *Id.* In order for the employer to be held to have maintained the plan, if it was not established by the employer (as is the case here), then the employer would have to begin to take a more active role in the plan's administration. *Id.* For example, the Court in *Anderson* stated:

> [I]f Shaw began to involve itself more in the payment of benefits, changed the critical terms of the policy, or performed all the administrative functions associated with the maintenance of the plan, those would be actions on the part of the employer which could "maintain," rather than establish the plan as an employee welfare benefits plan.

*Anderson*, 369 F.3d at 1265. No evidence has been proffered by the Defendants which actual shows that T & T Construction actually paid the benefits, changed any terms of the policy, performed any administrative function associated with the

maintenance of the plan or did any other action would constitute "maintaining" the insurance coverage of Plaintiff.

Defendant's final primary case upon which they rely is _Randol v. Mid-West National Life Insurance Company of Tennessee_, where on page nine (9) of their motion, they try and analogize Plaintiff's situation with that of the plaintiff in _Randol_. In _Randol_, the plaintiff's employer contributed money towards the plaintiff's welfare benefit plan. _Randol_, 987 F.2d at 1548-49. Deposition testimony in the present case has shown that this is not what happened here. Ms. Tinkey clearly testified that T & T Construction did not pay any of the premiums for Plaintiff's health insurance, rather the cost of his insurance was deducted out of his salary. Importantly, Plaintiff's employer did not even take tax deduction when the premiums were paid on behalf of Plaintiff. (Deposition of Sue Tinkey at 25, 26, all excerpts are attached hereto as Exhibit 8). Without question, all premiums were paid by Plaintiff Tillerson, not by his employer; therefore, _Randol_ is, by its very factual basis, inapplicable in this case.

Even if the Court finds that this reasoning is not sound, the Court in _Randol_ went on to state that "[t]o be an _employee_ welfare benefit plan...an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund or program." _Randol_, 987 F.2d at 1550 (citing _Donovan v. Dillingham_, 688 F.2d 1367, 1373 (11th Cir. 1982))(emphasis in original). As outlined above, the plan at issue in this case was established and maintained by the employee and therefore, by application of Defendant's own case authority, does not fall under ERISA. Indeed, in the instant

case the Plaintiff's employer did not distribute any "plan" information—the Defendant insurers did. His employer did not make any contribution towards this insurance, but rather, Tillerson paid all monies towards the policy through his employer since the premium payments were made in lieu of receiving a raise. (Exhibit 8, at 32-33)  <u>Plaintiff's employer did not take tax deductions when the premiums were paid on behalf of Plaintiff.</u>  (<u>Id</u>. at 25, 26). Tillerson's employer did not instruct anyone as to procedures for submitting claims—the Defendant insurers did. Tillerson's employer did not notify anyone regarding any "plan" changes—the Defendant insurers did. His employer did not maintain any records or files with respect to the insurance policies other than premium billing records. They were not responsible for processing or denying claims arising under the policy—that was done by these Defendants, presumably as an insurance administrator ***chosen by Mega Life Insurance Company's corporate sister, PFL Insurance Company*** (not as a "plan administrator" delegated by the Tillerson's employer). Clearly, Department of Labor Regulations for ERISA and that precedent handed down in <u>*Randol*</u> and <u>*Donovan*</u> dictate that the subject insurance contract <u>is not</u> preempted or controlled in any way by ERISA.

Notably, the very Certificate of Insurance issued by Defendants in this case shows that the Certificate holder is Troy E. Tillerson-not his employer, and shows further that the Master Policyholder is the National Association for the Self-Employed-not Plaintiff's employer. (Exhibit 2 at 4 and Amendatory Endorsement 1) In addition to the fact that this policy was not issued to Tillerson's employer, this

policy was not paid for by the Plaintiff's employer[3], did not insure other employees of Plaintiff's employer, and Mr. Tillerson's employer did not perform any administrative function whatsoever having to do with this insurance or the benefits payable thereunder. Put simply, Defendants have not carried their burden of even showing that an ERISA-governed plan is at stake here and, for this reason alone, Defendants' motion should be denied.

Interestingly, while counsel for Defendants attempt to mischaracterize this matter as an ERISA plan, they apparently omit from this Court's viewing the testimony of one of the several corporate representative who destroys their argument. Indeed, during the deposition of Kip Howard, Defendants corporate representative and supervisor of claims risk, the following exchange took place:

> Q:    Just because a relative pays premiums on behalf of a certificate holder, does that in fact make it a –the certificate an ERISA plan, based on your understanding of that?
>
> A:    No.
>
> Exhibit 6 at p. 100

It is hard to imagine how after this admission how these Defendants can still maintain this line of argument before this Court.

### D.    Plaintiffs' Claims Concern an Insurance Contract and the Nature of the Insurance, Not an ERISA Plan and Not ERISA Benefits.

The claims Plaintiffs assert have nothing to do with mandating benefits, the administration of benefits, or the propriety of benefit denials or coverage for claims

---

[3] Sue Tinkey testified that premium payments were made instead of Tillerson receiving a raise. (Exhibit 8 at 32-33). In other words, the employer contributed nothing towards the payment of premiums. This certainly does not rise to the level of "employer-sponsored" plans as contemplated by ERISA.

to benefits. Plaintiffs' claims do not "relate to" ERISA or to an ERISA-governed plan. Plaintiffs are seeking damages for the misrepresentation that the insurance contract at issue was not a true group health insurance contract as represented by Defendants and for damages suffered due to Defendants' uniform, fraudulent misrepresentation of their insurance products as "group" health insurance. (Exhibit 1--Complaint and Amended Complaint).

Plaintiffs' claims do not "relate to" an ERISA plan for two simple reasons. First, Plaintiffs' claims focus on the contractual and legal relationships between Plaintiff and Defendants. There is a fundamental distinction, ignored by Defendants, between an employee benefits plan (the ERISA plan) and the contract entered into between (even though absent in this case) an employer and an insurer to obtain insurance to fully-fund a plan[4]. Second, Plaintiffs seek damages caused by illegally excessive *premiums* employed by Defendant insurers, paid under the contract. Plaintiffs do not seek any "benefits" under an ERISA plan.[5] Plaintiffs do not challenge a discretionary decision by an ERISA fiduciary or plan administrator to deny a claim for medical benefits. In fact, Plaintiff stated in his deposition that this case does not involve issues of unpaid claims. (Exhibit 4 at p. 46).

Courts observe a critical difference between an employer's contract with an insurance company to fund plan benefits and the documents establishing and governing the plan. _See, e.g.,_ _Sonoco Products Co. v. Physicians Health Plan, Inc._, 338

---

[4] Plaintiff places this distinction here for illustration purposes only as, in this case, there is no contract between any employer and these Defendants. Rather, the contract at issue is between an individual (Tillerson) and an insurer.

[5] Indeed, ERISA does not even confer legal standing to employers. _Butero v. Royal Maccabees Life Ins. Co._, 174 F.3d 1207, 1212 (11th Cir. 1999). Defendants' motion is really an attempt to trap Plaintiffs' claims in a blind alley from which there is no escape.

F.3d 366, 373, n. 11 (4th Cir. 2003)("a contract of insurance sold *to* a plan is not itself 'the plan.' ... . Accordingly, the Contract [the insurer] allegedly breached is not the Plan itself, but a contract to provide insurance coverage."); *Analytical Surveys, Inc. v. Intercare Health Plans, Inc.*, 101 F.Supp.2d 727, 734 (S.D.Ind. 2000)(insurance contract to fund benefits was separate from the ERISA plan). In this case, Plaintiff brings an action under his own, not any employer's, **contract** with these Defendants, (the insurer and the self-appointed agents for marketing, advertising, and administration). An "ERISA plan" is not at issue. Because the contract between Plaintiff and Defendants is not part of any ERISA plan, underline is not even a contract between any employer and the Defendants, claims for fraud and damages related to that contract do not seek "benefits" under any plan. Claims seeking only to recover premiums paid for an insurance product that was never provided and/or damages resulting from Defendants' coordinated and illegal scheme are not related to claims for benefits (i.e. claims under 29 U.S.C. § 1132(a)). Simply put, claims challenging these Defendants' representations regarding the true nature of the product sold are not claims for benefits and this contract would not qualify as any "plan" even if it were a contract between the Defendants and Plaintiff's employer--which it most certainly is not.

"You can put a saddle on a duck, but that still doesn't make it a pony."[6] This is exactly what these Defendants are doing. Defendants distort Plaintiff's allegations, characterizing them as claims for "benefits" under a plan and therefore

---

[6] Roy Barnes, former Governor of Georgia, made this statement during a hearing before United States District Court Judge William S. Duffy, Jr. in the case of *Daniel S. Kahn v. Fortis Insurance Company, et al.* CV 1:05-cv-105-WSD which is a case wherein the Defendants made the almost identical argument as is being made here and Judge Duffey not only denied the motion but entered sanctions against those Defendants for doing so. (See Order dated September 13, 2005 attached hereto as Exhibit 9)

preempted by ERISA.  In so doing, Defendants do not cite a single case holding that ERISA preempts an injured party from suing to recover illegally charged premium for a product that was never provided.  No such case exists.  Moreover, these Defendants do not and cannot show how Plaintiff's claims necessarily must make reference to the "plan" or require interpretation of "plan" terms.

**E.    ERISA Does Not Preempt Claims That Do Not "Relate to" an ERISA Plan.**

Section C of Defendants' Motion for Summary Judgment argues that "Plaintiff's State Law Claims Relate to his ERISA Insurance Plan and Therefore Are Preempted and Should Be Stricken."  (Defendants' Brief, pp. 13).  In order for this subsection of Defendant's Motion to even be applicable in this case, this Court must find that the insurance plan in question is in fact an ERISA plan--which it is not. Without this determination, Section C is moot.  However, should the Court in fact find that the plan may be an ERISA plan, it must then consider whether or not the claims asserted by the Plaintiff are "related to" the ERISA plan.  In support of their brief, Defendants cite to *Franklin v. QHG of Gadsden, Inc.*, for the proposition that "a determination of the merits of the state law claim for fraud would require the Court to compare the benefits under the plans provided by current and former employers." (Defendants' Brief at 16).  While this was in fact the final holding of the Court in *Franklin*, the analysis first required that the Court determine that the plan in question was in fact an ERISA plan.  The Court went on to make the analysis that an insurance company allegedly obligated to pay benefits under a plan is not considered an ERISA entity if the complaint alleges pre-policy fraud. *Franklin v. QHG Gadsden,*

*Inc.*, 127 F.3d 1024, 1029 (11th Cir. 1997); *See also Jones v. LRM Intern., et al.*, 351

F.Supp.2d 1308, 1311 (M.D. Ala. 2005).

That is exactly what is alleged in the present case.  Plaintiff's claims rest on

the allegations, as stated in Defendant's Brief, "that he was told he was purchasing

'major medical group' health insurance; that once he was insured, he would become

a member of a 'group' of insured persons; and that any future premium increases

would be increased equally for all other members of the group." (Defendants' Brief

at p. 14).  These statement were made to Plaintiff prior to his entering into the

insurance contract and as such, the Defendants <u>should not</u> be considered ERISA

entities because of the pre-policy fraud alleged.  It follows that the claims alleged in

this case **<u>are not related to</u>** an ERISA plan because no ERISA plan can exist where

the insurer is not considered an ERISA entity.

Defendants also cite to and rely upon *Consumer Benefit Association of the United*

*States v. Lexington Insurance Co.*, stating that:

> Claims which are "related to" ERISA plans are those claims which
> "specifically refer[] to and affect[] ERISA plans, would contravene the
> structure or purpose of ERISA, would require a construction of the
> benefit plan, or would mandate an interpretation of the statutory duties
> of one of the parties to the plan.

(Defendant's Brief, p. 14)(citing *Consumer Benefit Ass'n v. Lexington Ins. Co.*, 731

F.Supp. 1510, 1515 (M.D. Ala. 1990).  These Defendants fail to mention to this

Court that the plaintiff in *Consumer Benefit Ass'n* asserted the same type of claims as

Plaintiff here, *inter alia*, fraud.  *Consumer Benefit Ass'n*, 731 F.Supp. at 1515.  In that

case, this Court found that the plaintiff's fraud and breach of contract claims did not

fall into any recognized area which would entitle defendants to assert that they

claims were preempted by ERISA:

> It appears from these cases that, although no bright line can be drawn, a few general, but helpful, themes can be discerned. The Supreme Court and the Eleventh Circuit have found pre-emption in the following roughly outlined categories: those in which Congress has legislated rights or obligations of entities involved in the operation of an ERISA plan; those in which Congress has provided specific avenues of relief; and those where, although Congress has not expressly legislated as to matter or provided a statutory remedy, the state law specifically refers to and affects ERISA plans, would contravene the structure or purpose of ERISA, would require a construction of the benefit plan, or would mandate an interpretation of the statutory duties of one of the parties to the plan. *The Consumer Benefit Association's claims of fraud and breach of contract do not fall within any of these areas.* The claims do not fall within the area in which Congress has legislated, either as to rights and duties or as to relief under ERISA or ERISA plans; the claims would not contravene the structure or purpose of ERISA; and the claims would not implicate construction of the Association's benefit plan or of the statutory duties that arise under the plan. *The claims are not of the type which courts have found to be pre-empted.*

*Consumer Benefit Ass'n*, 731 F.Supp. at 1515.    Clear case precedent shows that

Defendant's Motion for Summary Judgment is due to be denied.

Just as the plaintiff's claims in *Consumer Benefit* arose of allegations of fraud

and breach of contract unrelated to the "plan", so do the Plaintiff's in the present

case arise out of the Defendants' fraudulent conduct and misrepresentations, the

claims for which do not relate to the "plan", does not "effect" the benefits under any

"plan", would not "contravene the structure or purpose of ERISA", would not

"require a construction of the benefit plan" and would not "mandate the statutory

duties of the parties" to this insurance contract.  This Court has previously held that

those claims are not of the type to be preempted by ERISA, and as such, cannot be

"related to" an ERISA plan for purposes of Defendant's argument.    As such,

Defendant's Motion for Summary Judgment is due to be denied.

**F. Defendants' "relate to" Argument is Too Tenuous to Require ERISA
Preemption.**

Contrary to what these Defendants would have this Court believe, not every

claim which has some remote connection to an ERISA "plan" is considered to

"relate to" an ERISA plan.    The 11th Circuit has stated that "some state law may

affect an ERISA plan in too tenuous, remote, or peripheral a manner to warrant a

finding that the law 'relates to' the plan." _Lordman Enterprises, Inc. v. Equicor, Inc._, 32

F.3d 1529, 1533 (11th Cir. 1994).    While the Supreme Court has noted that ERISA's

preemption is "clearly expansive", the Court has also recognized that "'relate to'

cannot be taken to extend to the furthest stretch of its indeterminacy, or else for all

practical purposes pre-emption would never run its course."    _Egelhoff v. Egelhoff_, 532

U.S. 141, 146 (2001).    A state law "relates to" an ERISA plan "if it has a connection

with or reference to such a plan." _Shaw v. Delta Air Lines, Inc._, 463 U.S. 85, 97 (1983).

The common law of Alabama which Plaintiff seeks to enforce here does not "refer

to" any plan.    Indeed, the state laws upon which Plaintiff's claims are based have no

"connection with," and stand independently from, any plan.

**1.    Courts Refuse to Measure the Scope of ERISA's Preemption by
Potentially Infinite, Indirect Economic Impacts.**

In determining whether state law has "a connection" with an ERISA plan,

the Supreme Court has commented that "we simply must go beyond the unhelpful

text [of § 1144(a)] and the frustrating difficulty of defining its key term, and look

instead to the objectives of the ERISA statute as a guide to the scope of the state law

Congress understood would survive." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 663 (1995). Defendants' argument that the claims made by Plaintiff allegedly "relate to" an ERISA-governed benefits plan twists the concept of ERISA preemption beyond all recognition.

If Defendants' interpretation of ERISA is correct, insurance companies can breach, or induce by intentional misrepresentation as part of a fraudulent, criminal scheme, their contracts to provide group health insurance with impunity and then seek ERISA preemption simply because the Plaintiff has a contract of insurance with that company.  Indeed, Defendants' interpretation would mean that any insurer's conduct is beyond the reach of any state legislature or insurance commissioner.  An argument leading to such a ridiculous result is not only without merit, it does not pass the proverbial smell test.

### 2.    *Morstein* and Rejection of Infinite "Relational" Analysis

The case of *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. 1996), offers critical insight into the "relates to" analysis.  In *Morstein*, an employer brought state law claims against an independent insurance agency in state court for fraudulent inducement to purchase an ERISA-governed insurance plan.  The defendants removed the action and sought summary judgment on ERISA grounds, a motion the district court granted.  Finding that the state law claims against the insurance agent for fraudulent inducement did not have sufficient connection to a plan to "relate to" a plan, Judge Birch wrote that the claims did not fall within ERISA's broad preemptive scope.

In _Morstein_, the Eleventh Circuit distinguished cases like _Pilot Life v. Dedeaux_ and _Ingersoll-Rand Co. v. McClendon_, relied upon by Defendants, by noting that those cases involved the assertion of claims for improper processing of benefits (_Pilot Life_) or necessarily required reference to the plan itself (_Ingersoll-Rand_). _Morstein_, 93 F.3d at 721.  Noting that the Supreme Court had "essentially turned the tide on the expansion of the [ERISA] preemption doctrine," (93 F.3d at 721), the Court noted:

> If "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere. . . . For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections.  We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.

_Morstein_, 93 F.3d at 721-22, (quoting _New York Blues_).

These Defendants attempt to make such a tenuous "relational" analysis in this case by stating, without support, that "Plaintiffs claims for fraud and suppression and any liability of Defendants would exist only as a result of the interpretation of Plaintiff's Certificate of Insurance"  (Defendants' brief at 15).  Not true.  In fact, as noted above, there is no plan interpretation that can be done in this case as there exists no plan to interpret.  The Certificate at issue does not explain any of the required "plan" terms for an employer sponsored welfare benefit plan. (29 U.S.C.A. 1022(b), _supra_.)  The Certificate itself does not make reference or mention to the fact, as represented to Plaintiff, that insurance premiums would be increased equally over the entire "group" that Plaintiff was told he would belong; fails to tell Plaintiff that, contrary to what was represented, his insurance premiums would be calculated based

upon his individual claims experience and health condition; and, without doubt fails to inform the Plaintiff that he would be punished by these Defendant for becoming ill and filing claims.  There will be no interpretation or construction of a plan term in this case of the subject Certificate of Insurance for these claims.  Why?--Because these Defendants simply suppressed this information from the Plaintiff and fraudulently induced Plaintiff into purchasing this insurance.  (See Exhibit 1--Amended Complaint.)  Certainly the Defendants' argument that Plaintiff's claims will not exists but for "interpretation" of this Certificate is disingenuous. Defendants' motion is due to be denied.

**3.    Defendants Mis-Characterize Plaintiffs' Suit as a Claim for Benefits Under ERISA**

The flawed thesis of Defendants' Motion is that a challenge based on Defendants' pre-contract failure to disclose the true nature of the "group" insurance," is inherently a claim for "benefits" terms under ERISA and that such claims require an interpretation of the contract's terms.  Simply put, Defendants try to twist Plaintiffs' allegations into claims for benefits or claims that implicate a coverage dispute regarding the terms of an ERISA-governed plan.  Such is simply not the case.  Indeed, there is not and has not been a single reference to any "benefit" provided under this Certificate in this case.  These Defendants cannot show this Court a single reference to any certificate benefit dispute in any deposition that has been conducted in this case.  Why?-because this case does not involve any benefit dispute.

While it is true that some claims for fraud in the inducement fall within the bounds of ERISA's preemption, Defendants obscure a critical distinction between

this case and cases like _Butero_, _Franklin_, and _Bridges v. Principal Life Ins. Co_., 141 F.Supp.2d 1337 (N.D.Ala. 2001). The difference in outcome between fraudulent inducement cases like _Morstein_ where courts find no preemption and cases like _Butero_, _Franklin_, and _Bridges_ (preemption), turns on what the plaintiffs sought. In each of the latter three cases, the plaintiffs' claims centered on a denial of claims or benefits. By contrast, Plaintiffs in _Morstein_ alleged fraudulent inducement to a contract that preceded the contract and preceded any "plan." But more important, the fraudulent inducement alleged here does not center on a dispute over honoring a claim for benefits or over the extent of medical coverage like in _Morstein_. Instead, the misrepresentations of which Plaintiff complains go to the insurance contract itself, and to the fact that what was promised to be "group health insurance" was, in fact, not.[7] Because Plaintiff's claims have no bona fide nexus to a denial of claim or dispute as to coverage, these claims simply do not fall within the bounds of ERISA that Congress intended to preserve inviolate set apart from state laws and remedies.

4. _Cotton v. Massachusetts Mutual_: **the Extension of** _Morstein_ **to Insurers Acting as Insurers, Rather than ERISA Fiduciaries.**

In _Cotton v. Massachusetts Mutual Life Ins. Co_., 402 F.3d 1267 (11th Cir. 2005), the Eleventh Circuit rejected preemption of actions for fraudulent inducement that

---

[7] A recent order from the Northern District of Georgia underscores the distinction between fraudulent inducement claims regarding benefits or coverage that parallel ERISA remedies and claims for fraud relating directly to the insurance contract itself, which do not. In a separate case brought by Plaintiffs' counsel raising exactly the same issues of, inter alia, fraud, Fortis Insurance Company, sought removal based on the same conclusory argument of ERISA preemption presented here. Citing "the improper nature of the removal," Judge William Duffey ordered remand and awarded attorney's fees. _See_ Order, _Kahn v. Fortis Insurance Company_, 1:05-cv-00105-WSD, page 17-18, attached hereto as Exhibit 9. "Defendants' conclusory allegations that Plaintiff's claims are preempted by ERISA are insufficient to establish any of the elements necessary for this Court to find it has subject matter jurisdiction of this matter." Order, 17. Judge Duffey explained: "For example, Section 1132(a) provides a cause of action for the recovery of plan benefits and allows for the recovery of costs in bringing such a claim. . . . Because Plaintiff does not seek the recovery of plan benefits, Defendants cannot establish that Plaintiff seeks relief available under § 1132(a)." Exhibit 9--Order, p. 17, n 11.

are not enmeshed in a claim for benefits. In doing so, the court also expanded *Morstein* to find that ERISA does not preempt suits against insurers for fraudulent inducement issues not entangled with an ERISA fiduciary or with claims for benefits. The plaintiffs in *Cotton* tried to make out an ERISA claim, alleging misrepresentation and that Mass Mutual breached its fiduciary duties under ERISA. The Eleventh Circuit would have none of it. First, the Court rejected the idea that the insurer was an ERISA fiduciary. Second, the Court found that the plaintiffs' claims were not cognizable under ERISA because they did not address the insurer as an administrator of an ERISA plan. According to the Eleventh Circuit, the allegations addressed the insurer's actions as the seller of insurance and, therefore, ERISA did not preempt the plaintiff's suit.

The Eleventh Circuit rejected the plaintiffs' attempt to invoke ERISA because Mass Mutual was not acting in its capacity as an ERISA entity when it sold the policies. In making this point, the Eleventh Circuit expressly distinguished *Butero*, relied upon by Defendants, on two grounds:

> [P]laintiffs do not challenge any decision not to pay benefits under the terms of the plan. Rather, they allege that Mass Mutual induced them to purchase and maintain vanishing premium life insurance policies as a source of retirement income and death benefits by misrepresenting the level of benefits those policies would provide. In other words, the plaintiffs' dispute is with Mass Mutual the seller of insurance products, not Mass Mutual the ERISA fiduciary. The second distinction [from *Butero*] . . . is that while Butero's claim was one for benefits due under the terms of an ERISA plan, Cotton and Eickhoff claim a loss based on the difference between Mass Mutual's alleged misrepresentations—perhaps the most important of which predate the formation of the plan itself—and the terms of the plan. Thus, while *Butero*'s statement that claims against an insurer for fraud or fraud in the inducement to purchase a policy are in essence claims to

> recover benefits due to the beneficiary under the terms of the plan, does . . . immediately draw this court's attention, . . . this generalization should not be automatically extended to cases in which the plaintiff's claims do **not** actually seek benefits under the terms of the plan.

_Cotton v. Mass Mutual_, 402 F.3d at 1283 (emphasis retained, internal quotations and citations omitted).  Emphasizing the differences between the fraudulent inducement claims in _Butero_ and those in _Cotton_, the Eleventh Circuit built upon the foundation laid by _Morstein_:

> [T]he plaintiffs allege that Mass Mutual, like the independent agent in _Morstein_, made misrepresentations in the sale of an insurance policy.  And when an insurer is not acting in its capacity as an ERISA entity, we can see no reason that Congress would have sought to immunize it from liability for fraud or similar state-law torts.  For conduct such as that alleged by plaintiffs, insurers currently face the threat of suit under state law by non-ERISA entities.  To hold them accountable in this context, therefore, "merely levels the playing field," and any indirect economic impact such claims may have on plans governed by ERISA is not by itself sufficient to establish complete preemption.  Indeed, just like the judgment against the independent insurance agent in _Morstein_, a judgment against Mass Mutual will have no direct economic impact on any ERISA plan.

_Cotton v. Mass Mutual_, 402 F.3d at 1284-85.  Though placed within an analysis of complete, (as opposed to defensive), preemption, the Eleventh Circuit's opinion draws into sharp focus the rampant oversimplification that pervades Defendants' preemption analysis.

In their Brief, Defendants fail to even hint or show (because they cannot) that they were acting as an ERISA fiduciary at the time of selling the subject policy or at anytime thereafter.  In _Cotton_, the Eleventh Circuit found that even when a true

ERISA plan exists, not all suits engage an insurer in its capacity as a plan fiduciary

and, therefore, may fall outside ERISA's preemptive sweep:

> In the instant case, we agree that Mass Mutual is not a
> fiduciary for any purpose other than making benefit
> determinations, a function that is not at issue in this lawsuit.
> Thus, it was not acting "in its role as an ERISA entity" at the
> time the plaintiffs allege that it fraudulently induced them to
> buy the vanishing premium life insurance policies at issue
> here. As such, this lawsuit does not seem to "affect relations
> among principal ERISA entities *as such*" but instead affects
> only the relationship between two policyholders and their
> insurer. Nor is the suit "essentially a challenge to a refusal to
> pay benefits under an ERISA plan". . . . [F]rom the plaintiffs'
> perspective the problem is that the terms of the policy
> themselves do not match Mass Mutual's earlier
> representations.

*Cotton*, 402 F.3d at 1287 (emphasis retained). Instead of addressing this issue head-

on, Defendants side-step and rely upon other cases that are distinguishable on the

same basis as *Butero*. In their Brief, Defendants cite *Franklin v. QHG of Gadsen, Inc.*,

*supra*. and *Hall v. Blue Cross/Blue Shield of Ala.*, *supra.*, for the oversimplified

proposition that claims for fraud necessarily involve referring to the terms of the

policy (Defendants' brief at 16). Contrary to this suggestion however, the Eleventh

Circuit considered and explicitly distinguished the aforementioned cases from

actions where a refusal to pay benefits under plan terms do not form the gravamen of

the complaint.[8] One must wonder why Defendants fail to discuss or justify their

reliance upon cases the *Cotton* court explicitly distinguished for reasons so obviously

---

[8] "What they are not suing for is a refusal to pay benefits under the terms of the life insurance policies. This fact distinguishes the instant case from *Butero*. It also distinguishes it from cases such as *Engelhardt*, *Franklin*, and *Hall*, because in each of those cases the plaintiff was actually contending to be due a benefit that could be identified within the terms of his or her policy—namely, a disability benefit (*Engelhardt*), home nursing care (*Franklin*), and reimbursement for healthcare expenses (*Hall*)." *Cotton*, 402 F.3d 1267 (internal quotations and brackets omitted).

pertinent to this case.  For the same reasons that the Eleventh Circuit recently distinguished *Butero*, *Franklin* and *Hall*, the Court should reject Defendants' attempt to erase these distinctions.

## **CONCLUSION**

ERISA finds no mention on the face of a complaint that attacks Defendants' misrepresentations regarding the nature of the insurance policy at issue in this case nor any mention of the Defendants' administration of any "ERISA plan."  Plaintiffs do not challenge any specific or even general denial of benefits or coverage. Plaintiffs' complaint clearly addresses the fraudulent scheme of insurers ***as insurers***, not as administrators, much less fiduciaries, of an ERISA-covered plan.  Despite their counsel's arguments to the contrary, these Defendants' corporate representative admitted under oath that the subject policy certificate is not an ERISA governed plan.  The Court must decide Plaintiffs' claims by looking to the common law of Alabama, not to the terms of an ERISA-governed plan.

Though ERISA casts a long shadow over health benefits law, its breadth is not infinite.  Further, both Congress and the U.S. Department of Labor have taken steps to make it more difficult for rogue insurers to deploy ERISA preemption as a smoke screen for their fraudulent and illegal activities.  Congress did not intend ERISA to immunize insurers from liability for fraudulently selling non-compliant "group" health insurance products.

For the reasons set forth above, the Defendants' Motion for Summary Judgment on Plaintiff's state law claims, claims for punitive or contractual damages, and jury demand should be DENIED.

RESPECTFULLY SUBMITTED this the 20th day of August, 2007.

s/L. Andrew Hollis, Jr.
Andyh@hollis-wright.com
Attorney for Plaintiff


s/Steve W. Couch
Stevec@hollis-wright.com
Attorney for Plaintiff

**OF COUNSEL**:
HOLLIS & WRIGHT, P.C.
505 North 20th Street, Suite 1500
Birmingham, Alabama 35203
(205) 324-3600
(205) 324-3636 Facsimile


## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2007, I electronically filed the foregoing with the clerk of the court using the CM/ECF system which will send notification to such filing to the following:

James W. Lampkin, II
Pamela A. Moore
Alford, Clausen & McDonald, LLC
One St. Louis Centre, Suite 5000
Mobile, Alabama 36602

s/Steve W. Couch
SteveC@hollis-wright.com
Attorney for Plaintiff