# BIRMINGHAM REPORTING SERVICE

Page 1

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TROY E. TILLERSON,              )
                                )
PLAINTIFF,                      )
                                )
                                ) CIVIL
vs.                             ) ACTION
                                ) NO.
                                ) 3:05CV985-B
THE Mega Life AND HEALTH        )
INSURANCE CORPORATION, et       )
al.,                            )
                                )
DEFENDANTS.

DEPOSITION OF KIP HOWARD

The deposition of KIP HOWARD was taken before Anna Tolleson, CSR, as Commissioner, on July 17, 2007, by the plaintiff, commencing at 9:00 a.m., in the office of Well, Gotshal & Manges, 200 Crescent Court, Suite 300, Dallas, Texas 75201 pursuant to the stipulations set forth herein.

**BIRMINGHAM REPORTING SERVICE**

1    about February of '03?
2    A    Yes.
3    Q    When you came back on into the
4    employee status, Mr. Howard, what was your
5    job title?
6    A    Senior claims specialist.
7    Q    Same type of claims?
8    A    Yes.
9    Q    Association group health claims?
10   A    Yes.
11   Q    Is that still your job title now?
12   A    No.
13   Q    What's your job title currently?
14   A    Supervisor claims risk.
15   Q    Did you hold any other job titles
16   between the time you were senior claims
17   specialist and when you became supervisor
18   claims risk?
19   A    No.
20   Q    When did you become the supervisor
21   of claims risk?
22   A    Early May of this year.
23   Q    Who was the supervisor of claims

# BIRMINGHAM REPORTING SERVICE

Page 66

1  Mr. Tillerson's certificate are mandated by
2  any particular state?
3     A    I don't know.
4     Q    Do you know anything about ERISA?
5     A    A little bit.
6     Q    Okay. Just generally describe for
7  me, if you would, Mr. Howard, your
8  knowledge in that regard.
9     A    It was an act passed in 1972 to
10 basically shield employers from employee
11 lawsuits regarding benefits that are
12 provided.
13    Q    Are you familiar with working with
14 ERISA type plans?
15    A    Very little. We do have a very,
16 very, very small percentage of people who
17 have ERISA approved policies if they were
18 ERISA qualified when they came to us.
19    Q    What do you mean by "ERISA
20 approved?"
21    A    I just mean an ERISA policy.
22    Q    Does Mr. Tillerson have one?
23         MR. LAMPKIN: Object to the

# BIRMINGHAM REPORTING SERVICE

Page 67

```
 1   form.
 2       A     To my knowledge, Mr. Tillerson does
 3   not have an ERISA policy.
 4       Q     Are you familiar with the letters
 5   that go to any particular certificate
 6   holder that reflect or indicate premium
 7   increases or premium adjustments,
 8   Mr. Howard?
 9       A     Yes, I believe I've seen the
10   letters you're referring to.
11       Q     Have you seen them in this case?
12       A     Yes.
13       Q     Did you ever see a letter when you
14   reviewed those wherein Mr. Tillerson's
15   premium was actually staying the same or
16   being lower?
17       A     I don't recall.
18       Q     I'm going to show you a document
19   that has been produced in this case,
20   Mr. Howard, it's a letter with PFL Life
21   Insurance Company atop the document, and it
22   was produced by the plaintiffs in this case
23   Bates stamped 47 and 48.  Have you seen
```

1  Q   Who was?

2  A   I believe his parents or
3  step-parents.

4  Q   Do you know if he was employed at
5  that time by his father?

6  A   No, I don't.

7          MR. LAMPKIN: Okay. I think
8  that's got it.

9          EXAMINATION BY MR. COUCH

10  Q   (By Mr. Couch:)  Just because
11 somebody, a relative, pays premiums on
12 behalf of a certificate holder, based on
13 your understanding of ERISA, does that make
14 it an ERISA plan?

15  A   Can you repeat the question,
16 please?

17  Q   Yes.  Just because a relative pays
18 premiums on behalf of a certificate holder,
19 does that in fact make it a -- the
20 certificate an ERISA plan, based on your
21 understanding of that?

22  A   No.

23  Q   Okay.  In fact, just because an

**BIRMINGHAM REPORTING SERVICE**

Page 101

1  employer -- I'm certainly not saying it
2  happened in this case -- just because an
3  employer pays benefits on behalf of an
4  employee, that doesn't make it an ERISA
5  plan either, does it?
6              MR. LAMPKIN:  Object to the
7  form.
8      A    I don't feel comfortable responding
9  to that question.  That's outside of my
10 knowledge of ERISA.
11     Q    Yes, sir.  Indeed, you said that --
12 what you did say was Mega issues very few
13 ERISA type plans; isn't that right?
14     A    I did say that.
15     Q    Well, based on the plans that you
16 are familiar with that are ERISA based, who
17 are they -- are those issued to any type of
18 associations or is it an employer specific
19 issuance?
20     A    I don't know.
21     Q    Do you know the plan title for any
22 ERISA based plan?
23     A    No.

Page 102

1  Q   Okay. Do you know why
2  Mr. Tillerson changed his plan from a -- to
3  a plan D back in 1999?
4  A   Not specifically, no.
5  Q   If he changed it to a D type plan,
6  would you presume that he had something
7  either an A, B, C type prior to that?
8       MR. LAMPKIN: Object to the
9  form.
10 A   I mean, I would assume he had A, B,
11 or C, yes.
12 Q   Do you know if Mega was proposing
13 that his premium was going to rise prior to
14 his decision to change his plan type and
15 increase his deductible or copay back in
16 '99?
17      MR. LAMPKIN: Object to the
18 form.
19 A   No.
20 Q   This a letter Bates stamp 37,
21 plaintiff's production, dated June 21,
22 1999, proceeding his change to plan D. Can
23 you tell from this letter what type of plan

Page 103

1  he had prior to the switch?
2      A    I mean, there is a handwritten
3  notation on here, but I don't know who made
4  that notation or I guess what it stands
5  for.  But it would appear he had plan C.
6      Q    All right.  So in other words, his
7  premium is going up to -- what does that
8  letter say it's coming up to, 375?
9      A    Yes, it says, $375 on July 26th,
10 1999, if he maintains his current plan at
11 that time.
12     Q    And it's been suggested to him that
13 some other type plan with a higher
14 deductible is something that might get his
15 premiums down below the 375 that's about to
16 be charged to him by Mega; is that right?
17          MR. LAMPKIN:  Object to the
18 form.
19     A    It's -- your statement is true with
20 the exception that it's not a deductible,
21 it's a copay.
22     Q    A copay.  Sorry, just to have this
23 right.  They're suggesting -- Mega is

# BIRMINGHAM REPORTING SERVICE

Page 104

1  suggesting to Mr. Tillerson back in 1999
2  that if he keeps the plan that he's on,
3  it's going to raise to 375, but if you want
4  to increase your copay, then that will keep
5  your premiums below the 375 that's about to
6  be charged to you; is that right?
7      A    Yes.
8           MR. COUCH:  Okay.  Mr. Howard,
9  that's all I got.  Thank you, sir.
10          EXAMINATION BY MR. LAMPKIN
11     Q    (By Mr. Lampkin:)  Mr. Howard, do
12 you have any knowledge as to what the 11th
13 circuit has said constitutes an ERISA plan?
14     A    No.
15          EXAMINATION BY MR. COUCH
16     Q    (By Mr. Couch:)  Do you have any
17 knowledge of what Mega says is an ERISA
18 plan?
19     A    I really don't understand the
20 question.
21     Q    Okay.  In the certificates that are
22 -- were the ERISA plans that you are
23 familiar with or do the certificates